UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x

PHILLIPS-VAN HEUSEN CORPORATION,         :

               Plaintiff,         :

       -against-         :

INTERNATIONAL HOME TEXTILES, INC.         :
AND SALO GROSFELD,
                      :

            Defendants.         :

-----------------------------------------------------------------x

**'07 CIV 8169**

Case No.

**COMPLAINT**

**JURY TRIAL DEMANDED**

RECEIVED
SEP 18 2007
U.S.… S.D. N.Y.
CASHIERS

Plaintiff, by its attorneys, **WEISS & HILLER, P.C.**, as and for its complaint alleges as follows:

**JURISDICTION AND VENUE**

1.    This Court has jurisdiction of this action pursuant to §1332(a)(1) of Title 28, United States Code, 28 U.S.C. §1 et seq. (the "Judicial Code"), in that the matter in controversy exceeds $75,000, exclusive of interest and costs, and the action is between citizens of different states, to wit, plaintiff Phillips-Van Heusen Corporation ("PVH") is a Delaware corporation with its principal place of business in New York State, defendant International Home Textiles, Inc. ("IHT") is a Florida corporation with its principal place of business in Miami, Florida, and defendant Salo Grosfeld ("Grosfeld") is a citizen of the State of Florida.

2.    Venue is properly laid in this District pursuant to §1391(a) et seq. of the Judicial Code, and written agreement of the parties.

3.    Plaintiff requests that this Court, to the extent that may be necessary, exercise its supplemental jurisdiction pursuant to 28 U.S.C. §1367(a) over all of plaintiff's New York State claims.

**PARTIES**

4.    Plaintiff PVH is, and at all relevant times has been, a corporation organized and existing under the laws of the State of Delaware, with its principal place of business at 200 Madison Avenue, New York, New York 10016.

5.    Plaintiff PVH is, and at all relevant times has been, in the business, inter alia, of the manufacture, sale, distribution, promotion and licensing the sale and distribution, of various items, including, inter alia, under the trademark "IZOD" ("Licensed Mark").

6.    Upon information and belief, defendant IHT is, and at all relevant times has been, a corporation organized and existing under the laws of the State of Florida, with its principal place of business at 19401 West Dixie Highway, Miami, Florida 33180.

7.    Upon information and belief, defendant IHT is, and at all relevant times has been, in the business, inter alia, of the manufacture, sale, distribution and promotion of sheets, pillow cases, and towels, including without limitation, wash cloths, hand towels, bath towels, bath sheets, bath mats and beach towels.

8.    Upon information and belief, defendant IHT has been in the business described in paragraph 7 for approximately thirty or more years, and has been a licensee of PVH's IZOD trademark for the goods listed in paragraph 7 since December 2001, including under an initial license with PVH that expired on December 31, 2005.

9.    Upon information and belief, Grosfeld is, and at all relevant times has been, a citizen of the State of Florida.

10.    Upon information and belief, defendant Grosfeld is, and at all relevant times has been, the president of defendant IHT.

11.    Upon information and belief, defendant Grosfeld is, and at all relevant times has been, a principal stockholder of defendant IHT.

12.    Grosfeld was the individual who, on behalf of defendant IHT, was primarily involved in the negotiations that led to the execution of the License Agreement (hereinafter defined).

2

13.    A substantial portion of transactions between the parties took place in the City and State of New York.

## FACTS

14.    Plaintiff PVH is, and at all relevant times has been, the owner of the Licensed Mark in the United States, its territories and possessions ("Territory").

15.    On or about January 1, 2006, plaintiff PVH entered into a new license agreement ("License Agreement") with defendant IHT wherein and whereby, inter alia, PVH granted IHT the exclusive right to use the Licensed Mark in connection with the sale, distribution and promotion of the sheets, pillow cases and towels, including without limitation, wash cloths, hand towels, bath towels, bath sheets, bath mats and beach towels, excluding dish towels ("Licensed Products"), solely on a wholesale basis, to specifically approved customers, in the Territory, as well as certain limited and non-exclusive rights to manufacture the Licensed Products.

16.    The license granted by PVH to IHT under the License Agreement was for a term commencing on January 1, 2006 and concluding on December 31, 2008 ("Term") (the successive calendar years of the License Agreement, commencing with the calendar year beginning on January 1, 2006, are hereinafter each individually called "Annual Period," and are jointly called "Annual Periods").

17.    The License Agreement further provided that, in consideration of the rights granted to it by PVH thereunder, IHT was required to make certain periodic payments to PVH, including:

   (i)    royalty payments ("Percentage Royalty Payments") in amounts calculated as set forth in the License Agreement, payable to PVH on April 30, July 31, October 31 and January 31 ("Quarterly Payment Dates") with respect to sales for the prior calendar quarter,

   (ii)    guaranteed minimum royalty payments provided that Percentage Royalty Payments were less than designated guaranteed minimum amounts, and only to the extent that such guaranteed minimum amounts exceeded Percentage

Royalty Payments ("Minimum Guaranteed Royalties"), payable to PVH on the Quarterly Payment Dates for the prior calendar quarter, and

(iii)    advertising expense payments, in amounts calculated as set forth in the License Agreement, payable to PVH on the Quarterly Payment Dates ("Advertising Obligations").

18.    The License Agreement further provided that IHT was required to spend sums for marketing, calculated in the amounts and manner set forth in the License Agreement, with regard to the respective Annual Periods of the License Agreement ("Marketing Obligations"), and that, in the event that IHT failed to expend its Marketing Obligations as so required, it was required to pay to PVH the short-fall of its required Marketing Obligations.

19.    The License Agreement further provided that IHT was required to meet certain designated minimum sales requirements for each Annual Period of the License Agreement ("Minimum Sales Requirements").

20.    The License Agreement further required IHT to provide PVH with certain statements and/or reports, including:

(i)    royalty statements, at the time each payment of Minimum Guaranteed Royalties became due, in form designated in the License Agreement, signed by IHT's chief financial officer, certified by an IHT officer as complete and accurate, and providing information specified in the License Agreement ("Royalty Statements"),

(ii)    licensing forecasts, in form designated in the License Agreement, one with the execution of the License Agreement, and thereafter 60 days prior to the commencement of each Annual Period of the License Agreement ("Licensing Forecasts"),

(iii)    marketing expenditure forms, in the form described in the License Agreement ("Marketing Expenditure Statements"), on the Quarterly Payment Dates,

(iv)    proof that IHT was maintaining insurance as required in the License Agreement, within 20 days after execution of the License Agreement, and thereafter at PVH's request ("Insurance Compliance Statements"),

(v)    third party manufacturing agreements, as well as list of all manufacturers, being used by IHT in connection with the manufacture of Licensed Products, and

(vi)    marketing plans, forecast, and pro forma business plan, on an annual basis ("Marketing Plans").

21.    The License Agreement further provided certain limitations and restrictions, including caps, on IHT's right to sell and dispose of "seconds" and "close outs," ("Seconds/Close Out Limitations"), required IHT to furnish to PVH, as part of the Royalty Statements, the details of sales of seconds and close outs for the period covered by each such Royalty Statement, and to pay Percentage Royalty Payments to PVH at a higher percentage rate for seconds and close outs sold and/or disposed by IHT in excess of the Seconds/Close Out Limitations.

22.    The License Agreement further provided limitations, including caps, on deductions for returns, allowances and trade discounts that IHT was permitted to take against gross sales in determining "net sales," thereunder ("Deduction Limitations").

23.    The License Agreement further provided for a cap on sales to J.C. Penney ("Penney Sales Limitation"), and provided for higher Percentage Royalty Payments to PVH upon any such sales in excess of Penney Sales Limitation.

24.    The License Agreement further provided that IHT use commercially reasonable efforts to exploit the License Agreement throughout the Territory, which efforts were required to include certain activity specified therein ("Commercially Reasonable Efforts").

25.    The License Agreement provided that PVH had the right to terminate the License Agreement in the event of any breach thereof by IHT that was not cured within fifteen-day notice of such breach.

26.    The License Agreement further provided PVH with the right to immediately terminate the License Agreement ("PVH's Right to Immediately Terminate") for various reasons, including without limitation, IHT's: (i) failure to achieve Minimum Sales Requirements for any Annual Period of the License Agreement; (ii) underpayment of Percentage Royalty Payments or Minimum Guaranteed Royalties for any calendar quarter.

27.    In the event that PVH exercised its Right to Immediately Terminate under the License Agreement, such termination was effective immediately, provided IHT with no right to affect a cure or sell inventory, required IHT to immediately deliver to PVH an inventory schedule, and permitted PVH to determine the proper method of disposal of any such inventory.

28.    In the event that PVH exercised its Right to Immediately Terminate for specified reasons, including without limitation, IHT's underpayment of Minimum Guaranteed Royalties and/or Percentage Royalty Payments by a designated amount with regard to any calendar quarter, or in the event PVH terminated the License Agreement for any uncured breach by IHT, then PVH was entitled to receive certain described sums as liquidated damages ("Liquidated Damages"), and not as a penalty.

29.    Said sum so payable as Liquidated Damages was to be equal to the royalties that would have been payable to PVH for the remainder of the Term of the Agreement, based on Net Sales, as described in the License Agreement for the Annual Period immediately preceding the year of such termination.

30.    Grosfeld and PVH entered into an agreement, wherein and whereby Grosfeld agreed to be jointly and severally liable to PVH for the obligations of IHT under the License Agreement, including without limitation, IHT's obligations to pay Percentage Royalty Payments, Minimum Guaranteed Royalties and Advertising Obligations to PVH.

31.    Grosfeld and PVH entered into an agreement, wherein and whereby Grosfeld agreed to guarantee the obligations of IHT under the License Agreement, including without limitation, IHT's obligations to pay Percentage Royalty Payments, Minimum Guaranteed Royalties and Advertising Obligations to PVH.

6

32.   The License Agreement reflected Grosfeld's said agreement to be jointly and severally liable for the obligations of IHT under the License Agreement, including without limitation, IHT's obligations to pay Percentage Royalty Payments and Minimum Guaranteed Royalties to PVH.

33.   The License Agreement reflected Grosfeld's said agreement to guarantee the obligations of IHT under the License Agreement, including without limitation, IHT's obligations to pay Percentage Royalty Payments and Minimum Guaranteed Royalties to PVH.

34.   Among other things, PVH was induced to, and did, enter into the License Agreement with IHT in reliance upon Grosfeld's agreement to become jointly and severally liable for IHT's obligations under the License Agreement, including without limitation, IHT's obligations to pay Percentage Royalty Payments and Minimum Guaranteed Royalties to PVH.

35.   Among other things, PVH was induced to and did enter into the License Agreement with IHT in reliance upon Grosfeld's agreement to guarantee IHT's obligations under the License Agreement, including without limitation, IHT's obligations to pay Percentage Royalty Payments and Minimum Guaranteed Royalties to PVH.

36.   Grosfeld received consideration for his agreement to be jointly and severally liable for IHT's obligations under the License Agreement, including without limitation, in the form of PVH's agreement to enter, and entry, into the License Agreement.

37.   Grosfeld received consideration for his agreement to guarantee IHT's obligations under the License Agreement, including without limitation, in the form of PVH's agreement to enter, and entry, into the License Agreement.

38.   Demand has been made on IHT to pay to PVH the sums due to PVH by reason of IHT's breaches and violations of IHT's obligations under the License Agreement.

38.     Despite such demand, IHT has failed and refused to pay to PVH sums due to PVH by reason of IHT's breaches and violations of its obligations under the License Agreement, including without limitation, IHT's obligations to pay Percentage Royalty Payments and Minimum Guaranteed Royalties to PVH.

40.     Grosfeld has been notified of IHT's failure to pay to PVH the sums due to PVH by reason of IHT's breaches and violations of its obligations under the License Agreement, including without limitation, IHT's obligations to pay Percentage Royalty Payments and Minimum Guaranteed Royalties to PVH.

## FIRST CLAIM

(Breach of Contract)

41.     Plaintiff PVH repeats and realleges all of the allegations contained in paragraphs 1 through 29 hereof, inclusive, as if the same were set forth herein at length.

42.     IHT breached and violated the License Agreement, including, without limitation, in the following manners:

(i)     it failed to use Commercially Reasonable Efforts to exploit the License Agreement as required,

(ii)     it failed to meet Minimum Sales Requirements for the first Annual Period,

(iii)     it failed to make full and complete Percentage Royalty Payments for the first Annual Period and for the first quarter of the second Annual Period,

(iv)     it failed to pay its Advertising Obligations for the last three quarters of the first Annual Period, in an amount totaling at least $71,691,

(v)     it failed to pay Minimum Guaranteed Royalties for the first Annual Period in an amount totaling at least $298,897,

(vi)     it failed to furnish Royalty Statements for the last two quarters of the first Annual Period and the first quarter of the second Annual Period,

(vii)     it failed to furnish PVH with the Marketing Expenditure Statements for the first Annual Period or for the first quarter of the second Annual Period, and

8

upon information and belief, owes PVH a sum of at least $146,570 as Marketing Obligations for the first Annual Period and for an additional sum to be determined for the first quarter of the second Annual Period,

(viii)  it failed to submit to PVH Licensing Forecasts for the first and second Annual Periods, as required,

(ix)    it sold close outs and/or seconds during the first Annual Period in sums in excess of those permitted under Seconds/Close Out Limitations, for which a sum of at least $43,111 is due, but has not been paid, to PVH,

(x)     it sold Licensed Products to J.C. Penney during the first Annual Period in excess of the Penney Sales Limitation, for which a sum of at least $29,564 is due, but has not been paid, to PVH as Percentage Royalties Payment,

(xi)    it took deductions in excess of the Deduction Limitations, for which a sum of at least $3,100 is due, but has not been paid, to PVH,

(xii)   it failed to submit to PVH evidence of proper insurance coverage in the form of Insurance Compliance Statements in accordance with the License Agreement,

(xiii) it failed to furnish PVH with third party manufacturing agreements or with lists of all manufacturers being used by IHT, in connection with the manufacture of Licensed Products, and

(xiv) it failed to furnish Marketing Plans as required.

43.    As a result of IHT's breaches and violations of the License Agreement, on or about April 27, 2007 PVH duly terminated IHT's rights under the License Agreement, and by reason of the nature of certain of IHT's said breaches and violations of the License Agreement, exercised its Right to Immediately Terminate the License Agreement.

44.    By reason of IHT's breaches and violations of the License Agreement, and PVH's resulting termination of the License Agreement, PVH has suffered damages and is due the sum of at least $1,062,500 as Liquidated Damages for IHT's Percentage Royalty

Payments and Minimum Guaranteed Royalties for the remainder of the Term of the Agreement ("Liquidated Damages Due").

45.    By reason of IHT's breaches and violations of the License Agreement, in addition to the Liquidated Damages Due to PVH, PVH has been damaged and IHT owes PVH a sum to be calculated at trial, and not less than $737,333, including for unpaid sums due and owing pursuant to the terms of the License.

## SECOND CLAIM

### (Audit and Accounting)

46.    Plaintiff PVH repeats and realleges all of the allegations set forth in paragraphs 1 through 29 and 42 through 45 hereof, inclusive, as if the same were set forth herein at length.

47.    Plaintiff PVH has the right under the License Agreement and by law to audit defendant IHT's books and records, among other things, and to determine the full amount of sums due to PVH from IHT under the License Agreement.

48.    Without such auditing, plaintiff PVH is not able to determine the full sums due to it from IHT under the License Agreement.

49.    By reason of the foregoing, plaintiff PVH is entitled to an audit and accounting of defendant IHT's books and records.

50.    Plaintiff has no adequate remedy at law.

## THIRD CLAIM

### (Joint and Several Liability)

51.    Plaintiff PVH repeats and realleges all of the allegations set forth in paragraphs 1 through 30, 32, 34, 36, 38 through 40, 42 through 45, and 47 through 50 hereof, inclusive, as if the same were set forth herein at length.

52.    By reason thereof Grosfeld is jointly and severally liable with IHT for all damages resulting to PVH by reason of IHT's breaches and violations of its obligations to PVH under the License Agreement, including without limitation, its breaches and

violations of its obligations to pay Percentage Royalty Payments and Minimum Guaranteed Royalties to PVH.

## FOURTH CLAIM

### (Guarantee)

53.    Plaintiff PVH repeats and realleges all of the allegations set forth in paragraphs 1 through 29, 31, 33, 35, 37 through 40, 42 through 45, and 47 through 50 hereof, inclusive, as if the same were set forth herein at length.

54.    By reason thereof, Grosfeld, under his aforementioned guarantee, is liable to PVH, for all the damages due to PVH by reason of IHT's breaches and violations of its obligations to PVH, including without limitation, its breaches and violations of its obligations to pay Percentage Royalty Payments and Minimum Guaranteed Royalties to PVH.

WHEREFORE, for the reasons stated, plaintiff Phillips-Van Heusen Corporation demands judgment in its favor and against defendant International Home Textiles, Inc. on the first claim in a sum to be determined at trial of at least $1,839,833; and on the second claim an entitlement to an audit and accounting of International Home Textiles, Inc.'s books and records to determine the full sums due Phillips-Van Heusen Corporation under the License Agreement; and plaintiff Phillips-Van Heusen Corporation demands judgment in its favor and against defendant Salo Grosfeld on the third and fourth claims, each, in a sum to be determined at trial of at least $1,839,333, all together with costs, interest, and disbursements, plus any and all further relief this Court deems just, proper and appropriate.

Dated: New York, New York
      September 18, 2007

                    WEISS & HILLER, P.C.
                    Attorneys for Plaintiff
                    600 Madison Avenue
                    New York, NY 10022
                    (212) 319-4000

By: _____
                    Arnold M. Weiss (AMW 0942)