# EXHIBIT C



Not Reported in F.Supp.                                                    Page 1
Not Reported in F.Supp., 1996 WL 384895 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.)**

C Turtle & Hughes, Inc. v. Browne
S.D.N.Y.,1996.
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.
TURTLE & HUGHES, INC., Plaintiff,
v.
Marie T. BROWNE, Defendant.
No. 95 Civ. 9573 (SHS).

July 9, 1996.

*OPINION AND ORDER*
STEIN, District Judge:
*1 The question for determination in this case, which has
been brought pursuant to this Court's diversity
jurisdiction, *see* 28 U.S.C. § 1332, is whether, pursuant to
New York law, the contractual provision at issue renders
the signatory, an agent who signed the agreement on
behalf of her disclosed principal, personally liable for the
debt of that principal. Plaintiff, urging that there is no
genuine issue of material fact that defendant is liable, has
moved for summary judgment pursuant to Fed.R.Civ.P.
56. For the following reasons, the motion is denied.

*BACKGROUND*

Plaintiff Turtle & Hughes, Inc., a New Jersey corporation
with its principal place of business in that state, is in the
business of manufacturing and distributing electrical parts
and supplies. (Compl. ¶ 1.) Defendant Marie T. Browne is

| DATE | COMPANY | |
|------|---------|---|
| 1/31/95 | Byron Electric Co. Inc. | |
| President | /s/ Marie T. Browne | |
| TITLE | AUTHORIZED SIGNATURE | |

(Doyle Aff. ex. B.)

Browne states that she did not intend at the time she
signed the application to bind herself personally in any
way, and that she was unaware that Turtle & Hughes
considered it to be a personal guarantee. (Affidavit of
Marie T. Browne, sworn to on March 30, 1996, at ¶¶ 11-

a New York resident and a principal of Byron Electric
Co., Inc. (Compl. ¶¶ 2, 5.) Turtle & Hughes sold Byron
electrical parts and supplies between January and July
1995, for approximately $224,000. (Compl. ¶¶ 5-6;
Affidavit of Kevin Doyle, sworn to on January 10, 1996,
at ¶ 1 & n. *.)

In connection with that transaction, on January 31, 1995,
Browne executed a one-page, pre-printed agreement,
entitled "Credit Application." (Compl. ¶ 7; Credit
Application, attached to Doyle Aff. as ex. B). The bottom
of the application reads as follows:

TERMS AND CONDITIONS AND PERSONAL
GUARANTEE

....
4. Purchaser agrees to pay all reasonable collection cost
[sic] if placed for collection. In the event this contract is
placed with an attorney after default, the customer agrees
to pay attorneys fees and applicable costs.
5. PERSONAL GUARANTEE-If the purchaser is a
corporation, then those signing the application, whether
executing this agreement as an officer or not, do hereby
personally guarantee payment for any and all obligations
as set forth herein.
I HAVE READ THE ABOVE STATEMENT AND
AGREE TO THESE TERMS STATED.

12.) She states that she believed she was signing it solely
as president of Byron. (Browne Aff. ¶ 12.)

Turtle & Hughes has demanded payment from Byron, to
no avail. (Compl. ¶ 6.) Turtle & Hughes brought this
action against Browne, pursuant to the guarantee
contained in the credit application, seeking payment of
the sums owed to it by Byron, including attorneys fees

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                                                    Page 2
Not Reported in F.Supp., 1996 WL 384895 (S.D.N.Y.)
(Cite as: Not Reported in F.Supp.)

and costs of collection. Turtle & Hughes now moves for summary judgment in its favor.

### DISCUSSION

"Summary judgment may be granted only when the moving party demonstrates that 'there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.' " *Allen v. Coughlin,* 64 F.3d 77, 79 (2d Cir.1995) (quoting Fed.R.Civ.P. 56(c)); *see Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The Court must "view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor, and may grant summary judgment only when 'no reasonable trier of fact could find in favor of the nonmoving party.' " *Allen,* 64 F.3d at 79 (citations omitted) (quoting *Lund's, Inc. v. Chemical Bank,* 870 F.2d 840, 844 (2d Cir.1989)).

\*2 The disposition of a motion for summary judgment based on conflicting interpretations of contractual language turns on whether or not the language in question is ambiguous, a question to be decided by the court as a matter of law. *See Mellon Bank, N.A. v. United Bank Corp. of New York,* 31 F.3d 113, 115 (2d Cir.1994); *Sayers v. Rochester Tel. Corp. Supplemental Management Pension Plan,* 7 F.3d 1091, 1094 (2d Cir.1993). Where contractual language is "wholly unambiguous," summary judgment is appropriate. *Mellon Bank,* 31 F.3d at 115 (internal quotation marks omitted); *see Williams & Sons Erectors, Inc. v. South Carolina Steel Corp.,* 983 F.2d 1176, 1183 (2d Cir.1993). Even where a contract is ambiguous, summary judgment is still proper unless the non-movant produces some "relevant extrinsic evidence of the parties' actual intent." *Mellon Bank,* 31 F.3d at 116;*see Williams & Sons,* 983 F.2d at 1183-84. A contract is considered ambiguous where both conflicting interpretations of the contractual language are " 'sufficiently reasonable.' " *Mellon Bank,* 31 F.3d at 115 (quoting *Wards Co. v. Stamford Ridgeway Assocs.,* 761 F.2d 117, 121 (2d Cir.1985)).

Browne's interpretation of the contractual language is that it does not constitute a personal guarantee by her of Byron's debts and obligations. Whether or not this interpretation is reasonable must be viewed in light of New York's strong presumption against finding corporate officers individually liable for the obligations of the corporations they represent.

Under New York law, an agent who signs an agreement on behalf of a disclosed principal will not be individually bound to the terms of the agreement "unless there is clear and explicit evidence of the agent's intention to substitute or superadd [her] personal liability for, or to, that of [her] principal."

*Lerner v. Amalgamated Clothing and Textile Workers Union,* 938 F.2d 2, 5 (2d Cir.1991) (quoting *Mencher v. Weiss,* 306 N.Y. 1, 4, 114 N.E.2d 177, 179 (1953)) (alteration added); *see also Cement and Concrete Workers Dist. Council Welfare Fund v. Lollo,* 35 F.3d 29, 35 (2d Cir.1994). Thus, only rarely will a corporate officer be held individually liable. *See Lerner,* 938 F.2d at 5.

Only the officer's intent is relevant to this inquiry. *See Savoy Record Co. v. Cardinal Export Corp.,* 15 N.Y.2d 1, 4-5, 203 N.E.2d 206, 208, 254 N.Y.S.2d 521, 524 (1964) (Fuld, J.). The Second Circuit in *Lollo,* 35 F.3d at 35, has recently written:

The factors to be examined in assessing the signatory's intention include the length of the contract, the location of the liability provision(s) in relation to the signature line, the presence of the signatory's name in the agreement itself, the nature of the negotiations leading to the contract, and the signatory's role in the corporation.

*See also Mason Tenders Dist. Council Welfare Fund v. Chaves Constr. Corp.,* 90 Civ. 6801 (WK), 1994 WL 538878, at \*2 (S.D.N.Y. Oct. 4, 1994).

\*3 An additional, perhaps superordinate, factor that courts consider is whether there are indicia surrounding the officer's signature itself that indicate that she intended to sign the agreement in a dual capacity: as both agent with authority to bind the principal, and as either guarantor for the principal's obligations or as co-obligor. For example, in *Lerner,* 938 F.2d at 5-6, the Second Circuit noted that the corporate officer's name was preceded by the name of the firm and the word "by," and was followed by the words "it's [sic] President," indicating that the officer signed the contract only in his official capacity.

In *Salzman Sign Co. v. Beck,* 10 N.Y.2d 63, 67, 176 N.E.2d 74, 76, 217 N.Y.S.2d 55, 57 (1961), the court noted that "where individual responsibility is demanded the nearly universal practice is that the officer signs twice-once as an officer and again as an individual." The officer in that case had signed only once, directly beneath the name of the corporation, and had followed his signature by the abbreviation "pres." *See id.* at 65, 176 N.E.2d at 75, 217 N.Y.S.2d at 56. The court commented: "This, of course, was a corporate and not an individual signature." *Id.*

Not Reported in F.Supp.
Not Reported in F.Supp., 1996 WL 384895 (S.D.N.Y.)
(Cite as: Not Reported in F.Supp.)

Page 3

In *Savoy Record*, 15 N.Y.2d at 6, 203 N.E.2d at 209, 254 N.Y.S.2d at 525, the court noted that the agent added the words "As Agent On Behalf of" the principal to its signature, indicating that it acted in that capacity alone. Finally, in *Mencher*, 306 N.Y. at 5, 114 N.E.2d at 179, where individual liability was found, the court attached significance to the fact that the officer used both his official title and the word "member" (of the corporation) when he signed, indicating an intent to be bound in both capacities.

In this case, several of the factors listed in *Lollo* weigh in favor of Turtle & Hughes. First, the contract in question is only one page in length. Second, the personal guarantee provision is located immediately above the signature line. Thus, the provision did not constitute a "trap for [the] unwary." *Paribas Properties, Inc. v. Benson*, 146 A.D.2d 522, 525-26, 536 N.Y.S.2d 1007, 1009 (1st Dept.1989). In addition, the fact that Browne was president of Byron weighs in Turtle & Hughes's favor.

However, several factors weigh in favor of Browne. First, although she was president of Byron, Turtle & Hughes has adduced no evidence to show that Browne was Byron's sole or principal shareholder, or, indeed, that she owned any shares at all. Second, although Browne's name is typed into the agreement, it is listed only in a section entitled "PRINCIPALS AND OR OFFICERS." This hardly constitutes evidence that she intended to be bound personally. Moreover, the crucial inquiry is not whether her name appears in the contract, but whether it appears in the provision purporting to bind her personally. *See Paribas Properties*, 146 A.D.2d at 525, 536 N.Y.S.2d at 1009.[FN1] Third, Turtle & Hughes has not shown that this contract was negotiated. *Cf. Lollo*, 35 F.3d at 35. To the contrary, although specific information relating to the particular transaction is typewritten in, the credit application is essentially "a form contract of adhesion," and the personal guarantee provision is "a boilerplate clause." *See Paribas Properties*, 146 A.D.2d at 525, 526, 536 N.Y.S.2d at 1009.

FN1. Although *Cement and Concrete Workers Dist. Council Welfare Fund v. Lollo*, 35 F.3d 29, 35 (2d Cir.1994), appears to indicate that the presence of the signatory's name anywhere in the agreement constitutes evidence of her intent to be personally bound, *Lollo* cites *Lerner v. Amalgamated Clothing and Textile Workers Union*, 938 F.2d 2, 5 (2d Cir.1991), for this proposition, which in turn relies on *Paribas Properties, Inc. v. Benson*, 146 A.D.2d 522, 525, 536 N.Y.S.2d 1007, 1009 (1st Dept.1989). In *Paribas, id.* at 524, 525, 536 N.Y.S.2d at 1008, 1009, the court noted that the personal guarantee at issue there mentioned the signatory by name, as contrasted with the situation where a "boilerplate clause" provides merely "that the officer or officers signing on behalf of the purchasing corporation personally guaranteed payment," as is the case here and as was the case in *Lollo*, 35 F.3d at 35.

**\*4** Finally, and perhaps most importantly, there are no indicia surrounding Browne's signature itself to indicate that it was intended to bind her in her personal capacity. The indicia are, in fact, to the contrary. First, the signature is placed immediately below the name of the company and immediately beside Browne's name. Thus, her endorsement is juxtaposed with indications of her corporate, not her individual, persona. Furthermore, the signature line contains the telling notation "AUTHORIZED SIGNATURE." This indicates, just as if it read "BY:" or "AS AGENT OF BYRON," that Browne was signing the agreement only as the authorized agent of her principal.

*Lollo* is not to the contrary. In that case, all of the factors discussed by the court weighed in favor of imposing individual liability. *See Lollo*, 35 F.3d at 35. Moreover, the personal guarantee provision in that case, located just above the signature line of the contract, expressly and repeatedly noted the two-fold implications of the signature. It stated that the signatory was executing the document

in *a dual capacity both on behalf of himself and on behalf of the Employer* and represents by his signature his authority to bind *himself, the Employer or Firm, and the principals and members thereof.* The person signing on behalf of the Employer *also* agrees to be personally bound by and to assume all obligations of the Employer provided for in this Agreement.

*Id.* at 35 (emphasis added). By contrast, the personal guarantee here does not expressly state that the signatory acts in a dual capacity, but merely that this person, "whether executing this agreement as an officer or not, do [es] hereby personally guarantee payment for any and all obligations as set forth herein."

In addition, it is unclear whether the court in *Lollo* considered the provision to be one evidencing a promise to answer for the debt of another or, rather, a primary obligation. *See Paribas Properties*, 146 A.D.2d at 525, 536 N.Y.S.2d at 1009. It is possible that, where a promise

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                Page 4
Not Reported in F.Supp., 1996 WL 384895 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.)**

is viewed as a primary obligation, the presumption against imputing personal liability to an agent who contracts on behalf of a disclosed principal does not apply to the same extent as it does where a purported guarantee is at issue. *Cf. id.; Rene Boas and Assocs. v. Vernier,* 22 A.D.2d 561, 563, 257 N.Y.S.2d 487, 490 (1st Dept.1965). This is so because the presumption itself is greatly informed by the policies underlying the Statute of Frauds, *see Savoy Record,* 15 N.Y.2d at 6, 203 N.E.2d at 209, 254 N.Y.S.2d at 525;*Salzman Sign,* 10 N.Y.2d at 67, 176 N.E.2d at 76, 217 N.Y.S.2d at 58,*Warren-Connolly Co. v. Saphin,* 283 A.D. 391, 128 N.Y.S.2d 272, 273-74 (1st Dept.1954), which requires that a promise to answer for the debt of another be in writing and be subscribed by the party to be charged. *See*N.Y.Gen.Oblig.Law § 5-701(a)(2).

Here, Turtle & Hughes itself has characterized the contractual provision as evidencing a promise to answer for the debt of another, not as a primary obligation. (*See* Compl. ¶¶ 7, 9.) Thus, the presumption against imputing individual liability applies with full force.

**\*5** Finally, the New York courts have held that contractual provisions virtually identical to the one at issue here are, in themselves, insufficient to bind the individual officer. For example, in *Salzman Sign,* 10 N.Y.2d at 65, 176 N.E.2d at 75, 217 N.Y.S.2d at 56, the contractual provision purporting to individually bind the corporate officer read: "Where the Purchaser is a corporation, in consideration of extending credit to it, the officer or officers signing on behalf of such corporation, hereby personally guarantee the payments hereinabove provided for." The New York Court of Appeals held that this provided insufficient evidence that the parties intended that the officer be individually bound "without some direct and explicit evidence of actual intent." *Id.,* 10 N.Y.2d at 67, 176 N.E.2d at 76, 217 N.Y.S.2d at 57-58.

In *Savoy Record,* 15 N.Y.2d at 3, 203 N.E.2d at 207, 254 N.Y.S.2d at 522, the agreement in question provided that the signatory "agrees by its signature to guarantee the payment of all moneys payable." Again, the court held that "such a clause does not furnish the direct and explicit evidence demanded by the law." *Id.* at 6, 203 N.E.2d at 209, 254 N.Y.S.2d at 525.

In *Warren-Connolly,* 128 N.Y.S.2d at 273, upon which the court relied heavily in *Salzman Sign,* 10 N.Y.2d at 66, 176 N.E.2d at 76, 217 N.Y.S.2d at 56-57, the contractual provision stated that "the undersigned, officer of the dealer corporation, personally and individually guarantees payment of all obligations incurred by the dealer corporation pursuant to this agreement." The court held

that "[t]he contract provision did not constitute a personal guarantee enforceable against the defendant." *Warren-Connolly,* 128 N.Y.S.2d at 274.

In light of New York's strong presumption against holding an agent personally liable where she signs an agreement on behalf of a disclosed principal, Browne's interpretation of the contract-that it binds only Byron and not her personally-is a reasonable one. In addition, Browne has produced extrinsic evidence, in the form of an affidavit averring that she did not intend to bind herself personally, to support her interpretation. Thus, there are genuine issues of fact in dispute as to whether the credit application renders Browne personally liable for Byron's debt. Accordingly, Turtle & Hughes's motion for summary judgment must be denied.

### CONCLUSION

For the foregoing reasons, Turtle & Hughes's motion for summary judgment pursuant to Fed.R.Civ.P. 56 is denied.

SO ORDERED.

S.D.N.Y.,1996.
Turtle & Hughes, Inc. v. Browne
Not Reported in F.Supp., 1996 WL 384895 (S.D.N.Y.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.