# EXHIBIT D

Westlaw.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2005 WL 1384013 (S.D.N.Y.)
(Cite as: Not Reported in F.Supp.2d)

Page 1

Mingoia v. Santa Fe Drywall Corp.
S.D.N.Y.,2005.
Only the Westlaw citation is currently available.
United States District Court,S.D. New York.
Carmine MINGOIA, Joseph Olivieri and George Nickoletos, as Trustees of the Operative Plasterers' and the Cement Masons' International Association, Local 530 Welfare Fund, Insurance Fund, Annuity Fund, Vacation Fund, Training Fund and Apprenticeship Fund, and the Operative Plasterers' and the Cement Masons' International Association, Local 530, AFL-CIO, Plaintiffs,
v.
SANTA FE DRYWALL CORP. and Xerches Frechiani, individually and jointly and severally, Defendants.
No. 04 Civ. 1712(RMB).

June 9, 2005.

*DECISION AND ORDER*
BERMAN, J.

I. Introduction

*1 On March 2, 2004, the Operative Plasterers' and the Cement Masons' International Association, Local 530 Welfare Fund, Insurance Fund, Annuity Fund, Vacation Fund, Training Fund and Apprenticeship Fund (the "Funds"), and the Operative Plasterers' and the Cement Masons' International Association, Local 530, AFL-CIO (the "Union") (collectively, "Plaintiffs") filed a complaint ("Complaint") against Santa Fe Drywall Corp. ("Santa Fe"), an employer with whom the Union had entered into a collective bargaining agreement, dated February 2, 2000, governing the rates of pay and working conditions of individuals employed by Santa Fe, and Santa Fe's principal, Xerches Frechiani ("Frechiani") (collectively, "Defendants"), pursuant to Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185, and Sections 515 and 502(a)(3) of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1145 and 1132(a)(3). (*See* "Collective Bargaining Agreement" dated Feb. 2, 2000, Ex. A to Plaintiffs' Statement of Undisputed Material Facts pursuant to Local Civil Rule 56.1 dated Dec. 3, 2004 ("Pl. 56.1 Stmt.") ("CBA" or "Agreement").) Plaintiffs allege that, among other things, Defendants breached the collective bargaining agreement by failing to "produce to the Fund's auditors all books and records to conduct a payroll audit" for the period July 1, 2001 through June 30, 2003 and, as a result, is required to pay (the amount calculated by the Funds' auditor to be delinquent) no less than $369,784.94 in outstanding fund contributions and no less than $37,601.04 in outstanding union dues. (Complaint ¶¶ 13, 18, 22-23, 25.) [FN1]Plaintiffs also seek liquidated and statutory damages, interest, attorneys' fees and costs. (*Id.* at 6-7.)

FN1. On summary judgment, Plaintiffs assert that the audit period for the Complaint is July 1, 2001 through September 30, 2003. (Affidavit of Raquel A. Williams dated Feb. 28, 2005 ("Williams Reply Aff."), ¶ 11.)

On December 3, 2004, Plaintiffs moved for summary judgment ("Pl.Mot.") pursuant to Federal Rule of Civil Procedure ("Fed. R. Civ.P.") 56. In support of their motion, Plaintiffs submitted a Rule 56 .1 Statement and several affidavits. On or around February 15, 2005, Defendants opposed Plaintiffs' Motion ("Def.Opp'n") and submitted supporting affidavits, but did not respond to Plaintiffs' Rule 56.1 Statement, or submit its own Rule 56.1 Statement. Plaintiffs filed a Reply Memorandum of Law in Further Support of the Plaintiffs' Motion for Summary Judgment, with supporting affidavits, on March 1, 2005 ("Pl.Reply"). The parties waived oral argument at a conference before the Court on January 27, 2005. For the reasons below, Plaintiffs' motion for summary judgment is granted in part and denied in part.

II. Background

The following facts are undisputed, except where noted:

Santa Fe was incorporated in the State of New York and engaged in the business of drywalling, skim-coating and finishing walls. (Pl. 56.1 Stmt. ¶ 10; Def. Opp'n at 1.) Frechiani is the president and principal of Santa Fe. (Frechiani Aff. ¶ 2; Pl. 56.1 Stmt. ¶ 11; CBA at 45.) Since on or about February 2, 2000, Santa Fe and the Union have been parties to the CBA

Case 1:07-cv-08169-AKH   Document 7-5   Filed 11/26/2007   Page 3 of 7

Not Reported in F.Supp.2d                                                                                         Page 2
Not Reported in F.Supp.2d, 2005 WL 1384013 (S.D.N.Y.)
(Cite as: Not Reported in F.Supp.2d)

which, among other things, provides for "jointly administered labor-management trust funds" whose purpose is "to receive and collect required fringe benefit contributions and to provide various fringe benefits to eligible employees on whose behalf employers contribute to the Funds pursuant to Collective Bargaining Agreements."(*See* CBA at 1; Pl. 56.1 Stmt. ¶¶ 5, 7.) Pursuant to the CBA, Defendants "are required to remit monthly contributions to the Funds in agreed amounts per hour of the wages of [Santa Fe] employees engaged in covered employment within the jurisdiction of the Union."(Pl. 56.1 Stmt. ¶ 14.) The Agreement also states, among other things:

*2 The Employer shall retain, for a minimum period of six (6) years, payroll and related records for the conduct of a proper audit in order that a duly designated representative of the Trustees may make periodic review to confirm that contributions owed pursuant to this Agreement are paid in full. In the event, after the Trustees have made a reasonable request, the Employer fails to produce its books and records necessary for a proper audit, the Trustees, in their sole discretion, may determine that the Employer's monthly hours subject to contributions for each month of the requested audit period are the highest number of employee hours for any month during the twelve preceding months audited, or during the last twelve (12) months for which reports were filed, whichever monthly number of hours is greater.

(CBA, Art. X, § 7 (emphasis added).) The Agreement also states: "The person signing on behalf of the Employer also agrees to be personally bound by and to assume all obligations of the Employer provided in the Agreement ..." (CBA, Art. XX.) Frechiani, as President, signed the CBA on behalf of Santa Fe. (Pl. 56.1 Stmt. ¶ 11; CBA at 45.) The Agreement expired on February 4, 2003. (CBA, Art. XIX.)

Defendants claim that in or around the Spring of 2002, after experiencing financial difficulty, Frechiani determined that he "could no longer maintain Santa Fe" and made plans to "shut it down by the summer."(Affidavit of Xerches Frechiani dated Feb. 4, 2005 ("Frechiani Aff."), ¶ 19.) According to Defendants, Santa Fe "was effectively out of business by July 2002."(*Id.* ¶ 22 .)Plaintiffs dispute that Santa Fe ceased business operations in July 2002. (*See* Affidavit of Charles Farinella dated March 1, 2005 ("Farinella Reply Aff."), ¶¶ 31-47.)

"In or around October, 2003 the Funds performed an audit of the defendants' payroll records for the period of July 1, 2001 through to September 30, 2003."(Pl. 56.1 Stmt. ¶ 15; Affidavit of Charles Farinella dated Dec. 2, 2004 ("Farinella Aff."), ¶ 10.) Plaintiffs' auditor determined a delinquency "in fringe benefit funds ... in the aggregate amount of $371,658.04 and $37,193.87 in dues owed to [the Union]." (Farinella Aff. ¶ 10; "Local 530 Payroll Audit" dated Dec. 3, 2004, Ex. B to Farinella Reply Aff. ("Plaintiffs' Audit").) Because Santa Fe did not provide "to the Plaintiffs, to Plaintiffs' counsel or to [Plaintiffs' auditor], the required documentation ... to complete the payroll audit" for the period August, 2002 to September, 2003, the "$371,658.04 audit amount ... includes an assessment made by the auditors for [that period]" pursuant to Article X, Section 7 of the CBA. (Farinella Aff. ¶¶ 14-15; CBA, Art. X, § 7.)

Defendants maintain that "all the documents, payroll records, tax returns and canceled checks made payable to the union demonstrates Santa Fe did not continue operations after July 2002 and the monies it received [after July 2002] was for work previously performed."(Affidavit in Opposition of Pablo F. Sanchez dated Feb. 4, 2005 ("Sanchez Aff."), ¶ 24; *see also* Frechiani Aff. ¶ 31 ("The plaintiffs' contention that Santa Fe continued in business into 2003 is incorrect and not true.").) According to the calculations of Defendants' auditor, for the period of July 1, 2001 to June 30, 2003, "the amount due to Local 530, Welfare Fund and other benefits [was] $198,633.18."(Sanchez Aff. ¶¶ 9-11.) The amount "paid to Local 530 or [the] General Benefits Fund Local 530 for the period February 6, 2001 to July 1, 2002" was $197,039.50, and thus, the amount currently outstanding and owed to "Local 530, Welfare Fund and other benefits" is $1,593.68. (*Id.* ¶¶ 11, 14.)Plaintiffs dispute that they were provided with "documents proving that this money was retainage and not for actual work performed by Santa Fe after the defendant alleges that Santa Fe ceased business operations."(Farinella Reply Aff. ¶¶ 36-37.)

### III. Legal Standard

*3 Federal Rule of Civil Procedure 56(c) provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material issue of fact and that the moving party is entitled to judgment as a matter of law."Fed.R.Civ.P.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:07-cv-08169-AKH   Document 7-5   Filed 11/26/2007   Page 4 of 7

Not Reported in F.Supp.2d                                                                     Page 3
Not Reported in F.Supp.2d, 2005 WL 1384013 (S.D.N.Y.)
(Cite as: Not Reported in F.Supp.2d)

56(c); see *Sharkey v. Ultramar Energy Ltd.*, 70 F.3d 226, 228 (2d Cir.1995). A district judge "must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor."*Cement & Concrete Workers Dist. Council Welfare Fund, Pension Fund, Legal Servs. Fund & Annuity Fund v. Lollo*, 35 F.3d 29, 32 (2d Cir.1994) (internal quotations omitted) (*"Lollo"*).

Once a party moves for summary judgment, in order to avoid the granting of the motion, the non-movant must come forward with specific facts showing that a genuine issue for trial exists. *Tri-State Employment Servs., Inc. v. Mountbatten Sur. Co.*, 295 F.3d 256, 260 (2d Cir.2002). A genuine issue of material fact exists if "a reasonable jury could return a verdict for the nonmoving party."*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); see also *Converse v. Gen. Motors Corp.*, 893 F.2d 513, 514 (2d Cir.1990)."If there is evidence in the record as to any material fact from which an inference could be drawn in favor of the non-movant, summary judgment is unavailable."*Brown v. Dominic Prisco Transp., Inc.*, No. 95 Civ. 1121, 1997 WL 1093463, at *2 (E.D.N.Y. Aug. 16, 1997); see *Rattner v. Netburn*, 930 F.2d 204, 209 (2d Cir.1991).

Rule 56.1 of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York ("Rule 56.1") requires that any motion for summary judgment be accompanied by "a separate, short and concise statement ... of the material facts as to which the moving party contends there is no genuine issue to be tried,"Rule 56.1(a), and that "papers opposing a motion for summary judgment shall include a correspondingly numbered paragraph responding to each numbered paragraph in the statement of the moving party, and if necessary, additional paragraphs containing a separate, short and concise statement of the material facts as to which it is contended that there exists a genuine issue to be tried,"Rule 56.1(b)."If the opposing party [ ] fails to controvert a fact so set forth in the moving party's Rule 56.1 statement, that fact will be deemed admitted. However, ... 'the local rule does not absolve the party seeking summary judgment of the burden of showing that it is entitled to judgment as a matter of law ...' " *Giannullo v. City of New York*, 322 F.3d 139, 140 (2d Cir.2003) (internal citations omitted).

Section 301 of the LMRA ("Section 301") governs labor disputes and states, in relevant part:

Suits for violation of contracts between an employer and a labor organization ... may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

*429 U.S.C. § 185. Section 515 of ERISA applies to this action and states:Every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with the law, make such contributions in accordance with the terms and conditions of such plan or such agreement.

29 U.S.C. § 1145.

IV. Analysis

Defendants do not appear to dispute that Santa Fe is liable to Plaintiffs for a certain amount of delinquent contributions and/or dues. (*See* Sanchez Aff. ¶ 23 ("[B]ased on the work performed by myself and my colleagues, we calculated the arrears to be $1593.68."); *see also* Frechiani Aff. ¶¶ 13, 29 ("It was only in 2002 that I began to realize that Mr. Alvarez [Santa Fe's accountant] was not properly handling my work ... Throughout the entire life of Santa Fe I always tried to properly credit and pay the union all the sums to which it was entitled.").) Thus, the principal issues in dispute are: (A) whether Frechiani should be held individually liable for Santa Fe's delinquent contributions, Pl. Mot. at 4, 16; and (B) the amount of damages owed to Plaintiffs, Pl. Mot. at 8-15; Def. Opp'n at 6-11. These issues are addressed below.

(A) Frechiani Liability

Plaintiffs argue that "[t]he individual Defendant is personally liable for the [delinquent] contributions based on the express language on the signature page of the collective bargaining agreement where the individual Defendant, Frechiani[,] consents to being individually liable for the amounts owed to the Plaintiff by Santa Fe."(Pl. Mot. at 16; *see also* CBA, Art. XX.) Defendants did not address this argument in their Opposition.

While federal law generally governs disputes arising under Section 301, "state law, if compatible with the

Case 1:07-cv-08169-AKH   Document 7-5   Filed 11/26/2007   Page 5 of 7

Not Reported in F.Supp.2d                                                                                                   Page 4
Not Reported in F.Supp.2d, 2005 WL 1384013 (S.D.N.Y.)
(Cite as: Not Reported in F.Supp.2d)

purpose of § 301, may be resorted to in order to find the rule that will best effectuate the federal policy."*Lerner v. Amalgamated Clothing & Textile Workers Union,* 938 F.2d 2, 5 (2d Cir.1991) (applying New York law to resolve whether collective bargaining agreement imposed personal liability on the signatory) (internal citations omitted); *see alsoLollo,* 35 F.3d at 35 (same). Under New York law, there must be " 'clear and explicit evidence' of the defendant's intent to add personal liability to the liability of the entity, where entity liability is established under the agreement."*Mason Tenders Dist. Council Welfare Fund v. Thomsen Constr. Co.,* 301 F.3d 50, 53 (2d Cir.2002) (citation omitted) (*"Thomsen Constr."* ). To determine whether there is sufficient evidence of intent, New York courts consider certain factors, including "the contract's length, the location of the liability provision relative to the signature line, the presence of the name of the signatory in the contract itself, 'the nature of the negotiations leading to the contract,' and the signatory's role in the corporation."*Id.* (quoting *Lollo,* 35 F.3d at 35);*see alsoLerner,* 938 F.2d at 4-5. Individual liability has been found "only in rare cases" because there must be "overwhelming evidence of the signatory's intention to assume personal liability."*Lerner,* 938 F.2d at 5.

*5 Upon consideration of the Agreement and the factors above, the Court concludes that personal liability is not established for the following reasons. First, the "mere presence of a personal liability clause in the signed agreement," without more, does not meet "the high degree of intention" required by New York law. *Thomsen Constr.,* 301 F.3d at 54;*see* CBA at 45. Second, Frechiani signed the Agreement only once and did so in his capacity as "President." (CBA at 45.) "[W]here individual responsibility is demanded the nearly universal practice is that the officer signs twice once as an officer and again as an individual."*Salzman Sign Co. v. Beck,* 176 N.E.2d 74, 76 (N.Y.1961); *see alsoMason Tenders Dist. Council Welfare Fund v. JNG Constr. Ltd.,* No. 00 Civ. 1032, 2003 WL 22999453, at *5 (S.D.N.Y. Dec. 19, 2003) (while two signatures are not required, the "appearance of only one signature further supports a finding that the signatory did not intend to be bound"). Finally, Frechiani's name appears nowhere in the printed text of the 45 page Agreement, and Plaintiffs have presented no evidence of "the nature of the negotiations leading to the contract" indicating an intention on Frechiani's part to be personally bound. *SeeThomsen Constr.,* 301 F.3d at 53.

(B) Damages

Plaintiffs contend that where, as here, an employer fails to comply with the record-keeping requirements of ERISA, "district courts routinely shift the burden to the defendant to disprove the proof of damages."(Pl. Mot. at 8.) Plaintiffs state that "[i]n the voluminous number of documents submitted by the defendants ... there is not one shred of evidence proving that the amount owed is indeed $1,593.60."(Pl. Reply at 8.) Since Defendants have failed to disprove Plaintiffs' damages, "the Court should adopt the audit report and grant the Funds summary judgment ... for the audit amount, plus contractual and statutory amounts ..." (Pl. Mot. at 8.)

Defendants respond that the "presumption of burden shifting in an ERISA litigation ... on a motion for summary judgment ... is not the rule in the Southern District, and is also a gross mischaracterization of the presumption rule as applied in other districts."(Def. Opp'n at 6.) Defendants further respond that even if burden shifting were to apply, "there are significant issues of fact that would preclude use of the presumption of burden shifting," including (i) that "Santa Fe stopped operating in July 2002" and "Plaintiffs are demanding that Defendants pay for benefits for work not performed in 2003;" and (ii) that Plaintiffs' audit is based on the assumption that "Defendants did not produce 'sufficient' records to establish that no work had been performed since July of 2002" and Plaintiffs "ignore that the Defendants have since produced the records and a full audit was conducted."(*Id.* at 6-11.)

Santa Fe has raised genuine issues of material fact as to the amount of damages owed to Plaintiffs, including (i) whether Santa Fe was effectively out of business by July 2002 (or at some other time during the audit period), *see* Sanchez Aff. ¶¶ 11, 15, 25-26; Frechiani Aff. ¶¶ 20-22, 31; Farinella Reply Aff. ¶¶ 31-47; Plaintiffs' Audit; Letter from Pablo F. Sanchez to Milton H. Florez dated Oct. 23, 2004, Ex. C to Farinella Reply Aff. ("Defendants' Audit"); "Employer's Remittance Agreement and Report" dated Aug. 26, 2002, Ex. Q to Farinella Reply Aff.; (ii) whether payments received by Santa Fe until the end of October 2002 were for work previously performed, *seeid.;*"Component Assembly Systems, Inc. Subcontract" dated Aug. 28, 2002, Ex. K to Farinella Reply Aff .; and (iii) whether Santa Fe provided Plaintiffs' auditor with sufficient

Case 1:07-cv-08169-AKH   Document 7-5   Filed 11/26/2007   Page 6 of 7

Not Reported in F.Supp.2d                                                                                                Page 5
Not Reported in F.Supp.2d, 2005 WL 1384013 (S.D.N.Y.)
(Cite as: Not Reported in F.Supp.2d)

documentation to perform a complete audit, *see* Sanchez Aff. ¶ 11; Frechiani Aff. ¶¶ 27-28; Farinella Reply Aff. ¶¶ 31-47; "Facsimile Transmittal Sheet" dated Oct. 27, 2004, Ex. E to Farinella Reply Aff. *See also Demolition Workers Union v. Mackroyce Contracting Corp.,* No. 97 Civ. 4094, 2000 WL 297244, at *8 (S.D.N.Y. Mar. 22, 2000) ("Because further inquiry into the propriety of the auditors' calculations and the adequacy of [defendant's] employee records is needed, this Court must deny the Funds' motion for summary judgment as to the amounts remaining in dispute."); *Central Pension Fund of the Int'l Union of Operating Engineers & Participating Employers v. Murphy's Tire, Inc.,* No. 97 Civ. 814, 1998 WL 865594, at *9 (N.D.N.Y. Dec. 9, 1998) (" 'Although the defendant has not presented precise documentation regarding the number of hours actually worked by employees of sub-contractors-and would need to do so at trial-it has presented evidence which puts the funds calculation into question' and summary judgment is improper.") (quoting *Chicago Dist. Council of Carpenters Pension Fund v. S & M Exteriors, Inc.,* No. 95 C 4456, 1996 WL 327989, at *1-2 (N.D. Ill. June 12, 1996)) (*"Murphy's Tire"*); *Illinois Conference of Teamsters & Employers Welfare Fund v. Steve Gilbert Trucking,* 71 F.3d 1361, 1367 (7th Cir.1995) ("[Defendant's] affidavit and deposition testimony asserted several facts that would cast doubt upon the accuracy of the Fund's calculations, and thus raised a genuine issue of material fact sufficient to withstand summary judgment as to the amount of damages.") (*"Steve Gilbert Trucking"*).

*6 Moreover, Plaintiffs' burden-shifting argument is unpersuasive. Plaintiffs rely on cases from other circuits that were not decided in the same procedural posture as this case. *See Michigan Laborers' Health Care Fund v. Grimaldi Concrete, Inc.,* 30 F.3d 692 (6th Cir.1994); *see also Brick Masons Pension Trust v. Indus. Fence & Supply, Inc.,* 839 F.2d 1333 (9th Cir.1988); *Combs v. King,* 764 F.2d 818 (11th Cir.1985). While the United States Court of Appeals for the Second Circuit has not addressed burden shifting under ERISA for an employer's failure to maintain sufficient records, courts within (and outside) the Second Circuit have rejected the burden-shifting analysis when applied on summary judgment against the employer. *See Demolition Workers,* 2000 WL 297244, at *7 ("This Court, however, will not employ the burden-shifting analysis ... at the summary judgment stage.... It should be emphasized that, at trial, the burden-shifting analysis ... will be utilized."); *Murphy's Tire,* 1998 WL 865594, at *8 ("an employer's failure to come forward with documentary evidence in opposing summary judgment is not fatal"); *Brown,* 1997 WL 1093463, at *10; *see also Steve Gilbert Trucking,* 71 F.3d at 1367 (noting that not one of the cases applying the burden-shifting approach has ever held that "an employer's failure to maintain adequate records compels summary judgment *against* it") (emphasis in original). Inquiries into the "reasonableness of [the Funds'] audit or the adequacy of [defendants'] employee records ... are properly left for trial," *Demolition Workers,* 2000 WL 297244, at *7, and "the proper question in deciding the Fund's motion for summary judgment is whether defendant has submitted evidence that raises a factual dispute as to the amount of damages owing the Fund." *Murphy's Tire,* 1998 WL 865594, at *8.

And, the parties appear to disagree as to the appropriate audit period, *see* Williams Reply Aff. ¶ 11 ("The audit period for this Compl[ai]nt is the period July 1, 2001 through to September 30, 2003[and] not the February 1, 2001 through to July 1, 2002; July 1, 2001 to June 30, 2003[;] and July 1, 2001 through to December 31, 2002 periods for which Mr. Sanchez [Defendants' auditor] claimed he was retained ..."), as well as the implications of the CBA expiring on February 4, 2003, *see* CBA, Art. XIX; *see also Baldwin v. Motor Components, L.L.C.,* No. 03 Civ. 6228T, 2004 WL 1698600, at *4 (W.D.N.Y. Jan. 20, 2004) ("In each CBA between plaintiffs and defendants, an exact time for expiration was established, and accordingly, defendants' obligations under the CBA would expire at that exact time."); *Gorodkin v. Q-Co. Indus., Inc.,* No. 89 Civ. 8033, 1992 WL 122769, at *2 (S.D.N.Y. May 27, 1992) ("We hold that collective bargaining agreements expire according to their own terms and neither employers nor unions have any implied obligation to enter into a new agreement.").

V. Conclusion and Order

*7 For the foregoing reasons, Plaintiffs' motion for summary judgment [13] is granted in part and denied in part as follows:
(i) Summary judgment as to Santa Fe's liability is GRANTED;
(ii) Summary judgment as to the individual liability of Xerches Frechiani is DENIED;
(iii) Summary judgment as to undisputed damages in the amount of $1,593.68 is GRANTED; and

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                  Page 6
Not Reported in F.Supp.2d, 2005 WL 1384013 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d)**

(iv) Summary judgment as to additional damages claimed by Plaintiffs is DENIED.

The parties are requested to appear at a settlement/status conference with the Court on July 1, 2005, at 10:30 a.m., in Courtroom 706 of the Thurgood Marshall Courthouse, 40 Centre Street, New York, New York. The parties are directed to engage in good faith settlement negotiations prior to the conference.

S.D.N.Y.,2005.
Mingoia v. Santa Fe Drywall Corp.
Not Reported in F.Supp.2d, 2005 WL 1384013 (S.D.N.Y.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.