# EXHIBIT E



Not Reported in F.Supp.
Not Reported in F.Supp., 1997 WL 334962 (S.D.N.Y.), Pens. Plan Guide (CCH) P 23938G
(Cite as: Not Reported in F.Supp.)

Page 1

CMason Tenders Dist. Council Welfare Fund v. Masucci
S.D.N.Y.,1997.

United States District Court, S.D. New York.
MASON TENDERS DISTRICT COUNCIL WELFARE FUND, et al., Plaintiffs,
v.
Robert J. MASUCCI, Defendant and Third-Party Plaintiff,
v.
Robert A. PIAZZA and Robert J. CUCULLO, Third Party Defendants.
No. 95 CIV. 9139(SHS).

June 17, 1997.

*Opinion*
STEIN
*1 Plaintiffs and defendant cross-move for summary judgment pursuant to Fed.R.Civ.P. 56(a) upon stipulated facts in this action brought by several union benefit funds against defendant Robert Masucci for moneys allegedly due pursuant to a collective bargaining agreement, including unpaid fringe benefit contributions, interest and statutory damages. The question to be resolved is whether a corporate officer and shareholder who signs an agreement on behalf of his corporation is personally liable for that corporation's contractual obligations based on the inclusion in the contract of a personal liability provision.

The moving parties have stipulated to the following facts: During the relevant time period, Masucci was Vice President and one-third owner of C.M. Roberts Group, Inc. ("Roberts") (Stipulation of Facts dated November 15, 1996, ¶ 6); Masucci executed a collective bargaining agreement ("Agreement") on behalf of Roberts between Mason Tenders District Council of Greater New York ("Union") and Roberts (Stip.¶ 7); the sole communication between plaintiff Union [FN1] and either Roberts or Masucci concerning the Agreement consisted of the transmittal of the Agreement to Roberts and its return after Masucci had signed it (Stip.¶ 10); the Union did not negotiate the terms of the Agreement with either Roberts or Masucci (Stip.¶¶ 11, 12); Masucci did not read the Agreement prior to signing it (Stip.¶ 20); no representatives of any of the plaintiffs informed Masucci that the Agreement contained a provision purporting to hold him personally liable for his employer's obligations under the Agreement (*Id.*) [FN2]; Masucci was not aware of this provision when he signed the Agreement (*Id.*); neither the name C.M. Roberts Group Inc. nor the name Robert J. Masucci appear in the printed portions of the Agreement, although both names were handwritten onto the signature page of the Agreement (Stip.¶ 22); Masucci never intended to assume personal liability for his employer's obligations under the Agreement (Stip.¶¶ 23, 24). The signature page and the last page of the Agreement are reproduced below:

Summary judgment is particularly appropriate where, as here, the parties have stipulated to the material facts. "Summary judgment may be granted only when the moving party demonstrates that 'there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.' " *Allen v. Coughlin,* 64 F.3d 77, 79 (2d Cir.1995) (quoting Fed.R.Civ.P.56(c)). Because, as set forth below, under the facts present in this case, the evidence is not "clear and explicit" that Masucci intended to add his personal liability to that of Roberts, plaintiffs' motion for summary judgment is denied and Masucci's motion for summary judgment is granted.

The Second Circuit has held that "federal law governs disputes arising under section 301 [of the Labor-Management Relations Act of 1947, 29 U.S.C. § 185]," but "state law, if compatible with the purpose of § 301, may be resorted to in order to find the rule that will best effectuate the federal policy." *Lerner v. Amalgamated Clothing & Textile Workers Union,* 938 F.2d 2, 5 (2d Cir.1991) (citations and internal quotations omitted). Applying New York law, the Second Circuit in *Lerner* held that the president's signature on a certificate of ratification for a collective bargaining agreement did not personally bind him to the terms of the agreement absent evidence of his intent to assume personal liability. Thus, "under New York law, an agent who signs an agreement on behalf of a disclosed principal will not be individually bound to the terms of the agreement 'unless there is clear and explicit evidence of the agent's intention to substitute or superadd his personal liability for, or to, that of his principal.' " *Id.*

Case 1:07-cv-08169-AKH   Document 7-6   Filed 11/26/2007   Page 3 of 4

Not Reported in F.Supp.                                                                                                           Page 2
Not Reported in F.Supp., 1997 WL 334962 (S.D.N.Y.), Pens. Plan Guide (CCH) P 23938G
(Cite as: Not Reported in F.Supp.)

(citation omitted); *Cement and Concrete Workers Dist. Council Welfare Fund v. Lollo,* 35 F.3d 29, 35 (2d Cir.1994) (citations omitted).[FN3]

*2 According to the Second Circuit's decision in *Lollo,* the following five factors should be examined in assessing whether the signatory intended to be bound personally: "[1] the length of the contract, [2] the location of the liability provision(s) in relation to the signature line, [3] the presence of the signatory's name in the agreement itself, [4] the nature of the negotiations leading to the contract, and [5] the signatory's role in the corporation." *Id.* At 35.

In this case, all but one of the factors set forth in *Lollo* weigh against imposing personal liability on Masucci. First, the Agreement is a fifty-five page, single-spaced, form contract. (Stip., Exh. A) See *Paribas Properties, Inc. v. Benson,* 146 A.D.2d 522, 525-26, 536 N.Y.S.2d 1007, 1009 (1st Dept.1989) (finding that question of fact existed regarding president's intent to be bound by contract where the "critical paragraph [in a three page contract] appears distinctly just above the signature").

Second, the personal liability provision is not on the signature page (page 54), but rather is on the prior page (page 53) and, although it appears in the final paragraph of the Agreement, it is not distinguished in any manner from the other provisions in the Agreement. *See Lollo,* 35 F.3d at 35 (personal liability provision enforced where it was "prominently displayed immediately above the signature line"); *Mason Tenders District Council Welfare Fund v. United City Contracting Inc.,* 925 F.Supp. 208, 211 (S.D.N.Y.1996) (personal liability provision located on the page "immediately preceding and facing the signature page"). Indeed, the liability provision is merely appended to the "IN WITNESS WHEREOF" paragraph setting forth the authority of the signatories to enter into the Agreement. It bears no title that could in any way imply the existence of a personal liability provision.

Third, Masucci's name is handwritten underneath his signature and is not mentioned within the personal liability provision. (Stip.¶ 22) *See Turtle & Hughes, Inc. v. Browne,* 1996 WL 384895, *3 ( S.D.N.Y. July 9, 1996) (noting that "the crucial inquiry is not whether [the signatory's] name appears in the contract, but whether it appears in the provision purporting to bind her personally").

Fourth, the personal liability provision was not the product of negotiations between Masucci, or Roberts, and the Union. (Stip.¶¶ 10-12) *See Lollo,* 35 F.3d at 35 (enforcing the personal liability provision where it was "expressly bargained for and reached after much negotiation"); *Mason Tenders District Council Welfare Fund v. John's Insulation, Inc.,* 93 Civ. 4948, 1995 WL 527764, *6 (enforcing personal liability provision where signatory was represented by counsel at meetings in which parties agreed to collective bargaining agreement), *modified,*1995 WL 708694 (S.D.N.Y. Dec. 1, 1995).

Finally, the only *Lollo* factor that weighs against Masucci is that he was the Vice President and one-third owner of Roberts. This factor alone is not dispositive of Masucci's intent.

*3 In addition to the *Lollo* factors, there are other indicia surrounding Masucci's signature that demonstrate that he signed the agreement solely in his official capacity. For example, his signature is placed immediately below the name of the company and is preceded by the word "by," and his name and title are written underneath his signature. *See Lerner,* 938 F.2d at 5-6. Also, Masucci's signature appears only once, whereas the "universal practice" is to sign twice to signify an intent to be bound in a dual capacity. *See Turtle & Hughes,* 1996 WL 384895 at *3. Thus, plaintiffs have failed to provide the "clear and explicit evidence" of actual intent required by New York law in order to hold Masucci personally liable under the Agreement. *Lerner,* 938 F.2d at 5.

Subsequent to the Second Circuit's decision in *Lollo,* several other cases in the Southern District of New York have held that the identical provision of the collective bargaining agreement at issue in this litigation binds the employer's signatory. *See Mason Tenders District Council Welfare Fund v. Emini's Construction Co., Inc.,* 96 Civ. 2807, 1997 WL 30963 (S.D.N.Y. Jan. 24, 1997); *Mason Tenders District Council Welfare Fund v. United City Contracting, Inc.,* 925 F.Supp. 208 (S.D.N.Y.1996); *Mason Tenders District Council Welfare Fund v. Kan Klean Industrial, Inc.,* 92 Civ. 7688, 1996 WL 447751 (S.D.N.Y. Aug. 7, 1996); *Mason Tenders District Council Welfare Fund v. John's Insulation, Inc.,* 93 Civ. 4948, 1995 WL 527764 (S.D.N.Y. Sept. 7, 1995). Nonetheless, applying the five factors set forth by the Second Circuit in *Lerner* and *Lollo* to the stipulated facts in this case, it is, as noted above, the

Not Reported in F.Supp. Page 3
Not Reported in F.Supp., 1997 WL 334962 (S.D.N.Y.), Pens. Plan Guide (CCH) P 23938G
**(Cite as: Not Reported in F.Supp.)**

conclusion of this Court that "clear and explicit evidence" of Masucci's intent to be bound personally is lacking.

For the reasons set forth above, plaintiffs' motion for summary judgment is denied and defendant's cross-motion for summary judgment is granted.

> FN1. The parties refer to the Mason Tenders District Council of Greater New York, whose trustee is a plaintiff in this litigation, as the "Plaintiff Union" in the Stipulation of Facts. That convention is adopted in this opinion.
>
> FN2. The last paragraph of the Agreement, which appears on page 53 of that 55 page long document, reads: "IN WITNESS WHEREOF the parties hereto have caused this Agreement to be signed this day and year by their duly authorized officers, and represent to each other that they were duly authorized to enter into this Agreement. The person signing on behalf of the Employer also agrees to be personally bound by and to assume all obligations of the Employer provided in this Trade Agreement and he warrants and represents that he has authority to bind the Employer and the principals or members thereof."
>
> FN3. The Ninth Circuit has declined to follow the Second Circuit's application of state law to determine a similar issue, noting that "federal labor policy necessitates strict construction of the clear and specific terms of a labor agreement." *See Employee Painters' Trust v. J & B Finishes,* 77 F.3d 1188, 1190-92 (9th Cir.1996) (holding president bound by the terms of the agreement he signed regardless of whether he read the contract and understood the legal consequences of signing it).

S.D.N.Y.,1997.
Mason Tenders Dist. Council Welfare Fund v. Masucci
Not Reported in F.Supp., 1997 WL 334962 (S.D.N.Y.), Pens. Plan Guide (CCH) P 23938G

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.