UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------ x
PHILLIPS-VAN HEUSEN CORPORATION,          :
                                          :
                    Plaintiff,            :         07 Civ. 8169 (AKH)
                                          :
         - against -                      :
                                          :
INTERNATIONAL HOME TEXTILES, INC.,        :
and SALO GROSFELD,                        :
                                          :
                    Defendants.           :
------------------------------------------------------------------ x

# MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT SALO GROSFELD'S MOTION TO DISMISS THE COMPLAINT

GREENBERG TAURIG, LLP
MetLife Building
200 Park Avenue, 15th Floor
New York, New York 10166
(212) 801-9200

One International Place, 20th Floor
Boston, MA  02110
(617) 310-6000

*Attorneys for Defendants*
*International Home Textiles, Inc.*
*and Salo Grosfeld*

## **TABLE OF CONTENTS**

Page

Table of Contents ..................................................................................................................... i

Table of Authorities ................................................................................................................ ii

Preliminary Statement ............................................................................................................. 1

Statement of Relevant Facts .................................................................................................... 3

    A.    The Parties ................................................................................................................ 3

    B.    Plaintiff's Claims Against Mr. Grosfeld ................................................................. 4

ARGUMENT ........................................................................................................................... 6

POINT I    PLAINTIFF'S CLAIM OF AN ENFORCEABLE PERSONAL GUARANTY VIOLATES THE NEW YORK STATUTE OF FRAUDS ................... 7

POINT II   AS A MATTER OF LAW, MR. GROSFELD CANNOT BE PERSONALLY BOUND TO THE TERMS OF THE LICENSE AGREEMENT ............................. 10

CONCLUSION ....................................................................................................................... 13

# TABLE OF AUTHORITIES

Page(s)

### Federal Cases

*Cement and Concrete Workers District Council v. Lollo,*
  35 F.3d 29 (2d Cir. 1994) ................................................................................................ 11

*Cortec Indus., Inc. v. Sum Holding L.P.,*
  949 F.2d 42 (2d Cir. 1991) ................................................................................................ 2

*International Audiotext Network v. AT&T Co.,*
  62 F.3d 69 (2d Cir. 1995) .................................................................................................. 2

*Lerner v. Amalgamated Clothing and Textile Workers Union,*
  938 F.2d 2 (2d Cir. 1991) ...................................................................................... 10, 12-13

*Mason Tenders Dist. Council Welfare Fund v. Thomsen Constr. Co.,*
  301 F.3d 50 (2d Cir. 2002) .............................................................................................. 11

*Mason Tenders District Council Welfare Fund v. Thomasen Constr. Co.,*
  164 F. Supp. 2d 379 (S.D.N.Y. 2001) ............................................................................. 11

*Masucci v. Piazza,*
  No. 95 Civ. 9139, 1997 WL 334962 (S.D.N.Y. June 17, 1997) ..................................... 12

*Mingoia v. Santa Fe Drywall Corp.,*
  No. 04 Civ. 1712, 2005 WL 1384013 (S.D.N.Y. June 9, 2005) ..................................... 11

*SEC v. Pimco Advisors Fund Mgmt., LLC,*
  341 F. Supp. 2d 454 (S.D.N.Y. 2004) ............................................................................... 6

*Securities Investor Protection Corp. v. BDO Seidman, LLP,*
  222 F.3d 63, 68 (2d Cir. 2000) .......................................................................................... 6

*Turtle v. Hughes, Inc. v. Browne,*
  No. 95 Civ. 9573, 1996 WL 384895 (S.D.N.Y. July 9, 1996) ................................... 10, 12

### State Cases

*Aksman v. Xiongwei Ju,*
  21 A.D.3d 260, 799 N.Y.S.2d 493 (1st Dep't 2005) ....................................................... 10

*Carmon v. Soleh Boneh Ltd.,*
  206 A.D.2d 450, 614 N.Y.S.2d 555 (2d Dep't 1994) ...................................................... 10

*Clifford R. Gray, Inc. v. LeChase Constr. Servs., LLC,*
    31 A.D. 3d 983, 819 N.Y.S.2d 182 (3d Dep't 2006) .................................................. 10

*Joseph Martin, Jr. Delicatessen, Inc. v. Schumacher,*
    52 N.Y.2d 105, 417 N.E.2d 541 (1981) .................................................................... 9

*Paribas Props., Inc. v. Benson,*
    146 A.D.2d 522, 536 N.Y.S.2d 1007 (1st Dep't 1989) .............................................. 9

*Prospect Street Ventures I, LLC v. Eclipsys Solutions Corp.,*
    23 A.D.3d 213, 804 N.Y.S.2d 301 (1st Dep't 2005) .............................................. 9-10

*Salzman Sign Co. v. Beck,*
    10 N.Y.2d 63, 176 N.E.2d 74 (1961) .................................................................. 9, 11

*Savoy Record Company v. Cardinal Export Corp.,*
    15 N.Y.2d 1, 203 N.E.2d 206 (1964) ..................................................................... 8-9

### Statutes

Fed. R. Civ. P. 12(b). ............................................................................................... 1, 6-7

N.Y. General Oblig. Law § 5-701 (2007) ................................................................. 10, 11

### Other Authorities

Black's Law Dictionary (6th ed. 1990) ........................................................................ 12

Black's Law Dictionary (7th ed. 2000) .......................................................................... 7

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x
PHILLIPS-VAN HEUSEN CORPORATION,

                 Plaintiff,                         07 Civ. 8169 (AKH)

        - against -

INTERNATIONAL HOME TEXTILES, INC.,
and SALO GROSFELD,

                Defendants.
-------------------------------------------------------------------x

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT SALO GROSFELD'S MOTION TO DISMISS THE COMPLAINT

      Defendant Salo Grosfeld ("Mr. Grosfeld"), by his attorneys, Greenberg Traurig, LLP, respectfully submits this memorandum of law in support of his motion, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss with prejudice Claims Three and Four of the Complaint of Plaintiff Phillips-Van Heusen Corporation ("PVH"), for failure to state a claim upon which relief can be granted.

### Preliminary Statement

      Plaintiff, a party to a license agreement (the "License Agreement") with defendant International Home Textiles, Inc. ("IHT"), brings this action against IHT and its President, Salo Grosfeld, seeking redress for alleged breaches of the License Agreement by IHT. According to the Complaint,[1] such breaches include, but are not limited to, IHT's purported failure to: meet minimum sales requirements; use commercially reasonable efforts to "exploit" the License Agreement; make full and complete percentage royalty payments; pay advertising obligations; and furnish royalty statements to PVH. The Complaint asserts two claims against IHT, for

---

[1] A true and correct copy of the Complaint is annexed as Exhibit A to the Affidavit of Timothy E. Di Domenico, sworn to on November 26, 2007 (the "Di Domenico Aff.").

breach of contract and a formal accounting, and two redundant[2] claims against Mr. Grosfeld, for "joint and several liability" and recovery on an alleged personal guarantee.

As shown below, Plaintiff's individual claims against Mr. Grosfeld rest on the same core allegation, one that is contradicted on the face of the License Agreement itself. Plaintiff alleges that Mr. Grosfeld entered into an agreement with PVH pursuant to which he *personally* agreed to be jointly and severally liable for, and to guarantee, IHT's obligations under the License Agreement. Plaintiff further asserts that this "guarantee" by Mr. Grosfeld is "reflected" in the License Agreement itself. According to Plaintiff, Mr. Grosfeld is therefore personally responsible for over $1.8 million in damages that it allegedly suffered through IHT's purported breach of the License Agreement.

The License Agreement, which Plaintiff chose not to append to its pleading, but which we submit with this Motion,[3] makes clear that PVH's claims against Mr. Grosfeld are wholly without merit. The License Agreement simply does not contain a personal guarantee from Mr. Grosfeld. Rather, one of its provisions contemplates that IHT's shareholders might execute a guarantee sometime in the *future* (or not). The same provision mandates that any such future

---

[2] While Plaintiff purports to bring two independent claims against Mr. Grosfeld, for "joint and several liability" and a "guarantee," in reality, these causes of action are duplicative, and comprise a *single* claim pursuant to the alleged personal guarantee. There is no cause of action in New York for "joint and several liability." Rather, "joint and several liability" is a *form of relief* that purportedly arises from the alleged personal guarantee in the License Agreement. The two claims asserted against Mr. Grosfeld are plainly redundant and should therefore be addressed together, as one claim.

[3] PVH relies extensively on the License Agreement in the Complaint, yet it inexplicably failed to append the Agreement to its pleading. In accordance with well-established Second Circuit law, Mr. Grosfeld submits the License Agreement with his moving papers (*see* Exh. B to the Di Domenico Affidavit) and respectfully requests that the Court take the Agreement into consideration on this Motion without converting this proceeding into one for summary judgment. *International Audiotext Network v. AT&T Co.*, 62 F.3d 69, 72 (2d Cir. 1995) ("[W]hen a plaintiff chooses not to attach to the complaint or incorporate by reference a document upon which it solely relies and which is integral to the complaint, the court may nevertheless take the document into consideration in deciding the defendant's motion to dismiss, without converting the proceeding to one for summary judgment.") (internal quotation marks and alterations omitted); *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47-48 (2d Cir. 1991) (court may take into consideration on Rule 12(b)(6) motion to dismiss any documents that plaintiffs possessed, knew about, or relied upon in bringing the suit).

2

guaranty must be approved "in form and substance" by Plaintiff. Nowhere in the Complaint is it alleged that a guaranty approved in form and substance by PVH was ever executed. Thus, at most, the alleged guarantee was an "agreement to agree," which is not enforceable under New York law. Plaintiff's claims against Mr. Grosfeld therefore violate the New York Statute of Frauds, which requires that a promise to answer for the debt of another be writing to be enforceable. Other than the License Agreement (upon which it cannot rely), Plaintiff alleges no writing on the part of Mr. Grosfeld guaranteeing IHT's obligations under the License Agreement.

Even if Plaintiff's claims against Mr. Grosfeld could somehow survive these dispositive hurdles, they would still fail, because Mr. Grosfeld executed the Agreement solely in his corporate capacity as President of IHT, and not in his personal capacity. Therefore, as a matter of law, he may not be held personally liable for IHT's obligations under the License Agreement.

For these reasons, and those set forth below, Plaintiff's duplicative claims against Mr. Grosfeld (Claims Three and Four) should be dismissed in their entirety.

### Statement of Relevant Facts

A.  **The Parties**

Plaintiff PVH is a Delaware corporation with a principal place of business in New York, New York. (Compl., ¶ 4.) PVH is the owner of the IZOD trademark in the United States and its territories, and engages in the manufacture, sale, distribution, promotion and licensing the sale and distribution of products bearing the IZOD mark. (Compl., ¶¶ 5, 14.)

Defendant IHT is a Florida corporation with a principal place of business in Miami, Florida. (Compl., ¶ 6.) IHT manufactures, sells and distributes, among other things, sheets, pillow cases, and towels. (*Id.* ¶ 7.) Defendant Salo Grosfeld is a Florida citizen and the President of IHT. (*Id.*, ¶¶ 9, 10.) He is also a stockholder of IHT. (*Id.*, ¶ 11.)

3

B.   Plaintiff's Claims Against Mr. Grosfeld

On or about January 1, 2006, PVH entered into the License Agreement with defendant IHT, pursuant to which it granted IHT the exclusive right to use the IZOD trademark in connection with the "sale, distribution and promotion of the sheets, pillow cases and towels, including without limitation, wash cloths, hand towels, bath towels, bath sheets, bath mats and beach towels, excluding dish towels" (the "Licensed Products") on a wholesale basis, to certain approved customers.[4] (Compl., ¶ 15.) PVH also granted IHT certain limited and non-exclusive rights to manufacture the Licensed Products. (*Id.*) The License Agreement was for a term commencing on January 1, 2006 and concluding on December 31, 2008. (Compl., ¶ 16.)

The License Agreement provided that, in consideration of the rights granted to it by Plaintiff, IHT was required to make certain periodic payments to PVH, including: royalty payments; guaranteed minimum royalty payments; and advertising expense payments. (Compl., ¶ 17.) The License Agreement further provided that IHT was required to meet certain designated minimum sales requirements for each annual period of the License Agreement. (Compl., ¶ 19.)

Plaintiff had the right to terminate the License Agreement for various reasons, including, without limitation, IHT's failure to achieve minimum sales requirements for any annual period of the License Agreement, and underpayment of percentage royalty payments or minimum guaranteed royalties for any calendar quarter. (Compl., ¶ 28.) PVH also had the right to terminate the Agreement in the event of any breach thereof by IHT that was not cured within fifteen-day notice of such breach. (Compl., ¶ 25.)

Section 11.19, which is found on the very last page of the 33-page License Agreement, states:

---

[4]   The License Agreement is governed by New York law. (Di Domenico Aff., Exh. B, at 31 (Section 11.15).)

4

> 11.19 <u>Guaranties</u>. The obligations of Licensee [IHT] hereunder, including, without limitation, the obligation to pay Percentage Royalties and Guaranteed Minimum Royalties shall be guaranteed <u>jointly and severally by the shareholders of Licensee</u> pursuant to <u>a personal guaranty in form and substance acceptable to PVH</u>.

(Di Domenico Aff., Exh. B, at 33 (emphasis added).

The last page of the License Agreement (not including the appended schedules) contains the following signatures:

PHILLIPS- VAN HEUSEN CORPORATION

By: /S/ Mark D. Fischer
    Name: Mark D. Fischer
    Title: Vice President, General Counsel
    Date: February 3, 2006

INTERNATIONAL HOME TEXTILES, INC.

By: /S/ Salo Grosfeld
    Name: Salo Grosfeld
    Title: President
    Date: 2/2/06

(*Id.*)

Salo Grosfeld executed the License Agreement on behalf of IHT in his corporate capacity as President of IHT, as indicated by, among other things, the handwritten notation "President" that appears below his signature.[5] (*Id.*) The License Agreement is not signed by any of IHT's other shareholders. (*Id.*) The Complaint does not allege that a "personal guaranty in form and substance acceptable to PVH," referred to in Section 11.19 of the License Agreement, was ever proffered to, or executed by, IHT, Mr. Grosfeld, or any of IHT's stockholders.

---

[5] The signature line is the only place that Mr. Grosfeld's name appears in the entire License Agreement, other than in a termination sub-provision on page 22, where it is stated that PVH may terminate the License Agreement if "Salo Grosfeld shall at any time for any reason cease to be active in the management of the Licensee [IHT]," and a notice provision on page 30 of the Agreement. (Di Domenico Aff., Exh. B, at 22, 30.) Neither of these provisions involve the issue of liability under the Agreement.

5

Plaintiff terminated the License Agreement on or about April 27, 2007. (Compl., ¶ 43.) It then brought this action on or about September 18, 2007, asserting four claims against Defendants. The first two claims, for breach of contract (First Claim) and an audit and accounting (Second Claim), are asserted solely against defendant IHT. (Compl., ¶¶ 41-45.) The second two claims, for joint and several liability (Third Claim); and guarantee (Fourth Claim) are asserted solely against defendant Grosfeld. Mr. Grosfeld moves to dismiss these claims, which allege that he personally guaranteed, and agreed to be "jointly and severally liable to PVH" for, IHT's obligations under the License Agreement, including IHT's obligations to pay percentage royalty payments, minimum guaranteed royalties, and advertising obligations. (Compl., ¶¶ 30, 31). Plaintiff asserts that the License Agreement "reflects" this guarantee by Mr. Grosfeld. (Compl., ¶¶ 32, 33), and it seeks to hold Mr. Grosfeld personally liable for over $1,839,333 in damages as a result of IHT's purported breach of the License Agreement. (Compl., p. 12.)

## ARGUMENT

On a motion to dismiss a complaint under Rule 12(b)(6), the Court must accept as true all "well-pleaded" factual allegations in the complaint and draw all "reasonable inferences" in favor of the non-moving party. *SEC v. Pimco Advisors Fund Mgmt., LLC*, 341 F. Supp. 2d 454, 463 (S.D.N.Y. 2004) (citing *Securities Investor Protection Corp. v. BDO Seidman, LLP*, 222 F.3d 63, 68 (2d Cir. 2000)). If it appears beyond doubt that plaintiff can prove no set of facts in support of its claim which would entitle him to relief, the deficient claims should be dismissed. *Securities Investor Protection Corp.*, 222 F.3d at 68.

As shown below, Claims Three and Four of the Complaint should be dismissed pursuant to Rule 12(b)(6) because PVH has asserted no facts upon which relief can be granted against Mr. Grosfeld.

# POINT I

## PLAINTIFF'S CLAIM OF AN ENFORCEABLE PERSONAL GUARANTY VIOLATES THE NEW YORK STATUTE OF FRAUDS

PVH's claims against Mr. Grosfeld must be dismissed, first and foremost, because they do not satisfy the New York Statute of Frauds, which requires that any promise to answer for the debt of another be evidenced in writing and subscribed by the party to be charged:

> Every agreement, promise or undertaking <u>is void</u>, unless it or some memorandum thereof <u>be in writing, and subscribed by the party to be charged therewith</u> . . . if such agreement, promise or undertaking . . . is a special promise to answer to the debt . . . of another person.

N.Y. General Obligations Law Section 5-701 (2007) (emphasis added). Here, no such writing exists. Indeed, the only "writing" alleged in the Complaint is the License Agreement, which, according to Plaintiff, "reflects" Mr. Grosfeld's personal guarantee of IHT's obligations in the License Agreement. (Compl., ¶¶ 32, 33.) In actuality, however, the 33-page License Agreement contains no personal guaranty from Mr. Grosfeld. Rather, Section 11.19 -- the provision upon which Plaintiff appears to base its claims against him -- is entirely conditional and prospective in nature. It states that IHT's obligations to pay percentage royalties and guaranteed minimum royalties "<u>shall be</u> guaranteed jointly and severally by the shareholders of [IHT] <u>pursuant to a personal guaranty in form and substance acceptable to PVH</u>." (Di Domenico Aff., Exh. B, at 33) (emphasis added).[6]

On its face, Section 11.19 is not a personal guaranty from Mr. Grosfeld or anyone else. Rather, the clause contemplates a potential <u>future</u> execution of a personal guaranty of IHT's obligations by IHT's stockholders; it is prospective in nature. It is also conditional, as it requires

---

[6] Black's Law Dictionary defines "guaranty" as an obligation that must be in writing. "Guaranty: A promise to answer for the payment of some debt, or the performance of some duty, in case of the failure of another who is liable in the first instance. . . . [A] guaranty is an undertaking that a person will pay or do some act, is collateral to the duty of the primary obligor, and must be in writing." <u>Black's Law Dictionary</u>, 565 (abridged 7th ed. 2000).

7

that any future personal guaranty by IHT's shareholders be approved "in form and substance" by PVH. (*Id.*) Plaintiff does not allege that such a guaranty was ever executed.[7] Accordingly, its claim of an enforceable "guarantee" on the part of Mr. Grosfeld violates the New York Statute of Frauds.

The New York Court of Appeals' seminal decision, *Savoy Record Company v. Cardinal Export Corporation*, 15 N.Y.2d 1, 203 N.E.2d 206 (1964), is squarely on point with this case. In *Savoy*, a record company (Savoy) signed two letters that incorporated an understanding by which Savoy was to grant to an Italian company (Armonia) the exclusive right to manufacture and market its records in Italy for a period of two years. *Id.* at 2, 206. In return, Armonia, was to pay a royalty for the effective period of the agreement. *Id.* Both of the letters contained the following provision:

> You (Armonia) represent and warrant that [Armonia's agent] Cardinal Export Corp., New York, New York is authorized to sign this agreement on your behalf and Cardinal Export Corp. . . . agrees by its signature to guarantee the payment of all moneys payable to [Savoy] by you under this contract. . . .

*Id.* at 2, 207 (emphasis added). The letters were signed by Savoy's President, on its behalf, and by a representative of Armonia's agent, Cardinal Export Corp., on Armonia's behalf. *Id.* at 3, 207. When Savoy was not paid royalties it claimed were owing to it under the parties' agreement, it sued Cardinal Export, claiming that it had "agreed to guarantee all payments to Savoy" under the contract. *Id.* Cardinal moved to dismiss the complaint on the ground that the purported guarantee was unenforceable under the Statute of Frauds. *Id.*

In reversing the lower courts' denial of Cardinal's motion, the court stated:

---

[7] It also fails to assert any authority, legal or otherwise, by which Mr. Grosfeld, an officer and stockholder in IHT, could bind the other IHT stockholders with his sole signature, such that each of them could be held *personally* responsible for IHT's obligations under the License Agreement.

8

> In this context, the writing must be viewed, as it relates to Cardinal, <u>only as an offer to the agent to enter into a binding personal commitment as guarantor</u> and the courts cannot, without more, convert a signature by Cardinal "As Agent on Behalf of Armonia" into a binding acceptance of such an offer.

*Id.* at 5, 208 (emphasis added). Relying on its prior decision in *Salzman Sign Co. v. Beck*, 10 N.Y.2d 63, 176 N.E.2d 74 (1961), the Court of Appeals held that the guaranty clause, by itself, did not constitute "direct and explicit evidence" that Cardinal intended to be bound by the agreement between Armonia and Savoy. *Id.* at 5, 208-09. Accordingly, it dismissed Savoy's complaint.[8]

The same rationale applies in this case. Given its prospective and conditional nature, the purported guaranty clause in this case is even more tenuous than the one the Court of Appeals refused to enforce in *Savoy Record*. At most, Section 11.19 is an "agreement to agree," which is not enforceable under New York law. *See Joseph Martin, Jr. Delicatessen, Inc. v. Schumacher*, 52 N.Y.2d 105, 109, 417 N.E.2d 541, 543 (1981) ("[I]t is rightfully well settled in the common law of contracts in this State that a mere agreement to agree, in which a material term is left for future negotiations, is unenforceable.") (citations omitted); *Clifford R. Gray, Inc. v. LeChase Constr. Servs., LLC*, 31 A.D. 3d 983, 985-86, 819 N.Y.S.2d 182, 185 (3d Dep't 2006) (holding exclusivity agreement contemplating parties' execution of subcontract if defendant was awarded prime contract was an unenforceable "agreement to agree"); *Prospect Street Ventures I, LLC v. Eclipsys Solutions Corp.*, 23 A.D.3d 213, 213, 804 N.Y.S.2d 301, 302 (1st Dep't 2005) (finding

---

[8]   In doing so, the Court of Appeals recognized the danger of imposing the heavy duty of a guarantor upon a corporate agent:

> The obligation of a guarantor is . . . <u>a heavy one</u>, and <u>the courts should refrain from foisting such an obligation upon a party</u>, be he individual or corporation, <u>who simply signs as agent</u>, absent the requisite <u>clear and unequivocal evidence</u>, to be gathered from the writing itself, <u>that he intended to assume such a liability</u>.

*Savoy Record*, 15 N.Y.2d at 6-7, 203 N.E.2d at 209 (emphasis added).

9

that letter agreement was mere "agreement to agree" rather than enforceable contract because it was expressly conditioned on execution of definitive agreement "satisfactory in form and substance" to both sides); *Aksman v. Xiongwei Ju*, 21 A.D.3d 260, 262-63, 799 N.Y.S.2d 493, 495 (1st Dep't 2005) (refusing to enforce letter of intent that expressed parties' intention to enter into contract "at a later date" and which did not state that an intention to be legally bound until such future agreement was reached); *Carmon v. Soleh Boneh Ltd.*, 206 A.D.2d 450, 450, 614 N.Y.S.2d 555, 555 (2d Dep't 1994) ("[W]here an agreement contains open terms, calls for future approval, and expressly anticipates future preparation and execution of contract documents, there is a strong presumption against finding a binding and enforceable obligation.") (citing *Teachers Ins. & Annuity Ass'n of Am. v. Tribune Co.*, 670 F. Supp. 491, 499 (S.D.N.Y. 1987)).

Claims Three and Four of the Complaint should therefore be dismissed as a matter of law.

## POINT II

### AS A MATTER OF LAW, MR. GROSFELD CANNOT BE PERSONALLY BOUND TO THE TERMS OF THE LICENSE AGREEMENT

Even if Plaintiff's claims against Mr. Grosfeld satisfied the New York Statute of Frauds or met the requirements of an enforceable contract -- they do neither -- the claims would still fail. New York has a "strong presumption" against holding an agent personally liable where he signs an agreement on behalf of a disclosed principal,[9] and an agent who does so will not be individually bound to the terms of the agreement unless there is "clear and explicit evidence" of the agent's intention to "substitute or superadd his personal liability for, or to, that of his principal." *Lerner v. Amalgamated Clothing and Textile Workers Union*, 938 F.2d 2, 5 (2d Cir.

---

[9] *Turtle v. Hughes, Inc. v. Browne*, No. 95 Civ. 9573, 1996 WL 384895, *5 (S.D.N.Y. July 9, 1996) (Ex. C to the Di Domenico Aff.)

10

1991) (citing *Mencher v. Weiss*, 306 N.Y. 1, 4 (1953)); *Mason Tenders District Council Welfare Fund v. Thomasen Constr. Co.*, 164 F. Supp. 2d 379, 381 (S.D.N.Y. 2001); *see Salzman Sign Co.*, 10 N.Y. 2d at 63-64, 176 N.E.2d at 75 (contract executed by individual as president on behalf of corporation was not sufficient to bind officer individually by reason of paragraph personally guaranteeing payments). The mere presence of a personal liability clause in the signed agreement, without more, does not meet the "high degree of intention" required by New York law. *Mingoia v. Santa Fe Drywall Corp.*, No. 04 Civ. 1712, 2005 WL 1384013, *5 (S.D.N.Y. June 9, 2005) (citing *Mason Tenders Dist. Council Welfare Fund v. Thomsen Constr. Co.*, 301 F.3d 50, 54 (2d Cir. 2002)) (Ex. D to the Di Domenico Aff.). There must be "overwhelming evidence" of the signatory's intention to assume personal liability. *Mingoia*, 2005 WL 1384013, at *4 (citing *Lerner*, 938 F.2d at 5); *Mason Tenders District Council Welfare Fund*, 164 F. Supp. 2d at 381. For this reason, individual liability on the part of a corporate agent is found only in "rare cases." *Id.*

Courts in the Second Circuit apply a five-factor analysis to determine whether an agent signatory intended to be personally bound under an agreement. *Cement and Concrete Workers District Council v. Lollo*, 35 F.3d 29 (2d Cir. 1994). The factors to be examined in assessing the signatory's intention include the length of the contract, the location of the liability provisions in relation to the signature line, the presence of the signatory's name in the agreement itself, the nature of the negotiations leading to the contract, and the signatory's role in the corporation. *Lollo*, 35 F.3d at 35 (*citing Mencher v. Weiss*, 306 N.Y. 1, 4 (1953)). A court cannot assign personal liability to a signatory unless consideration of these five factors presents "overwhelming evidence" of a signatory's intent to be personally bound. *Lerner*, 938 F.2d at 5 (*citing Mencher*).

11

Here, the above factors weigh overwhelmingly against imposing personal liability against Mr. Grosfeld. First, the License Agreement is 33 pages long, single-spaced, and includes several schedules. This is much longer than the comparably short agreement involved in at least one "rare" case where personal liability has been found. *See, e.g., Paribas Props., Inc. v. Benson*, 146 A.D.2d 522, 525-26, 536 N.Y.S.2d 1007, 1009-10 (1st Dep't 1989) (finding personal liability where, among other things, agreement was only three pages long and therefore "not a trap for an unwary signatory," and where liability provision at issue had been expressly negotiated and revised several times).

Second, while the signature lines are on the same page as the provision containing the purported personal guaranty (Section 11.19), Mr. Grosfeld's name does not appear in the guaranty provision, which, in any event, is prospective and entirely conditional in nature. *See supra* at 7-10; Di Domenico Aff., Exh. B, at 33. *Masucci v. Piazza*, No. 95 Civ. 9139, 1997 WL 334962, *2 (S.D.N.Y. June 17, 1997) (absence of corporate officer and one-third shareholder's name in personal liability provision weighed against imposition of personal liability) (Ex. E to the Di Domenico Aff.); *Turtle*, 1996 WL 384895, at *3 (stating that "crucial inquiry" is not whether signatory's name appears in the contract, but "whether it appears in the provision purporting to bind her personally") (Ex. C to the Di Domenico Aff.).

Third, Mr. Grosfeld signed the License Agreement solely in his corporate capacity as President of IHT, and not in his individual capacity. (Di Domenico Aff., Exh. B, at 33.) His signature is located immediately below the name of the company and is preceded by the word "By." In this context, the use of the word "by" means "[t]hrough the means, act, agency, or instrumentality of." *Lerner*, 938 F.2d at 6; *see* Black's Law Dictionary 201 (6th ed. 1990). Thus, Mr. Grosfeld signed the License Agreement as an agent for, and "on behalf of" IHT in his

12

capacity as an agent of the corporation. The handwritten word "President" below his signature further demonstrates that Mr. Grosfeld signed the License Agreement solely in his corporate capacity. *Lerner*, 938 F.2d at 6 (holding that President of corporation did not intend to assume personal liability under collective bargaining agreement where he signed on behalf of corporation and wrote "it's [sic] President" on certificate in agreement).[10] Taken together, the above factors weigh overwhelmingly against imposing personal liability on Mr. Grosfeld, even if one accepts as true PVH's claim that Mr. Grosfeld was "primarily involved" in the negotiations that led to the execution of the License Agreement (Compl., ¶ 12).

Plaintiff's duplicative claims against Mr. Grosfeld should be dismissed on this basis as well.

## CONCLUSION

For the foregoing reasons, defendant Salo Grosfeld respectfully requests that the Court dismiss Claims Three and Four of the Complaint, and grant such other and further relief as it

---

[10] Further, as stated above, Mr. Grosfeld's name appears nowhere else in the License Agreement, except in a termination sub-provision on page 22, and a notice provision on page 30. Neither provision has anything to do with liability under the Agreement. *See supra* at 5 n.5.

deems just and proper.

Dated: New York, New York
      November 26, 2007

Respectfully submitted,

GREENBERG TAURIG, LLP

By: _____
Timothy E. Di Domenico (TD 4900)

MetLife Building
200 Park Avenue, 15th Floor
New York, New York 10166
(212) 801-9200

-and-

Of Counsel:

John F. Farraher, Jr.
Greenberg Traurig, LLP
One International Place, 20th Floor
Boston, MA 02110
(617) 310-6000

*Attorneys for Defendants*
*International Home Textiles, Inc.*
*and Salo Grosfeld*

## CERTIFICATE OF SERVICE

I, Timothy E. Di Domenico do hereby certify that on November 26, 2007, I caused a copy of the foregoing Memorandum of Law in Support of Defendant Salo Grosfeld's Motion to Dismiss the Complaint to be served by Federal Express overnight delivery upon the following individual:

> Arnold Weiss, Esq.
> Weiss & Hiller, P.C.
> 600 Madison Avenue
> New York, NY 10022
> (212) 319-4000
>
> *Attorneys for Plaintiff*
> *Phillips-Van Heusen Corporation*

_____
Timothy E. Di Domenico (TD 4900)