# EXHIBIT 1A

EXECUTION COPY

LICENSE AGREEMENT

BETWEEN

PHILLIPS-VAN HEUSEN CORPORATION

AND

INTERNATIONAL HOME TEXTILES, INC.

---

IZOD

---

SHEETS, PILLOW CASES AND TOWELS (INCLUDING, WITHOUT LIMITATION, WASH CLOTHS, HAND TOWELS, BATH TOWELS, BATH SHEETS , BATH MATS AND BEACH TOWELS BUT EXCLUDING DISH TOWELS)

---

UNITED STATES OF AMERICA ITS TERRITORIES AND POSSESSIONS

---

JANUARY 1, 2006

---

## TABLE OF CONTENTS

Page

ARTICLE I. GRANT ..................................................................................................... 1
   1.1    License ....................................................................................................... 1
         1.1.1    Exclusion of E-Commerce Sales. ...................................... 1
         1.1.2    Manufacturing; Right to Manufacture Outside of Territory; No
      Exporting. ................................................................................................. 1
   1.2    Reservation ................................................................................................ 2
         1.2.1    Retail Sales. ........................................................................ 2
         1.2.2    License Strictly Limited ....................................................... 2
   1.3    Definitional Disputes ................................................................................ 2
   1.4    Exploitation of the License ....................................................................... 2
         1.4.1    Commercially Reasonable Efforts ....................................... 3
         1.4.2    Additional Licenses Prohibited ........................................... 3
         1.4.3    Limitation on Licensed Products. ........................................ 3
         1.4.4    Merchandising Calendar. ..................................................... 3
         1.4.5    Distribution Channels ......................................................... 3
         1.4.6    Designer. ............................................................................. 3
   1.5    Showrooms; Trade Shows ........................................................................ 3
         1.5.1    Showrooms .......................................................................... 3
         1.5.2    In-Store Shops. ................................................................... 4
         1.5.3    Tradeshows ......................................................................... 4
ARTICLE II. LICENSE PERIOD ................................................................................. 4
   2.1    Initial License Period ............................................................................... 4
   2.2    Renewal License Period ........................................................................... 4
ARTICLE III. SALES ................................................................................................... 5
   3.1    Sales/Marketing and Production Plans ..................................................... 5
   3.2    Minimum Sales Levels ............................................................................. 5
ARTICLE IV. LICENSE FEES ..................................................................................... 5
   4.1    Requirement of Royalties ......................................................................... 5
         4.1.1    Percentage Royalties ........................................................... 5
         4.1.2    Gross and Net Sales ............................................................ 5
         4.1.3    Guaranteed Minimum Royalties .......................................... 6
   4.2    Royalty Statements .................................................................................. 6
   4.3    Books and Records .................................................................................. 7
   4.4    Underpayments ........................................................................................ 7
   4.5    Manner of Payment .................................................................................. 7
   4.6    Interest on Late Payment ......................................................................... 7
   4.7    No Set-Off. ............................................................................................... 8
   4.8    Taxes. ....................................................................................................... 8
   4.9    Financial Statements ................................................................................ 8
ARTICLE V. ADVERTISING ....................................................................................... 8
   5.1    Advertising Obligation. ............................................................................ 8
         5.1.1    Marketing Obligation ........................................................... 8
   5.2    Advertising Support. ................................................................................ 9

i

5.3     Use of Advertising and Promotional Materials.. ........................................... 9
ARTICLE VI. QUALITY AND STANDARDS ............................................................... 9
6.1     Distinctiveness and Quality of the Trademark....................................... 9
        6.1.1   Distinctiveness and Quality. ...................................................... 9
        6.1.2   Form of Trademark. . ................................................................ 10
6.1.3   Pricing. ............................................................................................ 10
        6.2     Product Approval; Quality Control.......................................... 10
6.3     Manufacture of Licensed Products by Third Parties.............................. 10
6.4     Non-Conforming Products................................................................... 11
6.5     Approvals............................................................................................ 11
6.6     Marking, Labeling and Packaging ....................................................... 11
6.7     Inspection of Facilities ....................................................................... 12
6.8     Samples and Artwork.......................................................................... 12
6.9     PVH Designs....................................................................................... 12
6.10    Know-how............................................................................................ 13
6.11    Market Weeks ...................................................................................... 13
6.12    Meetings.............................................................................................. 13
6.13    Design Rights...................................................................................... 13
6.14    Approved Accounts ............................................................................. 13
6.15    Disposal of Seconds and Close-Outs .................................................. 14
        6.15.1  Seconds ..................................................................................... 14
        6.15.2  Close-Outs................................................................................. 15
6.16    Non-Approved Sales............................................................................ 15
6.17    Standards of Conduct.......................................................................... 15
        6.17.1  Standards................................................................................... 15
        6.17.2  Audit Requirement..................................................................... 15
        6.17.3  Approval .................................................................................... 16
        6.17.4  Use of Facility........................................................................... 16
ARTICLE VII. THE TRADEMARK................................................................................ 16
7.1     Rights to the Trademark....................................................................... 16
        7.1.1   Ownership of Trademark ........................................................... 16
        7.1.2   No Adverse Actions ................................................................... 16
        7.1.3   Additional Registrations ........................................................... 17
        7.1.4   Survival...................................................................................... 17
7.2     Protecting the Trademark..................................................................... 17
7.3     Use of the Trademark........................................................................... 17
        7.3.1   Compliance with Legal Requirements. ..................................... 17
        7.3.2   Use with Other Name................................................................. 17
        7.3.3   Execution of Documents............................................................ 18
7.4     Ownership of Copyright ....................................................................... 18
7.5     Infringements, Counterfeits and Parallel Imports................................. 18
        7.5.1   Infringements.. .......................................................................... 18
        7.5.2   Counterfeits and Parallel Imports. ............................................ 19
                7.5.2.1  PVH and Licensee to Cooperate ................................. 19
                7.5.2.2  Diversion                                                  19
        7.5.3   Legal Proceedings. .................................................................... 19

| | | |
|---|---|---|
| 7.6 | Trademark Security | 20 |
| | 7.6.1 Counterfeit Protection | 20 |
| | 7.6.2 Trademark Security Plan | 20 |
| 7.7 | Use of Trademark on Invoices, etc | 20 |
| 7.8 | Monitoring | 20 |
| ARTICLE VIII. TERM AND TERMINATION | | 20 |
| 8.1 | Expiration | 20 |
| 8.2 | Other Rights Unaffected | 20 |
| 8.3 | Immediate Right of Termination of the License | 21 |
| 8.4 | Termination With Notice and Right to Cure | 22 |
| 8.5 | Effect of Termination | 22 |
| | 8.5.1 Expiration or Full Termination | 22 |
| | 8.5.2 Partial Termination | 22 |
| 8.6 | Inventory Upon Termination | 23 |
| 8.7 | Freedom to License | 23 |
| 8.8 | Rights Personal | 24 |
| 8.9 | Trustee in Bankruptcy | 24 |
| 8.10 | Compensation | 24 |
| ARTICLE IX. INDEMNIFICATION AND INSURANCE | | 25 |
| 9.1 | Indemnification by Licensee | 25 |
| 9.2 | Notice of Suit or Claim | 26 |
| 9.3 | Indemnification by PVH | 26 |
| 9.4 | Insurance | 26 |
| | 9.4.1 Requirement | 26 |
| | 9.4.2 Theft and Destruction Coverage | 27 |
| | 9.4.3 General Provision | 27 |
| | 9.4.4 Approved Carrier/Policy Changes | 27 |
| | 9.4.5 Evidence of Coverage | 27 |
| | 9.4.6 Territory | 27 |
| ARTICLE X. COMPLIANCE WITH LAWS | | 27 |
| 10.1 | Compliance with Laws | 27 |
| 10.2 | Equitable Relief | 28 |
| ARTICLE XI. MISCELLANEOUS | | 28 |
| 11.1 | Warranties and Representations of the Parties | 28 |
| 11.2 | Definitions | 29 |
| 11.3 | Notices | 29 |
| 11.4 | No Assignment Without Consent | 30 |
| 11.5 | No Sublicense or Distribution Agreement Without Consent. | 30 |
| 11.6 | Assignment by PVH | 30 |
| 11.7 | No Agency | 30 |
| 11.8 | Suspension of Obligations | 30 |
| 11.9 | Benefit | 30 |
| 11.10 | Entire Agreement; Amendment | 30 |
| 11.11 | Non-Waiver | 31 |
| 11.12 | Severability | 31 |
| 11.13 | Headings | 31 |

iii

11.14  Counterparts .................................................................................. 31
11.15  Governing Law ............................................................................. 31
11.16  Jurisdiction ................................................................................... 31
11.17  Non-Solicitation ........................................................................... 32
11.18  Confidentiality. ............................................................................ 32
11.19  Guaranties. ................................................................................... 33
11.20  Construction .................................................................................. 33

SCHEDULES

6.14   APPROVED ACCOUNTS
6.15   APPROVED SECONDS AND CLOSE-OUT ACCOUNTS

EXHIBITS

EXHIBIT A   ROYALTY STATEMENT
EXHIBIT B   ADVERTISING EXPENDITURE FORM
EXHIBIT C   SAMPLE SUBMISSION FORM
EXHIBIT D   THIRD-PARTY MANUFACTURING AGREEMENT
EXHIBIT E   "A SHARED COMMITMENT –REQUIREMENTS FOR SUPPLIERS,
                   CONTRACTORS, BUSINESS PARTNERS" and "STATEMENT OF
                   CORPORATE RESPONSIBILITY"
EXHIBIT F   PRODUCTION FACILITY EVALUATION FORM

<u>LICENSE AGREEMENT</u>

LICENSE AGREEMENT, dated <u>as of January 1, 2006</u>, between PHILLIPS-VAN HEUSEN CORPORATION ("<u>PVH</u>"), a Delaware corporation, and INTERNATIONAL HOME TEXTILES, INC. (the "<u>Licensee</u>"), a Florida corporation, with offices located at 19401 West Dixie Highway, Miami, Florida 33180.

WITNESSETH:

WHEREAS, PVH is the owner in the United States of America, its possessions and territories (the "<u>Territory</u>") of the IZOD trademark and Licensee desires to obtain from PVH, and PVH is willing to grant to Licensee, a license to use the Trademark (as defined herein) in connection with the manufacture, sale, distribution and promotion of sheets, pillow cases and towels, including, without limitation, wash cloths, hand towels, bath towels, bath sheets, bath mats and beach towels but excluding dish towels (collectively, the "<u>Products</u>") in the Territory, subject to the terms contained in this Agreement. Products bearing the Trademark are hereinafter referred to as "<u>Licensed Products</u>." Capitalized terms referred to in Section 11.2 are defined in the Sections set forth therein.

NOW, THEREFORE, the parties hereto agree as follows:

## ARTICLE I. GRANT

1.1     <u>License</u>. PVH hereby grants to Licensee an exclusive license (the "<u>License</u>") during the License Period, without the right to sublicense or assign, and subject to and in accordance with all of the terms contained in this Agreement, to use the Trademark, solely in the forms approved by PVH, in connection with the sale, distribution and promotion of the Licensed Products, solely on a wholesale basis, to approved customers in the Territory. Licensee may authorize its Affiliates to distribute Licensed Products on a wholesale basis to approved customers in the Territory, subject to and accordance with the terms contained herein, provided Licensee shall remain responsible to PVH for the performance of all obligations hereunder, and, provided further that Licensee pay to PVH Percentage Royalties on such sales of Licensed Products in accordance with the terms of Section 4.1.1 hereof.

1.1.1    <u>Exclusion of E-Commerce Sales</u>. The License excludes the sale, distribution and promotion of Licensed Products via commerce conducted on, made available through or facilitated by interactive or electronic media, whether now known or hereafter developed, including, without limitation, the Internet and on-line service providers, regardless of the means through which it is conducted ("<u>E-Commerce</u>"), other than on a wholesale basis to approved customers in the Territory.

1.1.2    <u>Manufacturing; Right to Manufacture Outside of Territory; No Exporting</u>. Licensee shall have the non-exclusive right to manufacture Licensed Products in or outside of the Territory and the right to import into the Territory Licensed Products manufactured outside the Territory; <u>provided</u>, <u>however</u>, that the right to manufacture Licensed Products outside of the Territory and import such goods into the Territory is conditioned upon Licensee taking all reasonable precautions to prevent any and all labels, tags, packaging material,

business supplies and advertising and promotional materials and any and all other forms of identification bearing the Trademark (collectively, the "Labels") from being used otherwise than in connection with the distribution and sale of Licensed Products within the Territory. Licensee shall neither export Licensed Products from the Territory nor sell Licensed Products to any entity which it knows or has any reason to believe intends to export Licensed Products from the Territory.

     1.2    Reservation. PVH reserves all rights in and to the Trademark except as specifically granted herein including, without limitation, those rights set forth in this Section. PVH may exercise any of its rights, or authorize others to exercise such rights at any time.

     1.2.1   Retail Sales. PVH reserves the exclusive right to use the Trademark upon and/or in connection with the retail sale, distribution and promotion of Licensed Products, including, without limitation, in PVH's company-controlled retail stores and via E-Commerce in and outside of the Territory. PVH reserves the right in connection with such sale, distribution and promotion to manufacture or purchase Licensed Products from any supplier PVH chooses, including Licensee; provided, however that PVH shall purchase Licensed Products from the Licensee for such stores to the extent that PVH reasonably determines that the Licensee is competitive in cost, quality, service and availability with other suppliers. Licensee acknowledges and agrees that sales to PVH's company-controlled stores are subject to a corporate discount from the agreed upon wholesale price. Such discount is established by PVH from time to time and is currently 3% off of the invoice price. Nothing herein shall prohibit approved customers from selling Licensed Products purchased from Licensee in the customers' approved locations, subject to the terms hereof.

     1.2.2   License Strictly Limited. Nothing contained in this Agreement shall be construed as an assignment or grant to Licensee of any right, title or interest in or to the Trademark, it being understood and acknowledged by Licensee that all rights relating thereto are reserved by PVH except for the rights specifically granted to Licensee in this Agreement. Licensee understands and agrees that PVH, and its other licensees and sublicensees, may manufacture or authorize third parties to manufacture Licensed Products in the Territory for sale outside of the Territory, or to manufacture and sell or authorize third parties to manufacture and sell products of any and all types and descriptions other than the Products under the Trademark in or outside the Territory. In addition, no license is granted hereunder for the manufacture, sale or distribution of the Licensed Products to be used for publicity purposes (other than publicity of the Licensed Products), in combination sales or as premiums or giveaways, or to be disposed of under or in connection with similar methods of merchandising, such rights being specifically reserved for PVH.

     1.3    Definitional Disputes. Licensee acknowledges that due to the nature of the marketplace, the definition of Products may change or may not be amenable to precise delineation. Licensee agrees that if there is a dispute over the definition of Licensed Products, PVH shall render a reasonable written determination which shall be conclusive and binding on Licensee without legal recourse.

     1.4    Exploitation of the License.

2

1.4.1 _Commercially Reasonable Efforts._ At all times during the License Period, Licensee shall use commercially reasonable efforts to exploit the License throughout the Territory, including, but not limited to, selling a sufficiently representative quantity of all styles, fabrications, colors and sizes of the Licensed Products; offering for sale the Licensed Products so that they may be sold to consumers on a timely basis; maintaining a sales force sufficient to provide effective distribution throughout all areas of the Territory; and cooperating with marketing, merchandising, sales and anti-counterfeiting programs of PVH and any of its licensees.

1.4.2 _Additional Licenses Prohibited._ Licensee shall not enter into or obtain from any third party any license that would directly or indirectly compete with the Licensed Products without the prior written consent of PVH; provided, however, this provision shall not apply to any existing licenses owned by Licensee on or prior to the date hereof, or any renewals thereof, or any license hereafter entered into with Martha Stewart, Pillowtex, Cannon or Fieldcrest for any of their respective brands.

1.4.3 _Limitation on Licensed Products._ To the extent that Licensee, in PVH's reasonable opinion, is unable to sell a commercially reasonable quantity of a category of Products (e.g. sheets, beach towels, etc.), PVH shall give Licensee written notice thereof. Licensee shall submit to PVH a marketing plan with respect to such category of Licensed Products setting forth in reasonable detail steps to be taken by Licensee to increase the sales thereof within 30 days of its receipt of such notice. In the event that Licensee's sales of such category of Products continue to be commercially unreasonable in PVH's reasonable opinion for the 12-month period following the receipt of PVH's initial written notice, PVH shall have the right, upon 30 days' written notice to Licensee, to terminate the License with respect to such category of Product. Thereupon, the provisions of Section 8.5.2 shall control the disposition of Inventory of such category of Product.

1.4.4 _Merchandising Calendar._ Licensee shall, as promptly as shall be practicable, provide PVH with a merchandising calendar for each product category and, after consultation with PVH, a detailed timeline for each product category launch.

1.4.5 _Distribution Channels._ Licensee agrees that its sales of Licensed Products will be appropriately distributed among the various channels of distribution.

1.4.6 _Designer._ Licensee shall appoint and maintain at all times during the License Period, a designer as a full-time employee of Licensee dedicated exclusively to the design of the Licensed Products. At all times, Licensee must maintain sufficient staffing to support the business properly and to endeavor to maximize sales of Licensed Products.

1.5 _Showrooms; Trade Shows._

1.5.1 _Showrooms._ Licensee shall display the Licensed Products for sale in a separate showroom at its Miami headquarters and such other showrooms as PVH shall from time to time approve. All such showrooms shall be designed in conformity with the prestige associated with PVH and the Trademark, and the plans therefore shall be subject to the prior written approval of PVH, which approval shall not be unreasonably withheld or delayed. The

3

maintenance and renovation of such showrooms shall be subject to the ongoing direction and approval of PVH, which approval shall not be unreasonably withheld or delayed. Subject to prior written approval by PVH, Licensee may display the Trademark on showroom doors and office directories. Immediately upon execution of this Agreement, Licensee shall send photographs of its current IZOD showroom to PVH for PVH's approval.

   1.5.2 <u>In-Store Shops</u>. Licensee will, at PVH's request, participate in any in-store shop or main floor fixturing programs with any Approved Accounts. All such programs shall be designed in conformity with the prestige associated with PVH and the Trademark, and the plans therefor shall be subject to the prior written approval of PVH. To the extent that the same is not paid for by Licensee's customers, Licensee shall pay for the necessary fixturing for the display of the Licensed Products.

   1.5.3 <u>Tradeshows</u>. Licensee shall display the Licensed Products all tradeshows attended by Licensee at which Products are promoted for sale in the Territory, at Licensee's sole cost and expense. PVH may require Licensee to participate in PVH's booth at the MAGIC Convention at a cost to Licensee equal to a pro rata portion of the total costs of PVH's participation at the MAGIC Convention, allocated equally among all of PVH's other licensees participating in PVH's booth for the Trademark.

## ARTICLE II. LICENSE PERIOD

  2.1 <u>Initial License Period</u>. The initial license period shall commence on January 1, 2006 and shall end on December 31, 2008 (the "<u>Initial License Period</u>"), unless sooner terminated as herein provided.

  2.2 <u>Renewal License Period</u>. Licensee shall have the right, provided that Licensee is not then in default of any of the provisions of this Agreement, including, without limitation, the provisions of Section 3.2, to request an extension of the License for an additional license period (the "<u>Renewal License Period</u>"; the Initial License Period and any Renewal License Period together are referred to as the "<u>License Period</u>"). Said right to request an extension shall be exercised by written notice by Licensee to PVH, received by PVH not more than nine months nor less than six months prior to the expiration of the Initial License Period. Any extension of this License shall be for a duration and on terms (including appropriate revisions of Sections 3.2 and 4.1.3) mutually acceptable to PVH and Licensee, in their sole and absolute discretion. Licensee acknowledges that the six to nine-month period is necessary in order to maintain the continuity of PVH's licensing and marketing programs and to protect the goodwill associated with the Trademark. Licensee agrees that "time is of the essence" and that Licensee's failure to exercise timely its option to request an extension of the License or to reach agreement with PVH on terms, shall be construed as a decision by Licensee that it has elected not to extend the License and shall permit PVH immediately to replace Licensee by executing a new license agreement with a third party, to commence after the Initial License Period has ended, without any liability to Licensee.

4

## ARTICLE III. SALES

3.1    Sales/Marketing and Production Plans. Not later than the execution hereof with respect to the 2006 calendar year and not later than 60 days prior to the beginning of each subsequent calendar year during the License Period, Licensee shall submit to PVH a written marketing plan, forecast and pro forma business plan (a "Licensing Forecast"), which shall contain a reasonable, good faith estimate of Net Sales for such Annual Period. The term "Annual Period" refers to each calendar year during the License Period.

3.2    Minimum Sales Levels. During each Annual Period, Licensee shall be required to meet the following minimum Net Sales levels, not including sales to PVH or sales in breach of any provision hereof, including, but not limited to, sales of Non-Conforming Products, Close-Outs or Seconds in excess of the amounts permissible under this Agreement (the "Minimum Sales"):

| Annual Period | Minimum Sales |
|---|---|
| 01/01/06-12/31/06 | $8,000,000 |
| 01/01/07-12/31/07 | $11,000,000 |
| 01/01/08-12/31/08 | $13,000,000 |

## ARTICLE IV. LICENSE FEES

4.1    Requirement of Royalties. All Licensed Products sold by Licensee or its Affiliates require the payment of royalties by Licensee to PVH as set forth in this Article IV. "Affiliates" of any party means all persons and business entities, whether corporations, partnerships, joint ventures or otherwise, which now or hereafter control, or are owned or controlled, directly or indirectly, by such party, or are under common control with such party.

4.1.1    Percentage Royalties. In respect of each Annual Period or portion thereof during the License Period, Licensee shall pay PVH percentage royalties (the "Percentage Royalties") in the amount of 5.0% of all Net Sales other than (i) sales to PVH which shall be in the amount of 3.0% of Net Sales and (ii) as set forth in Section 6.16 herein. Percentage Royalties shall be payable in quarterly installments not later than April 30, July 31, October 31 and January 31 during the License Period commencing April 30, 2006; provided that the last payment of Percentage Royalties during the Initial License Period shall be payable on January 31, 2009. All royalties shall accrue upon the sale of the Licensed Products regardless of the time of collection of the proceeds from such sale by Licensee or the failure to collect such proceeds. For purposes of this Agreement, a Licensed Product shall be considered "sold" upon the date of billing, invoicing, shipping or payment, whichever occurs first.

4.1.2    Gross and Net Sales. "Gross Sales" means the invoiced amount of Licensed Products, including, but not limited to, Seconds and Close-Outs, sold by Licensee, or on a wholesale basis by Licensee's Affiliates, before any deductions for returns, allowances, discounts, insurance or freight. "Net Sales" means the Gross Sales of Licensed Products less returns actually allowed and actually received by Licensee, price allowances and customary and usual trade discounts granted. The combined deductions from the Gross Sales for returns,

5

allowances and trade discounts shall not exceed 8% of the Gross Sales of the Licensed Products in any Annual Period. No other deductions shall be taken. It is the intention of the parties that Percentage Royalties will be based on the bona fide wholesale prices at which Licensee sells Licensed Products to independent retailers in arms' length transactions. In the event Licensee shall sell Licensed Products to its Affiliates for retail sales direct to consumers, Gross Sales, Net Sales and Percentage Royalties shall be calculated on the basis of such a bona fide wholesale price irrespective of Licensee's internal accounting treatment of such sales.

4.1.3  Guaranteed Minimum Royalties. In respect of each Annual Period or portion thereof during the License Period, Licensee shall pay to PVH the minimum royalties listed below, excluding (i) royalties paid on sales to PVH; (ii) royalties paid on sales in breach of any provision hereof, including, without limitation, royalties paid pursuant to Section 6.16 hereof; and (iii) royalties paid on sales of Non-Conforming Products, Seconds and Close-Outs (the "Guaranteed Minimum Royalties"), in four equal installments no later than April 30, July 31 and October 31, and January 31 for the immediately preceding calendar quarter commencing April 30, 2006 and ending on January 31, 2009; provided, however, that (x) the installment of the Guaranteed Minimum Royalties for any calendar quarter shall be payable only to the extent of the excess, if any, of such installment over the Percentage Royalties under Section 4.1.1 for such calendar quarter and (y) if the actual payments under Section 4.1.1 and this Section 4.1.3 for all prior calendar quarters in respect of such Annual Period, exceed the Guaranteed Minimum Royalties payable for such Annual Period, no further Guaranteed Minimum Royalties shall be payable in respect of such Annual Period.

| Annual Period | Guaranteed Minimum Royalties |
| --- | --- |
| 01/01/06-12/31/06 | $400,000 |
| 01/01/07-12/31/07 | $550,000 |
| 01/01/08-12/31/08 | $650,000 |

4.2  Royalty Statements. At the time each payment of Guaranteed Minimum Royalties and Percentage Royalties is due, Licensee shall deliver to PVH a royalty statement, substantially in the form of Exhibit A, signed by the chief financial officer of Licensee and certified by such officer as complete and accurate, setting forth for each month during the immediately preceding calendar quarter, and for such calendar quarter in the aggregate, and, in the case of the statement for each calendar quarter ending December 31, for each Annual Period in the aggregate, all of the following information: (i) Gross Sales by product category; (ii) the amount of returns, allowance and discounts from Gross Sales which properly may be deducted therefrom in calculating Net Sales; (iii) Net Sales by product category; (iv) a computation of the amount of Percentage Royalties by the number of units in each product category by size of the Licensed Products; (v) Net Sales by account, including separately Net Sales to PVH, Net Sales of Seconds, total units of Seconds sold, Net Sales of Close-Outs and total units of Close-Outs sold; and (vi) all of Licensee's inventory of Licensed Products and of related work in process (collectively, the "Inventory"). Licensee shall identify separately in such statements all sales to Affiliates. Within 90 days after the end of each Annual Period, Licensee will also deliver to PVH a certification from its independent auditors that the royalty statement for the calendar quarter ending December 31 is in accordance with the requirements of this Section 4.2. Receipt or acceptance by PVH of any statement furnished, or of any sums paid by Licensee, shall not

6

preclude PVH from questioning their correctness at any time; provided, however, that reports submitted by Licensee shall be binding and conclusive on Licensee.

4.3    Books and Records. Licensee shall, at its sole cost and expense, maintain complete and accurate books and records (specifically including, without limitation, the originals or copies of documents supporting entries in the books of account) covering all transactions arising out of or relating to this Agreement. Such books and records shall be maintained in accordance with generally accepted accounting principles. PVH and its duly authorized representatives shall have the right once with respect to each Annual Period, during normal business hours, during the License Period and for three years thereafter, to examine and copy said books and records and all other documents and materials in the possession of or under the control of Licensee with respect to all transactions arising out of or relating to this Agreement. The exercise by PVH of any right to audit at any time or times or the acceptance by PVH of any statement or payment shall be without prejudice to any of PVH's rights or remedies and shall not bar PVH from thereafter disputing the accuracy of any payment or statement, and Licensee shall remain fully liable for any balance due under this Agreement. The Licensed Products shall be assigned style numbers unique from any other Products Licensee may manufacture or sell. The style number assigned to each Licensed Product shall be identical to the style number utilized to identify that Licensed Product in all Licensee's books and records. All documents evidencing the sale of Licensed Products shall state the style number of each of such Products. The Licensee shall not use terms such as "assorted" or "irregular" without a style specification with respect to the Licensed Products.

4.4    Underpayments. If, upon any examination of Licensee's books and records pursuant to Section 4.3, PVH shall discover any royalty underpayment by Licensee, Licensee will make all payments required to be made to correct and eliminate such underpayment within 10 days of PVH's demand. In addition, if said examination reveals a royalty underpayment of 3% or more for any royalty period, Licensee will reimburse PVH for the cost of said examination within 10 days of PVH's demand.

4.5    Manner of Payment. All payments required by Licensee hereunder shall be made to PVH in U.S. Dollars at the following address:

> Phillips-Van Heusen Corporation
> 1001 Frontier Road
> Bridgewater, New Jersey 08807
> Attention: Finance Department
> Telephone: (908) 698-6640
> Facsimile: (908) 704-3412

All references in this Agreement to dollars shall mean U.S. Dollars. In the event that Licensee is required to withhold certain amounts for payment to the appropriate governmental authorities, Licensee will supply to PVH the official receipts evidencing payment therefor.

4.6    Interest on Late Payment. In addition to any other remedy available to PVH, if any payment due under this Agreement is delayed for any reason, including, without limitation, as a result of any royalty underpayment, interest shall accrue and be payable, to the

7

extent legally enforceable, on such unpaid principal amounts from and after the date on which the same became due at the lower of 1½% per month and the highest rate permitted by law in New York.

4.7    No Set-Off. The obligation of Licensee to pay royalties hereunder shall be absolute, notwithstanding any claim which Licensee may assert against PVH. Licensee shall not have the right to set-off, compensate or make any deduction from such royalty payments for any reason whatsoever.

4.8    Taxes. Licensee will bear all taxes, duties and other governmental charges in the Territory relating to or arising under this Agreement, including, without limitation, any state or federal income taxes (except taxes on PVH's income), any stamp or documentary taxes or duties, turnover, sales or use taxes, value added taxes, excise taxes, customs or exchange control duties or any other charges relating to or on any royalty payable by Licensee to PVH. Licensee shall obtain, at its own cost and expense, all licenses, Federal Reserve Bank, commercial bank or other bank approvals, and any other documentation necessary for the importation of materials and Products and the transmission of royalties and all other payments relevant to Licensee's performance under this Agreement. If any tax or withholding is imposed on royalties, Licensee shall obtain certified proof of the tax payment or withholding and immediately transmit it to PVH.

4.9    Financial Statements. Once during each Annual Period, upon at least 60 days' written notice to Licensee, Licensee shall deliver to PVH an interim financial statement certified to by Licensee's chief financial officer. Within 120 days after the end of each fiscal year of Licensee, Licensee shall deliver to PVH an annual financial statement certified to by Licensee's independent, certified public accountant.

## ARTICLE V.  ADVERTISING

5.1    Advertising Obligation. In each Annual Period, Licensee shall pay to PVH an amount equal to the greater of (i) 2.0% of Net Sales for the immediately prior Annual Period and (ii) 2.0% of the Minimum Sales for the immediately prior Annual Period as specified in Section 3.2 hereof (the "Advertising Obligation") in four equal payments to be made at the time each payment of Guaranteed Minimum Royalties and Percentage Royalties is due; provided, however, that the Advertising Obligation for the first Annual Period shall be equal to 2.0% of Net Sales for the calendar year immediately preceding the first Annual Period, which sales were made pursuant to the prior license agreement between the parties. The Advertising Obligation shall be used by PVH, in its sole and absolute discretion, for advertising and promoting the Trademark. PVH, in its sole and absolute discretion, shall determine how to advertise and promote the Trademark, including, without limitation, the amount, type, media and method of such advertising and promotion.

5.1.1    Marketing Obligation. In each Annual Period, Licensee shall spend an amount equal to at least the greater of (i) 3.0% of Net Sales for the immediately prior Annual Period and (ii) 3.0% of the Minimum Sales for the immediately prior Annual Period as specified in Section 3.2 hereof (the "Marketing Obligation") for trade shows, cooperative

8

advertising, materials, catalogues, point of sale promotions, in-store fixturing, visual marketing programs, special events and signage; provided, however, that the Marketing Obligation for the first Annual Period shall be equal to 3.0% of Net Sales for the calendar year immediately preceding the first Annual Period which sales were made pursuant to the prior license agreement between the parties. If in any Annual Period the Marketing Obligation has not been satisfied, then the Licensee shall spend such amount for the designated expenses within the first 90 days of the subsequent Annual Period. If the Marketing Obligation has not been satisfied by the end of such 90-day period, then the amount which should have been expended and which was not expended shall be paid over to PVH to be used by PVH for advertising the Trademark; provided, however, that if the Marketing Obligation has not been fulfilled within 90 days after the termination of the License Period, the unexpended Marketing Obligation shall be paid over to PVH absolutely. Proof of expenditure shall be submitted each quarter using the Marketing Expenditure Form, attached hereto as Exhibit B.

       5.2     Advertising Support. If Licensee requests advertising support including, without limitation, the acquisition of rights to use images of models in jurisdictions within the Territory where rights have not been obtained or for uses for which authorization has not been granted, the Licensee shall pay over to PVH the incremental costs associated with such advertising support. At PVH's request, Licensee shall provide Licensed Products at Licensee's sole expense for use in PVH's photo shoots related to advertising for the Trademark.

       5.3     Use of Advertising and Promotional Materials. Licensee shall only use graphics and images supplied by or approved by PVH. It is understood and agreed that all costs involved with using the images in the Territory, including production costs, for advertising and marketing materials supplied by PVH to Licensee shall be the responsibility of Licensee. The use and release of any and all promotional material (printed or otherwise) relating to the Licensed Products or Licensee's activities pursuant to this Agreement in the nature of press releases, interviews or other similar public relations events, and any other corporate release, data or information which will or is likely to become public will be prepared or conducted in consultation with, and subject to the prior approval of, PVH's public relations and legal departments, it being acknowledged and agreed by Licensee that any such public event or release could affect the image and prestige of PVH and the Trademark. After any such approval, Licensee will not modify the approved material or activity in any respect unless such modification is specifically approved by PVH's public relations and legal departments.

## ARTICLE VI. QUALITY AND STANDARDS

       6.1     Distinctiveness and Quality of the Trademark.

       6.1.1   Distinctiveness and Quality. Licensee shall maintain the distinctiveness of the Trademark and the image and high quality of the goods and merchandise bearing the Trademark presently manufactured and sold by PVH and its other licensees, and the prestigious marketing of same as presently maintained by PVH and its other licensees. Licensee agrees that all Licensed Products manufactured or sold by it will be of high quality as to workmanship, fit, design and materials, and shall be at least equal in quality, workmanship, fit, design and material to the samples of Licensed Products submitted by Licensee and approved by

PVH pursuant to Section 6.2. All manufacturing and production shall be of a quality in keeping with the prestige of PVH and the Trademark.

6.1.2  Form of Trademark. Licensee agrees that it will only use the Trademark in the form thereof then approved by PVH, and that all Licensed Products shall bear the Trademark in such approved form. PVH shall give Licensee reasonable prior notice of any change in the form of the Trademark and shall permit Licensee to use a superseded form of the Trademark for up to six months in order to enable Licensee to sell inventory, complete and sell work-in-process, and to deplete inventories of labels, tags, packaging, and other materials bearing the Trademark. In the event PVH elects to change the form of the Trademark, Licensee's obligations in respect to the image and high quality of the goods and merchandise bearing the Trademark, and the prestigious marketing of same as required by this Section 6.1, shall be consistent with the actions of PVH and its other licensees in respect to Licensed Products bearing such new form of the Trademark.

6.1.3  Pricing. Licensee acknowledges that in order to preserve the goodwill attached to the Trademark, the Licensed Products should be sold at prices and terms reflecting the prestigious nature of the Trademark, and the reputation of the Trademark as appearing on goods of high quality and reasonable price, it being understood, however, that PVH is not empowered to fix or regulate the prices for which the Licensed Products are to be sold, either at the wholesale or retail level.

6.2  Product Approval; Quality Control. Before producing, selling or distributing any Licensed Product, Licensee shall submit for PVH's review, revision and approval samples of each of the Licensed Products. Any such request for approval shall be submitted to PVH on the form annexed hereto as Exhibit C. Such samples shall be submitted sufficiently far in advance to permit Licensee time to make such changes as PVH deems necessary. Any approval given hereunder shall be limited to the time period during the Annual Period set forth in such request, or as otherwise modified in PVH's discretion. Once samples have been approved, Licensee will manufacture only in accordance with such approved samples and will not make any changes without PVH's prior written approval. Upon PVH's request, Licensee shall submit to PVH additional samples of Licensed Products. No Licensed Products (including samples) shall be distributed and/or sold by Licensee unless such Licensed Products are in substantial conformity with, and at least equal in quality to, the samples previously approved by PVH in accordance with this Section 6.2. Upon request by PVH, Licensee shall supply PVH with a reasonable quantity of production samples in order for PVH to assess the conformity of production with the approval samples. All samples of Licensed Products submitted to PVH pursuant to this Section 6.2 shall be provided at Licensee's sole cost and expense.

6.3  Manufacture of Licensed Products by Third Parties. All contractors wherever located which Licensee desires to use in connection with the manufacture of Licensed Products are subject to the prior written approval of PVH. In order to maintain PVH's high standard of quality control and to insure that appropriate measures are taken against counterfeiting, Licensee shall provide PVH with the following information: (i) name and address of each proposed manufacturer; (ii) type of Licensed Products to be manufactured; (iii)

10

quantity of Licensed Products to be manufactured; and (iv) any other relevant information. Licensee shall obtain the signature of an authorized representative from each approved third-party manufacturer used by Licensee on an agreement (a "Third-Party Manufacturing Agreement"), substantially in the form of Exhibit D. Licensee shall not knowingly enter into a Third-Party Manufacturing Agreement with any third party that has breached a similar agreement with PVH or its Affiliates or any licensee of PVH or its Affiliates. Licensee acknowledges that it shall remain primarily liable and completely obligated under all of the provisions of this Agreement in respect of such contracting or assembly arrangements.

6.4    Non-Conforming Products. In the event that any Licensed Products are, in the judgment of PVH, not being manufactured, distributed or sold with first quality workmanship or in strict adherence to all details and characteristics furnished by PVH, PVH shall notify Licensee thereof in writing, and Licensee shall promptly change such Licensed Product to conform thereto. If Licensed Products as changed do not strictly conform after PVH's request and such strict conformity cannot be obtained after one resubmission, such Licensed Products (the "Non-Conforming Products") shall be disposed of in a way which shall not reduce the value of the Trademark or detract from its reputation. Licensee shall obtain the express prior written consent of PVH with respect to the terms, conditions and method of their disposal, which may include, without limitation, the destruction of the Non-Conforming Products, the donation of such Non-Conforming Products to eleemosynary institutions, the sale of such Non-Conforming Products in a private sale, with proceed to be given to charity, or the removal of Labels and other identification prior to sale. PVH may require Licensee to recall any Licensed Products that not consistent with approved quality standards or may purchase at Licensee's expense any such Licensed Products found in the marketplace. Licensee must pay royalties on sales of Non-Conforming Products.

6.5    Approvals. All approvals by PVH required under this Agreement must be obtained in advance of use of the item subject to approval, which approval must be in writing from PVH to Licensee. Except as otherwise expressly provided hereunder, a submission for approval shall be deemed approved unless PVH delivers a notice of disapproval within 30 days after receipt of a written request for approval. All matters requiring approval of PVH shall be granted or withheld in the sole and absolute discretion of PVH and may be based solely on PVH's subjective aesthetic standards. PVH shall provide an explanation for disapprovals, unless such disapproval reflects an issue of taste or subjective judgment. PVH has no obligation to approve, review or consider any item which does not strictly comply with the required submission procedures. Approval by PVH shall not be construed as a determination that the approved matter complies with all applicable regulations and laws. No disapproved item shall be manufactured, sold, used, distributed or advertised by Licensee under the Trademark. Licensee may revise any disapproved item and resubmit it. Licensee must strictly comply with all of PVH's decisions. PVH may amend the approval forms as appropriate. In the event that it is reasonably necessary for PVH to do on-site approvals, Licensee will pay any and all expenses and airfare incurred by PVH with respect to such on-site approvals.

6.6    Marking, Labeling and Packaging. All Labels must be approved by PVH. The use of any Label that has not been approved is expressly prohibited. PVH reserves the right to require Licensee to purchase Labels to be used on the Licensed Products only from sources designated by PVH, provided that such sources provide the Labels to Licensee in a reasonably

11

competitive manner as to price and delivery schedules. All Licensed Products manufactured, distributed or sold by, or on behalf of, Licensee shall be marked, labeled, packaged, advertised, distributed and sold in accordance with this Agreement, in accordance with all applicable laws, rules and regulations in the Territory, and in such a manner as will not tend to mislead or deceive the public. At the request of PVH, Licensee shall cause to be placed on all Licensed Products an appropriate notice designating PVH as the owner of the Trademark. The manner of presentation of such notice shall be determined by PVH.

      6.7    <u>Inspection of Facilities</u>. PVH and its duly authorized representatives shall have the right, during normal business hours and upon reasonable notice, to inspect all facilities utilized by Licensee (and its contractors and suppliers to the extent Licensee may do so) in connection with the manufacture, sale, storage or distribution of Licensed Products, and to examine the Licensed Products in the process of manufacture and when offered for sale within Licensee's and its contractors' operation.

      6.8    <u>Samples and Artwork</u>. PVH shall make available to Licensee certain samples, sketches, designs, colors, fabric samples, tags, labels, packaging, catalogues and artwork available to PVH, and, except as provided in Section 5.3 hereof, the cost of providing such materials shall be borne by Licensee at PVH's cost, for the development of Products and Labels. All right, title and interest, including any copyrights or other intellectual property rights, in and to samples, sketches, designs, and other materials furnished to Licensee by PVH or submitted by Licensee to PVH in connection with the Licensed Products, including any modifications or improvements thereof which may be created by PVH, but excluding Excluded Designs (collectively the "<u>Artwork Designs</u>"), shall remain the sole property of PVH as between Licensee and PVH, and are licensed hereunder solely and exclusively for use in connection with the manufacture, sale, distribution and promotion of Licensed Products in the Territory in accordance with the terms of this Agreement. "<u>Excluded Design</u>" means a design (i) submitted by Licensee and not approved by PVH; (ii) not distinguishable from similar generic products generally available in the marketplace; or (iii) not distinguishable from a product which has previously appeared in Licensee's product line and Licensee advised PVH of such condition at the time of submission. In the event of clause (i) or (iii) above, Licensee shall retain title to such designs but shall permit PVH to use such designs in perpetuity. PVH may use and permit others to use said designs and other materials in any manner it desires, provided that such use does not conflict with any rights granted Licensee hereunder. Licensee specifically acknowledges that such designs and other materials may be used by PVH and other licensees on Licensed Products in jurisdictions outside the Territory, on products other than Licensed Products anywhere in the world, and on all products including Licensed Products anywhere in the world after the expiration or termination of this Agreement.

      6.9    <u>PVH Designs</u>. PVH may provide Licensee with creative concepts and fashion direction as to each seasonal collection of Licensed Products, including recommendations as to color, material, design and styling of such Products and such additional design assistance as PVH determines in its sole discretion. For each such collection , Licensee shall utilize substantially all of the designs, fabrics, trim submitted or approved by PVH and shall produce on a timely basis pre-production prototypes for PVH's review and approval.

12

6.10    Know-how. Licensee shall have the right to cause its personnel to visit PVH's offices, factories, showrooms and other places of business, and also to attend PVH's sales meetings, in order to obtain additional know-how and assistance, all as PVH deems appropriate. The scheduling of such visits shall be at times mutually convenient to the parties hereto. In connection with such visits, Licensee shall bear all expenses of Licensee's representatives.

6.11    Market Weeks. In the event PVH desires to market the Licensed Products in conjunction with its goods or the merchandise of other licensees bearing the Trademark, Licensee shall, upon receipt of reasonable notice from PVH, have sales personnel present at PVH's showroom in New York during each major market week during the License Period, and Licensee shall be permitted to utilize such showrooms to market and sell the Licensed Products during such market week.

6.12    Meetings. PVH may from time to time hold meetings of PVH's licensees during the License Period. Licensee shall, upon receipt of reasonable notice, attend such meetings at its own expense but shall not be required to attend more than two such meetings per year.

6.13    Design Rights. Al designs created hereunder by or on behalf of Licensee shall be original works. Licensee acknowledges and agrees that PVH owns or shall own all rights in and to the Artwork Designs regardless of whether such designs are created by PVH or by or on behalf of Licensee, except Excluded Designs. Licensee agrees to make, procure and execute all assignments necessary to vest ownership of such rights in PVH. Licensee shall place appropriate notices, reflecting ownership of such rights by PVH, on all Licensed Products, Labels and other promotional materials. Licensee shall not do or allow to be done anything which may adversely affect any of PVH's rights in the Artwork Designs. All designs used by Licensee for the Licensed Products shall be used exclusively for the Licensed Products and may not be used under any other mark, whether during the License Period or any time thereafter, without the prior written consent of PVH. Licensee shall disclose and freely make available to PVH any and all developments or improvements it may make relating to the Licensed Products and to their manufacture, promotion and sales, including, without limitation, developments and improvements in any machine, process or product design, that may be disclosed or suggested by PVH or regarding any patent or trademark which Licensee is entitled to utilize.

6.14    Approved Accounts. Subject to Section 6.15, the Licensed Products sold by Licensee may be sold only to those specialty shops, department store and retail outlets (i) which carry high quality and prestige merchandise; (ii) whose location, merchandising and overall operations are consistent with PVH's reputation and sales policies and with the prestige of PVH and the Trademark;  and (iii) which have been expressly approved by PVH, including, without limitation, the customers listed on Schedule 6.14. No warehouse club, mass merchandiser, value retailer or account or store of comparable characterization is or will be an Approved Account. Whenever Licensee shall wish to sell Licensed Products to customers not previously approved by PVH, Licensee shall submit to PVH for its approval, a written list of proposed customers, together with such other information as PVH may reasonably request, such as photographs, address and information regarding the Products and other merchandise sold by such proposed customer. The proposed customers approved by PVH, together with the customers listed on Schedule 6.14, are referred to as the "Approved Accounts."

13

Notwithstanding PVH's approval of any customer, including customers listed on <u>Schedule 6.14</u>, PVH may at any time subject sales to such customer to any conditions or limitations PVH considers appropriate; <u>provided</u>, <u>however</u>, that in order to be effective, any such conditions or limitations must be set forth in a writing provided to Licensee. Without limiting the generality of the foregoing, the Licensee acknowledges and agrees that no more than 33% of its sales (both by units and Net Sales) may be to J.C. Penney Company, Inc. Nothing herein shall be deemed to prohibit PVH from withdrawing its approval of any Approved Account, including, without limitation, any customer on <u>Schedule 6.14</u>, upon written notice to Licensee (at which time, such customer shall cease to be an Approved Account for purposes of this Agreement); <u>provided</u>, <u>however</u>, that Licensee may fulfill any firm orders entered into prior to Licensee's receipt of PVH's withdrawal of approval. Licensee shall not (i) market or promote or seek customers for the Licensed Products outside of the Territory; (ii) maintain any Inventory outside of the Territory, except in connection with the manufacture of Licensed Products outside of the Territory in accordance with the terms hereof pending shipment to Licensee or its approved customers; (iii) sell or distribute any Licensed Products to wholesalers, jobbers, diverters, or any other entity which does not operate retail stores exclusively; (iv) sell the Licensed Products directly to the public in retail stores, via E-Commerce, or otherwise; (v) use the Licensed Products as giveaways, prizes or premiums, except for promotional programs which have received the prior written approval of PVH; (vi) sell the Licensed Products to any third party or Affiliate of Licensee or any of its directors, officers, employees or any person having an equity participation in or any other affiliation to Licensee, without the prior written approval of PVH, except for incidental sales for personal use only; or (vii) sell Licensed Products to any third party that intends to resell the Licensed Products (a) outside of the Territory or (b) via E-Commerce.

      6.15   <u>Disposal of Seconds and Close-Outs</u>. Seconds and Close-Outs sold by Licensee may be sold only to those customers set forth on the Approved Accounts and Approved Seconds and Close-Outs Accounts. Whenever Licensee shall wish to sell Seconds and Close-Outs to customers not previously approved by PVH, Licensee shall submit a written list of the proposed customers for Seconds and Close-Outs for PVH's prior written approval. The proposed customers approved from such list, together with the customers listed on <u>Schedule 6.15</u>, are referred to as the "<u>Approved Seconds and Close-Outs Accounts</u>." Notwithstanding PVH's approval of any customer including, without limitation, any customer listed on <u>Schedule 6.15</u>, PVH may at any time subject sales to any such customer to any conditions or limitations PVH considers appropriate; <u>provided</u>, <u>however</u>, that in order to be effective, any such conditions or limitations must be set forth in a writing provided to Licensee. Nothing herein shall be deemed to prohibit PVH from withdrawing its approval of any Approved Seconds and Close-Outs Account, including, without limitation, any customer listed on <u>Schedule 6.15</u>, upon written notice to Licensee (at which time, such customer shall cease to be an Approved Seconds and Close-Outs Account for purposes of this Agreement); <u>provided</u>, <u>however</u>, that Licensee may fulfill any firm orders entered into prior to Licensee's receipt of PVH's withdrawal of approval.

      6.15.1   <u>Seconds</u>. Licensee shall only sell Licensed Products which are damaged, imperfect, non-first quality or defective goods ("<u>Seconds</u>") in a way which shall not reduce the value of the Trademark or detract from its reputation and shall obtain the express prior written consent of PVH with respect to the terms and method of their disposal. All Seconds approved for sale by PVH shall be clearly marked "Seconds" or "Irregular." The percentage of Seconds of any of the Licensed Products which may be disposed of pursuant to this Section

14

6.15.1 shall not, in any event, exceed 10% of the total number of units of Licensed Products distributed or sold by Licensee.

      6.15.2 <u>Close-Outs</u>. All first quality Licensed Products which cannot reasonably be sold to regular customers and are sold at a price which is at least 30% off of full line price ("<u>Close-Outs</u>") may be sold only upon the prior approval and upon such terms and conditions as PVH, in its reasonable discretion, approves and shall not be sold to any person which Licensee knows, or has reason to know, will export such Close-Outs from the Territory. Sales of Close-Outs of any of the Licensed Products which may be disposed of pursuant to this Section 6.15.2 in any Annual Period shall not, in any event exceed 15% of the total number of units of Licensed Products distributed or sold by Licensee during such Annual Period. Licensee acknowledges and agrees that "make-ups" and "cut-ups" are not included in the definition of Close-Outs and that Licensee has no right to produce "make-ups," "cut-up" or other special productions of Licensed Products without PVH's consent.

      6.16   <u>Non-Approved Sales</u>. Notwithstanding any other remedies PVH may have under law or pursuant to this Agreement with respect thereto, including, but not limited to the right to terminate the License granted hereunder, Licensee shall pay to PVH Percentage Royalties on (i) any and all sales to customers other than Approved Accounts or Approved Seconds and Close-Out Accounts, as the case may be, in the amount of 15% of Net Sales; and (ii) sales of Close-Outs, Seconds or to specific Approved Accounts or Approved Seconds and Close-Out Accounts in excess of the amounts permissible under this Agreement, in the amount of 10% of Net Sales.

      6.17   <u>Standards of Conduct</u>.

      6.17.1 <u>Standards</u>. Licensee acknowledges that it has received copies of, read and understands PVH's publications "A Shared Commitment - Requirements for Suppliers, Contractors, Business Partners" and "Statement of Corporate Responsibility" attached hereto as <u>Exhibit E</u>. Licensee shall conduct its business in compliance with the moral, ethical and legal standards set forth in such publications, as the same may from time to time be revised by PVH upon reasonable notice to the Licensee (the "<u>Standards</u>") and shall cause all manufacturers, contractors and suppliers which manufacture Licensed Products or from whom Licensee obtains Licensed Products or materials for the manufacture of Licensed Products to abide by the Standards.

      6.17.2 <u>Audit Requirement</u>. Prior to producing Licensed Products in a facility (whether directly produced or produced by or through a contractor, subcontractor or supplier) Licensee will arrange to have the facility audited for compliance with the Standards unless PVH notifies Licensee in writing that it already has a current audit with respect to such facility that evidences compliance with the Standards. Audits on each facility used must thereafter be conducted no less often than annually. Each audit shall be conducted by a suitable independent third party auditor designated by Licensee and approved by PVH and shall be conducted using the evaluation form attached hereto as <u>Exhibit F</u> or a substantively similar form approved by PVH. Licensee shall identify to PVH in writing each facility in which it is proposed that any Licensed Product (or part thereof) be produced or which is to be re-audited and PVH shall notify Licensee within 30 days of PVH's receipt of the notice if PVH has currently

15

approved the facility for production and when re-audit is required. If a facility is currently approved for production, Licensee shall have no obligation to arrange for a current audit of the facility. All audits shall be conducted at Licensee's sole expense.

      6.17.3 <u>Approval</u>. A comprehensive audit report prepared by the approved independent third party auditor shall be provided to PVH, attention the Director of PVH's Human Rights Programs Department, promptly upon its completion. PVH shall have 30 days from its receipt of an audit report to notify Licensee of its disapproval of the facility that is the subject thereof. If PVH does not give notice to Licensee within such 30-day period, the facility shall be deemed approved by PVH. PVH shall set forth in its notice of disapproval its reason(s) for disapproval in reasonable detail.

      6.17.4 <u>Use of Facility</u>. Unless and until Licensee delivers to PVH an audit report for a facility that evidences compliance with the Standards and PVH approves such facility, the facility shall not be used for the production of Licensed Products. If Licensee uses a facility that has not been approved in accordance herewith or fails timely to cause an approved auditor to submit to PVH an audit report evidencing continued compliance with the Standards when a re-audit of a facility is required in accordance with the terms hereof or if Licensee or any of its manufacturers, contractors or suppliers with respect to Licensed Products shall, in PVH's sole determination, fail to abide by the Standards, PVH's sole remedy with respect to such breach of this Section 6.17, to the extent that PVH is not otherwise damaged as a result of such breach, shall be to terminate the License and all of the other rights granted to Licensee under this Agreement. Nothing in this Section 6.17 shall be deemed to confer third-party beneficiary rights upon any person, corporation, partnership or other entity.

## ARTICLE VII. THE TRADEMARK

    7.1   <u>Rights to the Trademark</u>.

      7.1.1 <u>Ownership of Trademark.</u> The Licensee acknowledges that (i) PVH is the sole and exclusive owner of the trademark IZOD, all combinations, forms, variants, modifications, embodiments and derivatives thereof (the "<u>Trademark</u>") in the Territory and all goodwill related to such marks, (ii) Licensee's rights to use the Trademark shall be governed exclusively by this Agreement and (iii) all use of the Trademark by Licensee shall inure solely to the benefit of PVH.

      7.1.2 <u>No Adverse Actions</u>. Licensee shall not, at any time, do, or otherwise suffer to be done, any act or thing which may at any time, in any way, adversely affect any rights of PVH in and to the Trademark or any registrations thereof or which, directly or indirectly, may reduce the value of the Trademark or detract from its reputation. Licensee shall not file or prosecute a trademark or service mark application or applications to register the Trademark or any trademark, name or other mark confusingly similar thereto in respect of the Products or any other goods or services in the Territory or elsewhere. Licensee shall not, during the term of the License Period or thereafter, (i) attack PVH's title or right in and to the Trademark in any jurisdiction or attack the validity of the License or the Trademark or (ii) contest the fact that Licensee's rights under this Agreement (a) are solely those of a

16

manufacturer and distributor and (b) subject to the provisions of Section 8.5, cease upon termination or expiration of the License Period.

        7.1.3   <u>Additional Registrations</u>. Licensee acknowledges and agrees that PVH, as the sole and exclusive owner of the Trademark, has the exclusive right to apply for registrations and to extend existing registrations of the Trademark for all categories of goods, including, without limitation, the Products. Licensee agrees that it shall promptly notify PVH of Licensee's first use of the Trademark on Products in the Territory. The Licensee agrees to cooperate with PVH in the preparation, filing and prosecution of applications for registration, or extensions of existing registrations, or other documentation relative to the Trademark. During the License Period, Licensee may also request (but not require) that PVH apply to register the Trademark for Products in the Territory or extend existing registrations. All costs and fees (including attorneys' fees) incurred in connection with any such registration or extension shall be paid as PVH and the Licensee shall agree at that time.

        7.1.4   <u>Survival</u>. The provisions of this Section 7.1 shall survive the expiration or termination of the License.

        7.2   <u>Protecting the Trademark</u>. Licensee shall cooperate fully and in good faith with PVH for the purpose of securing, preserving and protecting PVH's rights in and to the Trademark and any secondary trademark that Licensee may develop and use with the approval of PVH. Any such secondary mark shall also be owned by PVH. At the request of PVH, Licensee shall execute and deliver to PVH any and all documents and do all other acts and things which PVH deems necessary or appropriate to make fully effective or to implement the provisions of this Agreement relating to the ownership or registration of the Trademark and any secondary trademark.

        7.3   <u>Use of the Trademark.</u>

        7.3.1   <u>Compliance with Legal Requirements</u>. Licensee will use the Trademark in the Territory strictly in compliance with the legal requirements therein. Licensee shall duly display all other notices with respect to the Trademark, on the Licensed Products and otherwise, as are or may be required by the trademark laws and regulations applicable within the Territory and by PVH. Upon expiration or termination of the License for any reason whatsoever, Licensee will execute and deliver to PVH any and all documents required by PVH terminating any and all trademark registrations and other documents regarding the Trademark.

        7.3.2   <u>Use with Other Name</u>. Licensee shall not (a) co-join any name or names with the Trademark, (b) use the Trademark or any portion or derivative thereof in its corporate name, or (c) use any other name, or names in connection with the Trademark, in any advertising, promotion, publicity, labeling, packaging or other printed matter of any kind in connection with the distribution or sale of Licensed Products except as may be approved in writing by PVH. Any use of Licensee's corporate name or that of its Affiliates in connection with the Trademark will be subject to the approval of PVH. If PVH approves any use of the Trademark in connection with the Licensee's corporate name, the Licensee will clearly indicate that Licensee is using the Trademark pursuant to a license from PVH as may be required by PVH.

17

7.3.3  Execution of Documents.  At PVH's request and expense, Licensee will execute any and all documents (including registered user agreements) and take any actions required by PVH to confirm PVH's ownership of the marks referred to in 7.1.1 and the respective rights of PVH and Licensee pursuant to this Agreement.

7.3.4  Registration.  Notwithstanding anything herein to the contrary, Licensee acknowledges that PVH may not have, and does not represent it will have throughout the License Period, active registrations of the Trademark in the Territory for each of the Products. The Licensee may request (but not require) that PVH file applications on behalf of PVH to register the Trademark for Products in the Territory or extend existing registrations. All costs and fees (including attorneys' fees) incurred in connection with any such registration or extension shall be paid by PVH; provided, however, that if the Licensee requests that an application or extension be filed and PVH determines that such application or extension is not necessary, Licensee shall pay all such costs and fees. PVH shall use all commercially reasonable efforts to obtain such registrations and extensions as it agrees to seek, but makes no representations regarding the same and retains the right to withdraw or abandon any such application, in its reasonable discretion. If the Trademark cannot be registered, or a registration extended, in any jurisdiction in the Territory for a Product for whatever reason, PVH shall give notice thereof to the Licensee. Except as otherwise expressly provided herein, PVH shall have no liability to the Licensee for Licensee's use or inability to use the Trademark in the Territory on all Products. The inability of the Licensee to use the Trademark in the Territory on all Products shall not otherwise affect the Licensee's rights, obligations or liabilities hereunder.

7.4  Ownership of Copyright.  Any copyright which may be created in any Artwork Design, Label or the like designed or approved or used with the Trademark by Licensee will be the property of PVH. Licensee will not, at any time, do, or otherwise suffer to be done, any act or thing which may adversely affect any rights of PVH in such Artwork Design, Labels and the like and will, at PVH's request, do all things reasonably required by PVH to preserve and protect said rights.

7.5  Infringements, Counterfeits and Parallel Imports.

7.5.1  Infringements.  In the event that Licensee learns of any infringement or imitation of the Trademark with respect to Products which it believes could be considered a counterfeit of the Licensed Products, or of any use by any person of a trademark or trade name similar to the Trademark which it believes could be considered a deliberate use of something substantially similar to the Trademark, it will promptly notify PVH thereof. PVH will thereupon take such action as it deems advisable for the protection of the Trademark and its rights therein, and Licensee shall assist PVH in the prosecution of any such suit, as PVH may reasonably request, at PVH's expense. In no event, however, will PVH be required to take any action if it deems it inadvisable to do so, and Licensee will have not right to take any action with respect to the Trademark, including, without limitation, settling any action, appealing any adverse decision or discontinuing any action taken by it, except to the extent the same is approved in advance by PVH. In the event a third party infringes the use of the Trademark in the Territory on items similar to the Products, PVH shall take all advisable and necessary measures to protect the Trademark; provided, however, that if such action was taken solely at Licensee's request and PVH did not reasonably believe such measures were necessary, Licensee agrees that,

18

at PVH's request, Licensee will pay the costs incurred therefor, including judicial expenses and legal fees. In no event will any infringement by a third party justify the withholding of any payment of monies due hereunder by Licensee.

### 7.5.2   Counterfeits and Parallel Imports.

7.5.2.1 PVH and Licensee To Cooperate. PVH and Licensee shall work together to minimize and deter (i) the diversion into and sale within and from the Territory of products (including those which would correspond to Licensed Products) authorized for sale by its Affiliates and other licensees, which may include, without limitation, unauthorized distribution of such products by the manufacturers and subcontractors thereof ("Parallel Imports") and (ii) the importation into, or sale or manufacture within as well as from, the Territory of counterfeit Licensed Products or infringing Products. Unless or until PVH otherwise determines and so advises Licensee in PVH's reasonable discretion, Licensee will cooperate in such efforts as reasonably requested by PVH, Licensee will timely remit and/or, as applicable, promptly reimburse out-of-pocket expenses reasonably incurred by PVH in actions or proceedings involving Parallel Imports of Licensed Products, counterfeit Licensed Products and/or infringing Products that are reasonably allocated to Licensee by PVH based Licensee's responsibility, directly or indirectly, for the problematic products, or such other reasonable basis as may exist due to the facts and circumstances of the situation. Upon Licensee's request, PVH will meet with Licensee to discuss PVH's enforcement activities and the costs associated therewith. Licensee shall cooperate with PVH in all actions taken by PVH pursuant to this Section 7.5, whether on its own or at Licensee's request, and in all criminal proceedings, as may be required or reasonably requested.

7.5.2.2 Diversion. Licensee shall use all commercially reasonable efforts to minimize and deter the diversion of Licensed Products for sale outside of the Territory, including, without limitation, the unauthorized distribution of Licensed Products by the Licensee's manufacturers and subcontractors ("Diversion"). Such efforts shall include, without limitation, the utilization of such processes, controls, identification methods and reporting and auditing procedures as PVH may from time to time reasonably request. Licensee shall cooperate with PVH in PVH's efforts to minimize and deter Diversion. Without limiting the foregoing the Licensee shall promptly provide such information as PVH may from time to time reasonably request concerning its manufacturing, subcontracting and distribution locations, activities and shipments, product and label identification systems and data and sales to and by its customers.

7.5.3   Legal Proceedings. PVH may, but need not elect to, initiate criminal or civil actions against persons or entities outside the Territory seeking to manufacture counterfeit Licensed Products or sell or ship counterfeit Licensed Products into the Territory (excluding, for this purpose, manufacturers or subcontractors described in the definitions of Diversion or Parallel Imports). The cost related to any such actions shall be borne entirely by PVH, provided, however, that if such action was taken solely at Licensee's request and PVH did not reasonably believe such action was necessary, Licensee agrees that, at PVH's request, Licensee will pay the costs incurred therefore, including judicial expenses and legal fees. Any damages recovered or sums obtained in settlement in or with respect to any action shall (i) first be applied proportionately to reimburse PVH and Licensee for the respective expenses incurred and actually paid by them and (ii) the balance, if any, shall belong and shall be paid over to PVH

exclusively; provided, however, that if Licensee's sales of Licensed Products was directly and negatively impacted by the sales of such counterfeit Licensed Products, then PVH shall reasonably allocate no more than 50% of the balance to Licensee based on the affect such activity had on Licensee's sales of Licensed Products.

      7.6    Trademark Security.

      7.6.1   Counterfeit Protection. Licensee shall use its best efforts to prevent counterfeiting. All Licensed Products shall bear and use any reasonable counterfeit preventive system, devices or labels designated by PVH.

      7.6.2   Trademark Security Plan. Licensee shall prepare and implement a Trademark security plan (a "Trademark Security Plan") if requested by PVH at any time during the License Period. The implementation of any such plan shall be subject to the prior written approval thereof by PVH. Not later than 90 days after PVH makes such request and, thereafter, at the same time Licensee submits the Licensing Forecast to PVH, Licensee shall submit a Trademark Security Plan to PVH. Each Trademark Security Plan (if any) shall describe the methods of controlling the purchase, storage, requisition from storage, use and shipment of Labels to safeguard against the escape or unauthorized use of the Trademark or Licensed Products. Each Trademark Security Plan (if any) shall include, but not be limited to, (i) maintaining necessary records to account for and reconcile all flows of Labels and (ii) providing for an annual audit by Licensee of such flows and use, for each manufacturing facility in which Labels are affixed to Licensed Products. Within 30 days after completion of such audit, Licensee shall provide PVH with a detailed copy of the audit report. In the event that a manufacturing facility cannot regularly account for and reconcile substantially all of the Labels or Licensed Products, Licensee shall discontinue placing orders with such facility.

      7.7    Use of Trademark on Invoices, etc. The use of the Trademark by Licensee on invoices, order forms, stationery and related materials in advertising in telephone or other directory listings is permitted only upon PVH's prior written approval of the format in which the Trademark is to be so used, the juxtaposition of the Trademark with other words and phrases, and the content of the copy.

      7.8    Monitoring. Licensee shall use reasonable efforts to monitor the use of the Trademark by Licensee's customers and to require its customers to advertise, display and promote the Trademark in a manner consistent with the terms and conditions of this Agreement.

## ARTICLE VIII. TERM AND TERMINATION

      8.1    Expiration. The License and, subject to Section 8.5, the other rights granted to Licensee hereunder shall terminate at the end of the License Period.

      8.2    Other Rights Unaffected. It is understood and agreed that termination of the License or other rights granted to Licensee hereunder by PVH on any ground shall be without prejudice to any other rights or remedies which PVH may have.

8.3     Immediate Right of Termination of the License. If any of the following grounds for termination shall occur, PVH may elect, by written notice to Licensee, to terminate immediately the License and other rights granted to Licensee hereunder:

(a)     Failure by Licensee to attain the Minimum Sales for any Annual Period, as set forth in Section 3.2;

(b)     Failure by Licensee to perform or observe any term or covenant or agreement contained in Sections 5.3 (other than an immaterial breach thereof), 6.1 (other than an immaterial breach thereof), 6.2 (other than an immaterial breach thereof), 11.4 or 11.18;

(c)     Licensee shall (i) use a contractor, subcontractor or supplier, or (ii) sell or distribute Licensed Products to retailers, not approved by PVH in accordance with Sections 6.12, 6.13 or 6.14 (as applicable);

(d)     Underpayment of royalties of 5% or more by Licensee with respect to any calendar quarter or Annual Period as determined pursuant to Section 4.3;

(e)     Licensee institutes for its protection, or is made a defendant, in any proceeding under bankruptcy, insolvency, reorganization or receivership law, or Licensee is placed in receivership or makes an assignment for benefit of creditors or is, or states that it is, unable to meet its debts in the regular course of business;

(f)     Licensee shall use the Trademark in an unauthorized or improper manner;

(g)     Cessation by Licensee of, or the taking of steps by Licensee to cease, its business;

(h)     Licensee shall sell, transfer, lease, pledge, encumber, sublease or assign, by operation of law or otherwise (collectively, a "Transfer"), (i) all or substantially all the assets of Licensee or (ii) 50% or more, in the aggregate, of the ownership interests in Licensee directly or indirectly to a direct competitor of PVH;

(i)     Any change, effect or circumstance that is materially adverse to the business, condition, operations, performance, properties or prospects of Licensee or its ability timely to perform its obligations under this Agreement shall occur;

(j)     Entry of a final judgment against Licensee, or the occurrence of any other event, which individually or in the aggregate, would have a materially adverse effect on the business condition (financial or otherwise), operations, performance, properties or prospects of Licensee or its ability to perform its obligations under this Agreement;

(k)     The guaranties referred to in Section 11.19 shall for any reason be revoked, rescinded or determined to be unenforceable; or

21

(l)    Salo Grosfeld shall at any time for any reason cease to be active in the management of Licensee.

8.4    Termination With Notice and Right to Cure. In the event of the failure by Licensee to perform or observe any term or covenant or agreement contained in this Agreement, other than those specified in Section 8.3, PVH may terminate the License and the other rights granted to Licensee under this Agreement by giving notice of termination to Licensee (a "Notice of Termination"), which termination shall become effective automatically unless Licensee completely cures the breach within 15 days of the giving of the Notice of Termination. If the Notice of Termination relates to royalties or to product quality, pending cure, Licensee shall ship no Licensed Products; if Licensee does ship, it shall automatically forfeit its right to cure and the License shall be terminated. Upon the giving of a Notice of Termination for the second time, for any reason, Licensee shall no longer have the right to cure any violation, and termination shall be effective upon the giving of the Notice.

8.5    Effect of Termination.

8.5.1    Expiration or Full Termination. On the expiration or termination of the License and the License Period for any reason whatsoever, all of the rights of Licensee under this Agreement shall forthwith terminate and immediately revert to PVH; all royalties on sales theretofore made shall become immediately due and payable; Licensee shall forthwith discontinue all use of the Trademark, except that Licensee may during the period (i) commencing on the date of the expiration of the License Period pursuant to Section 2.1 or 2.2 or termination of the License because of the breach of Section 3.2 and ending six-months thereafter or (ii) commencing on the date of the termination of the License pursuant to clause (b), (d) or (e) of Section 8.3 and ending 90 days thereafter (each, the "Disposal Period"), consummate all sales of Licensed Products which were firm on the date of such expiration or termination and sell the balance of the Inventory not purchased by PVH as provided in Section 8.6; provided, however, that any advertising used during the Disposal Period shall be subject to PVH's prior written approval and such disposition of the Licensed Products shall continue to be subject to Licensee's obligations hereunder, including, but not limited to, payments to be made to PVH, and royalties with respect thereto shall be due on the last day of the Disposal Period. Subsequent to the Disposal Period, or if none, subsequent to such termination, Licensee shall no longer use the Trademark, any variation, imitation or simulation thereof, or any trademark similar thereto; Licensee will promptly transfer to PVH, free of charge, all registrations, filings and rights with regard to the Trademark which it may have possessed at any time; and Licensee shall thereupon deliver to PVH, free of charge, all sketches, designs, colors and the like in its possession or control, designed or approved by PVH, and all Labels supplied by PVH in Licensee's possession or control. PVH shall have the option, exercisable upon notice to Licensee within 30 days of such expiration or termination, to negotiate the purchase of Labels which have not been supplied by PVH. If such negotiations do not result in the purchase of such Labels, Licensee shall destroy the unused Labels at the end of the Disposal Period, or if none, upon such termination, under the supervision of PVH, and Licensee shall supply to PVH a certificate of destruction thereof signed by a duly authorized officer of Licensee.

8.5.2    Partial Termination. Upon the termination of the License with respect to a specific category of Product pursuant to Section 1.4.3 all of the rights of Licensee

22

under this Agreement with respect to the category of Product affected by such termination shall forthwith terminate and immediately revert to PVH; all royalties on sales of the affected category of Licensed Product theretofore made shall become immediately due and payable, it being acknowledged that such partial termination of the License shall not affect any obligation of License to make payments hereunder accruing prior to such termination; Licensee shall forthwith discontinue all use of the Trademark on the affected Product, except that Licensee may during the Disposal Period commencing as of the date of such termination and ending six-months thereafter consummate all sales of the affected Licensed Products which were firm on the date of such termination; provided, however, that any advertising used during the Disposal Period shall be subject to PVH's prior written approval and such disposition of the Licensed Products shall continue to be subject to Licensee's obligations hereunder, including, but not limited to, payments to be made to PVH, and royalties with respect thereto shall be due on the last day of the Disposal Period. Without limiting the generality of the foregoing, Licensee acknowledges that sales during the Disposal Period are on a non-exclusive basis. Subsequent to the Disposal Period, Licensee shall no longer use the Trademark, any variation, imitation or simulation thereof, or any trademark similar thereto on the terminated Products; and Licensee will promptly transfer to PVH, free of charge, all registrations, filings and rights with regard to the Trademark which it may have possessed at any time with respect to the terminated Products.

   8.6   Inventory Upon Termination. Upon the expiration or termination of the License and the License Period in their entirety for any reason whatsoever, Licensee shall immediately deliver to PVH a complete and accurate schedule of Inventory of Licensed Products as of the close of business on the date of such expiration or termination (the "Inventory Schedule"). PVH thereupon shall have the option, exercisable by written notice to Licensee within 15 days after its receipt of the Inventory Schedule, to purchase any or all of the Inventory (other than Inventory required to consummate sales of Licensed Products which were firm on the date of such expiration or termination) for an amount equal to the wholesale price of the Inventory less 40%. Percentage Royalties shall not be payable with respect to the purchase of the Inventory by PVH. In the event such notice is sent by PVH, PVH may collect the Inventory referred to therein within 90 days after PVH's notice. PVH will pay for the Inventory upon collection. In the event such notice is not sent, Licensee may dispose of the Licensed Products during any Disposal Period pursuant to Section 8.5; provided, however, that such disposition shall continue to be subject to Licensee's obligations hereunder, including, without limitation, with respect to the payment of royalties and the approval of customers and advertising. At the end of the Disposal Period, or if none, upon such termination, any Licensed Products remaining in Licensee's possession or control, including, without limitation, in any stores of Licensee, shall, at the request of PVH, be destroyed. PVH shall have the right at any time to conduct a physical inventory of the Licensed Products then in Licensee's possession or control.

   8.7   Freedom to License. Starting 12 months prior to the scheduled expiration of this Agreement, or in the event of (i) default by Licensee; (ii) termination of the License in its entirety or with respect to a specific category of Product; or (iii) the receipt by PVH of a notice from Licensee requesting the termination of the License in its entirety or with respect to a specific category of Product, PVH shall be free to license others to use the Trademark in connection with the manufacture, sale, distribution and promotion of all Licensed Products in the Territory or the relevant category of Product in the Territory, as the case may be. PVH shall be

23

free to negotiate such licenses, and make sales on its own or allow sales under any new license, prior to the termination or expiration of this License in part or in its entirety, provided only that no sales to consumers of Licensed Products produced by or on behalf of PVH or pursuant to any such new license will be permitted prior to the termination or expiration of the License with respect to the applicable Products.

8.8    Rights Personal.  The License and rights granted hereunder are personal to Licensee.  No assignee for the benefit of creditors, receiver, trustee in bankruptcy, sheriff or any other officer or court charged with taking over custody of Licensee's assets or business, shall have any right to continue performance of this Agreement or to exploit or in any way use the Trademark if this Agreement is terminated pursuant to Sections 8.3, 8.4 or 11.8, except as may be required by law.

8.9    Trustee in Bankruptcy.  Notwithstanding the provisions of Section 8.8, in the event that, pursuant to the applicable bankruptcy law (the "Code"), a trustee in bankruptcy, receiver or other comparable person, of Licensee, or Licensee, as debtor, is permitted to assume this Agreement and does so and, thereafter, desires to assign this Agreement to a third party, which assignment satisfies the requirements of the Code, the trustee or Licensee, as the case may be, shall notify PVH of same in writing.  Said notice shall set forth the name and address of the proposed assignee, the proposed consideration for the assignment and all other relevant details thereof.  The giving of such notice shall be deemed to constitute an offer to PVH to have this Agreement assigned to it or its designee for such consideration, or its equivalent in money, and upon such terms as are specified in the notice.  The aforesaid offer may be accepted by PVH only by written notice given to the trustee or Licensee, as the case may be, within 15 days after PVH's receipt of the notice to such party.  If PVH fails to deliver such notice within said 15 days, such party may complete the assignment referred to in its notice, but only if such assignment is to the entity named in said notice and for the consideration and upon the terms specified therein.  Nothing contained herein shall be deemed to preclude or impair any rights which PVH may have as a creditor in any bankruptcy proceeding.

8.10    Compensation.  (a) If PVH terminates this Agreement pursuant to Section 8.3 (b), (c), (d), (e), (f), (g), (h), (i), (j) or (k), PVH shall have the right to receive, and Licensee shall immediately pay to PVH, as liquidated damages, solely with respect to Licensee's royalty obligations hereunder and not as a penalty, a sum equal to the total of the Percentage Royalties that would have been payable by Licensee to PVH for the remainder of the License Period based on the Net Sales for the Annual Period immediately preceding the year of termination or, if this Agreement is terminated during the first Annual Period, a sum equal to the total of the Percentage Royalties that would have become payable if the Licensing Forecast for the first Annual Period had been achieved.

(b) If PVH terminates this Agreement pursuant to Section 8.3(a) or Section 8.4, PVH shall have the right to receive, and Licensee shall immediately pay to PVH, as liquidated damages, solely with respect to Licensee's royalty obligations hereunder and not as a penalty, a sum equal to the total of the Percentage Royalties that would have been payable by Licensee to PVH for the twelve months following such termination based on the Net Sales for the Annual Period immediately preceding the year of termination or, if this Agreement is terminated during

24