Weiss & Hiller, P.C.
Attorneys for the Plaintiff
600 Madison Avenue
New York, New York 10022
Telephone:  (212) 319-4000
Facsimile:  (212) 753-4530
Email: aweiss@weisshiller.com

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
PHILLIPS-VAN HEUSEN CORPORATION,   :

       Case No. 07 Civ 8169 (AKH)

     Plaintiff,  :

  -against-     :

          :

INTERNATIONAL HOME TEXTILES, INC.   :
and SALO GROSFELD,

          :

     Defendants.
------------------------------------------------------------x

**PLAINTIFF'S MOTION TO DISMISS DEFENDANT
INTERNATIONAL HOME TEXTILE, INC.'S COUNTERCLAIM**

# **TABLE OF CONTENTS**

**Page**

STATEMENT OF FACTS AND PRIOR PROCEEDINGS ............................... 1

POINT I -- CONSIDERATION OF THE ALLEGED "MISREPRE-
SENTATION" UPON WHICH IHT'S COUNTERCLAIM
IS BASED IS PROHIBITED BY (A) THE LICENSE
AGREEMENT'S INTEGRATION CLAUSE, (B) CLAUSES
RELATED TO THE INTEGRATION CLAUSE AND
(C) THE PAROL EVIDENCE RULE .......................................... 2

    A.    IHT's Counterclaim is Prohibited By the License Agreement's
Integration Clause ............................................................................. 2

    B.    IHT's Counterclaim of Misrepresentation is Prohibited
By the License Agreement's Clauses Related to the
Integration Clause ............................................................................. 4

    C.    IHT's Counterclaim of Misrepresentation is Prohibited
By the Parol Evidence Rule ............................................................. 5

POINT II -- IHT'S COUNTERCLAIM FOR PURPORTED MISREPRE-
SENTATION MUST BE DISMISSED BECAUSE IT FAILS
TO ALLEGE ANY ACTUAL MISREPRESENTATION ......................... 6

    A.    Prediction or Statement of "Future Expectations"
Will Not Support a Misrepresentation Claim .................................. 6

    B.    IHT Has Failed to Allege that The Purported
Misrepresentation Was False ........................................................... 7

POINT III -- IHT'S COUNTERCLAIM MUST BE DISMISSED FOR ITS
FAILURE TO FURNISH THE PARTICULARITY REQUIRED
BY FEDERAL RULE OF CIVIL PROCEDURE 9(b) ............................. 8

POINT IV -- ANY CLAIM FOR NEGLIGENT MISREPRESENTATION
MUST BE DISMISSED BECAUSE OF THE ABSENCE OF
ANY DEMONSTRATION OF THE 'SPECIAL RELATION-
SHIP' REQUIRED FOR SUCH CLAIM .................................................. 11

CONCLUSION ......................................................................................................... 12

# TABLE OF AUTHORITIES

**Cases**

|  | Page |
|---|---|
| Banque Arabe et Internationale D'Investissement v. Maryland Nat. Bank, 57 F.3d 146 (2d Cir. 1995) | 7-8 |
| Bower v. Atlis Sys., Inc., 182 A.D.2d 951 (3d Dep't. 1992) | 11 |
| Brown v. Lockwood, 76 A.D.2d 721 (2d Dep't. 1980) | 11 |
| Crigger v. Fahnestock and Co., Inc., 443 F.3d 230 (2d Cir. 2006) | 7 |
| Dallas Aerospace, Inc. v. CIS Air Corp., 352 F.3d 775 (2d Cir. 2003) | 11, 12 |
| Emergent Capital Inv. Mgmt., LLC v. Stonepath Group, Inc., 165 F.Supp.2d 615 (S.D.N.Y. 2001) | 3 |
| Goodyear Publ'g Co., Inc. v. Mundell, 427 N.Y.S.2d 242 (1st Dep't. 1980) | 5 |
| Harsco Corp. v. Segui, 91 F.3d 337 (2d Cir. 1996) | 3-4 |
| Hydro Investors, Inc. v. Trafalgar Power Inc., 227 F.3d 8 (2d Cir. 2000) | 7 |
| Jacob v. Kimberly-Clark Corp., 2006 WL 1582149 (E.D.N.Y 2006) | 7 |
| Kimmel v. Schafer, 89 N.Y.2d 257 (1996) | 11 |
| Manhattan Motorcars, Inc. v. Automobili Lamborghini, 244 F.R.D. 204 (S.D.N.Y. 2007) | 9, 10 |
| Merrill Lynch & Co., Inc. v. Allegheny Energy, Inc., 500 F.3d 171 (2d Cir. 2007) | 7 |
| Moran v. Kidder Peabody & Co., 609 F.Supp. 661 (D.C.N.Y. 1985) | 9, 10, 11 |
| Murray v. Xerox Corp., 811 F.2d 118 (2d Cir. 1987) | 7 |
| Muze, Inc. v. Digital On-Demand, 123 F.Supp.2d 118 (S.D.N.Y. 2000) | 5-6 |
| Rochester Cmty. Individual Practice Ass'n., Inc. v. Finger Lakes Health Ins. Co., Inc., 722 N.Y.S.2d 663 (4th Dep't. 2001) | 5 |

Sorenson v. Bridge Capital Corp., 817 N.Y.S.2d 229 (1st Dep't. 2006) …………………..    4-5

Stan Winston Creatures, Inc. v. Toys "R" Us, Inc., 2004 WL 1949071
    (Sup. Ct. N.Y. Co., 2004) ……………………………………………………………..    11

The Vermont Teddy Bear Co., Inc. v. Tyco Indus., Inc., 80 F.Supp.2d 36
    (N.D.N.Y. 2000) ………………………………………………………………………    5

Todd v. Oppenheimer, 78 F.R.D. 415 (S.D.N.Y. 1978) …………………………………    9, 10

United Artists Theatre Circuit, Inc. v. Sun Plaza Enter. Corp., 352 F.Supp.2d
    342 (E.D.N.Y. 2005) …………………………………………………………………..    3

**Statutes and Other Sources**

Black's Law Dictionary, p. 461 (3d ed. 2006) …………………………………………….    8

Federal Rule of Civil Procedure 9(b) ……………………………………………………..    8, 10, 11

## STATEMENT OF FACTS AND PRIOR PROCEEDINGS

Plaintiff, Phillips-Van Heusen Corporation ("PVH"), is the owner and holder of the valuable and prestigious trademark "IZOD" ("Licensed Mark"). By a license agreement dated December 2001 (the "2001 License Agreement"), PVH granted defendant, International Home Textiles, Inc ("IHT"), the right to use the Licensed Mark in connection with the manufacture, sale, distribution and promotion of sheets, pillow cases, towels and similar products within the United States of America, its possessions and territories. Upon expiration of the 2001 License Agreement, PVH and IHT entered into a new license agreement dated January 1, 2006, pursuant to which PVH granted IHT the right to use the Licensed Mark for an additional two-year period. ("License Agreement;" Exh. "1").

On or about April 27, 2007, PVH exercised its right to terminate the License Agreement by reason of a series of breaches by IHT, including, without limitation, IHT's failure to meet minimum sales requirements, pay royalties, or pay the advertising fees, as required by the License Agreement (April 27, 2007 Letter from PVH to IHT terminating the License Agreement; Exh. "2").

By reason of said breaches, on or about September 18, 2007, PVH commenced the within action against IHT by complaint seeking damages in excess of $1,839,333 (Complaint; Exh. "3"). The complaint also contains claims against IHT's principal shareholder, Salo Grosfeld ("Grosfeld"), upon his guarantee of the License Agreement and his agreement to be jointly and severally liable, together with IHT, for any of IHT's breaches or violations of the License Agreement.

On or about November 26, 2007, IHT answered the complaint and asserted a counterclaim for fraud and negligent misrepresentation (Answer; Exh. "4"). IHT's counterclaim

alleged that during the parties' negotiations of the License Agreement, PVH represented to IHT that "a number of Approved Retailers ... would ... agree to market and sell Licensed Products," but that, in fact, "a number of Approved Retailers...would *not* agree to market and sell Licensed Products" (Exh. 4, ¶¶9-10).

Together with IHT's service of its answer and counterclaim, Grosfeld served a motion seeking to dismiss the complaint as against him. That motion is pending.

The License Agreement contains an integration clause and a provision confirming that no representations (other than those contained within the License Agreement) were made (Exh. 1, ¶11.10). Additionally, the License Agreement includes a clause providing that any amendment to the License Agreement must be in writing and signed by both parties (Id.). Moreover, the License Agreement contains comprehensive provisions with regard to the subject matter of the alleged misrepresentation, none of which contain the alleged misrepresentation.

## POINT I

**CONSIDERATION OF THE ALLEGED "MISREPRESENTATION" UPON WHICH IHT'S COUNTERCLAIM IS BASED IS PROHIBITED BY (A) THE LICENSE AGREEMENT'S INTEGRATION CLAUSE, (B) CLAUSES RELATED TO THE INTEGRATION CLAUSE AND (C) THE PAROL EVIDENCE RULE**

A.   <u>IHT's Counterclaim is Prohibited By the License Agreement's Integration Clause</u>

The parties' License Agreement is a comprehensive document containing 33 single-spaced pages, plus 16 pages of schedules and exhibits (Exh. 1). It covers, in great detail, all subjects that are pertinent to the license granted to IHT (Id.). The parties made it explicitly clear in the License Agreement that they intended for this comprehensive 49-page document to be the full and complete agreement between themselves. Indeed, at Article 11.10, the parties agreed that the License Agreement:

2

    (i)       constituted the "entire agreement of the parties ... with respect to the subject matter hereof;"
    (ii)      provided that any "prior agreements, contracts, promises, representations" between the parties were "supersede[d]" and;
    (iii)     could not be "amended or modified, except in a writing signed by both parties."

(Exh. 1, ¶11.10).

Said Article 11.10 provides in its entirety:

> This agreement, including the exhibits and schedules hereto, constitutes the entire agreement of the parties hereto with respect to the subject matter hereof, and supersedes all prior agreements, contracts, promises, representations and statements between them, if any, whether written or oral, with respect thereto including, without limitation, the License Agreement between PVH and Licensee dated December 2001, as the same may have been heretofore amended. This Agreement may not be amended or modified, except in a writing signed by both parties hereto.

(Id.).

The integration clause in the License Agreement, which explicitly provides that the License Agreement "constitutes the entire agreement of the parties," prohibits the introduction of the prior representation allegedly made by PVH. United Artists Theatre Circuit, Inc. v. Sun Plaza Enter. Corp., 352 F.Supp.2d 342, 351 (E.D.N.Y. 2005) (holding that a lease, containing an integration clause, extinguished any fraud claim which lessee may have asserted on the basis of oral agreements or representations which lessors allegedly made prior to the lease); Emergent Capital Inv. Mgmt., LLC v. Stonepath Group, Inc., 165 F.Supp.2d 615, 621 (S.D.N.Y. 2001) (stating that "[e]ven if an integration clause is general, a fraud claim will not stand where the clause was included in a multi-million dollar transaction that was executed following negotiations between sophisticated business people, and that a fraud defense is inconsistent with other specific recitals in the contract"); Harsco Corp. v. Segui, 91 F.3d 337, 344-345 (2d Cir. 1996) (a fraud claim could not proceed where allegations of fraud were directly contradicted by

3

written documents which were the product of arms-length negotiations by sophisticated parties to the agreement).

IHT's counterclaim is based solely upon a representation allegedly made by PVH to IHT prior to the execution of the License Agreement. Specifically, at paragraph 9 of Exh. 4, IHT alleges that:

> IHT entered into the License Agreement based upon PVH's representation that a number of Approved Retailers, who were in the business of marketing and selling *apparel* products with the License Mark (but not Licensed Products, *i.e.* home textiles), would also agree to market and sell Licensed Products.

(Exh. 4, ¶9).[1]

A review of the License Agreement confirms that no such alleged representation appears within that document (Exh. 1). Additionally, such alleged representation is directly contrary to the express provisions in the License Agreement, Articles and Schedules 6.14 and 6.15, which comprehensively define the subject of "Approved Retailers" (Id.).[2]

  B. IHT's Counterclaim of Misrepresentation is Prohibited By the License Agreement's Clauses Related to the Integration Clause

In addition, as mentioned herein, Article 11.10 of the License Agreement, which also includes the integration clause, explicitly states that the License Agreement supersedes "all prior agreements, contracts, promises, representations and statements." This provision in the License Agreement that precludes the consideration of any prior agreements demonstrates that the alleged misrepresentations IHT asserts PVH made are inadmissible. Sorenson v. Bridge Capital

---

[1] IHT substitutes the term "Approved Retailers" to identify the entities that the License Agreement defines as "Approved Accounts."

[2] The alleged representation is also in conflict with Articles 3.2 and 4.1.3 which set out minimum sales and minimum guaranteed royalties and do not provide for any reduction in such numbers in the event any Approved Retailers do not sell Licensed Products (Id.).

4

Corp., 817 N.Y.S.2d 229, 230 (1st Dep't. 2006) (dismissing claim for fraud in the inducement where plaintiff based such claim on extrinsic evidence asserted despite parties' acknowledgment in the merger and other clauses that the contract will not rely on any extra-contractual representations).

In addition, the clause that explicitly states that the License Agreement "may not be amended or modified except in a writing signed by both parties hereto," prevent IHT from relying on any alleged misrepresentation (Exh. 1, Article 11.10). Rochester Cmty. Individual Practice Ass'n., Inc. v. Finger Lakes Health Insurance Co., Inc., 722 N.Y.S.2d 663, 664-65 (4th Dep't. 2001) (holding alleged oral agreement to modify written agreement was not valid because the written agreement provided that it could not be amended except by another agreement "reduced to writing); Goodyear Publ'g Co., Inc. v. Mundell, 427 N.Y.S.2d 242, 243 (1st Dep't. 1980)(alleged supervening oral agreements did not alter the parties' duties and responsibilities as set forth in the original agreement, which provided that the "agreement may not be changed unless the parties to it agree in writing").

C. IHT's Counterclaim of Misrepresentation is Prohibited By the Parol Evidence Rule

In addition to the foregoing, IHT's counterclaim is barred by the parol evidence rule, which clearly rejects the consideration of any purported prior oral representation not contained in the governing agreement, here the License Agreement. The Vermont Teddy Bear Co., Inc. v. Tyco Indus., Inc., 80 F.Supp.2d 36, 38 (N.D.N.Y. 2000); Muze, Inc. v. Digital On-Demand, 123 F.Supp.2d 118, 128 (S.D.N.Y. 2000). As this Court stated in Muze,

5

> [w]here the parties have reduced an agreement to an integrated writing ... "the parol evidence rule bars all evidence of prior or contemporaneous negotiations or agreements offered to modify or contradict the provisions of the writing." Under New York law extrinsic evidence is admissible ... only when used in aid of resolving ambiguities in the contract. Thus, if a contract is an unambiguous and integrated writing, a court may not consider extrinsic evidence to vary, contradict, add to, or explain its terms.

(Id.).

Accordingly, the parol evidence rule bars IHT from asserting its counterclaim of misrepresentation because IHT's claim is based solely on alleged extraneous evidence that would modify the License Agreement.

Based on the License Agreement's integration clause, the clauses in the License Agreement that negate prior representations and oral modifications, and the parol evidence rules, IHT's counterclaim should be dismissed in its entirety.

## POINT II

**IHT'S COUNTERCLAIM FOR PURPORTED MISREPRESENTATION MUST BE DISMISSED BECAUSE IT FAILS TO ALLEGE ANY ACTUAL MISREPRESENTATION**

The representation that IHT ascribes to PVH, even if made, does not constitute a misrepresentation for two separate reasons:

- Case law makes it clear that a prediction or statement of "future expectations" will not support a misrepresentation claim, and

- IHT has failed to assert that the alleged misrepresentation was false

A.  Prediction or Statement of "Future Expectations" Will Not Support a
    Misrepresentation Claim

IHT alleges that PVH represented to IHT that Approved Retailers "would ... agree to market and sell Licensed Products" (Exh. 4, ¶9). As asserted, PVH's alleged representation, if true, would be nothing more than an expression of a future expectation. However, it is well-

6

settled in both New York courts and the Second Circuit that mere statements of future expectation cannot serve as the basis for a fraudulent misrepresentation claim -- "[t]he alleged misrepresentation must be factual in nature and not promissory or relating to future events that might never come to fruition." Hydro Investors, Inc. v. Trafalgar Power Inc., 227 F.3d 8, 20 (2d Cir. 2000) (recognizing that "promises of future conduct" or "future expectations" fall outside the doctrine of misrepresentation); also see Jacob v. Kimberly-Clark Corp., 2006 WL 1582149, *7-8 (E.D.N.Y 2006) (recognizing that "representations of opinion or predictions of some thing which it is hoped or expected will occur in the future ...," "[m]ere promissory statements as to what will be done in the future ..." or "misrepresentation[s] ... predicated upon expression of future expectations rather than existing fact" will not sustain an action for fraud) (internal citations omitted); Murray v. Xerox Corp., 811 F.2d 118, 124 (2d Cir. 1987) (broken promises with respect to future conduct are not actionable as negligent misrepresentation).

Notably absent from IHT's said allegation is any assertion that any factual basis existed for PVH's purported expectation that the Approved Retailers "would" agree to market and sell the Licensed Products.

PVH's alleged representation is, at most, an expression of future expectation. Accordingly, IHT's counterclaim based on such prediction should be dismissed.

    B.    <u>IHT Has Failed to Allege that The Purported Misrepresentation Was False</u>

Among other things, to establish a claim for fraudulent misrepresentation, the party asserting the claim must allege, inter alia, that the adverse party "misrepresented a material fact," i.e., that the adverse party's alleged representation is contrary to the alleged state of facts. Merrill Lynch & Co., Inc. v. Allegheny Energy, Inc., 500 F.3d 171, 191 (2d Cir. 2007); Crigger v. Fahnestock and Co., Inc., 443 F.3d 230, 234 (2d Cir. 2006); Banque Arabe et Internationale

D'Investissement v. Maryland Nat. Bank, 57 F.3d 146, 153 (2d Cir. 1995).  Black's Law Dictionary, p. 461 (3d ed. 2006).

Here the actual "state of facts" alleged by IHT do not, in fact, conflict with the "representation" alleged to have been made by PVH:

- The representation alleged to have been made by PVH:

    that "a number of Approved Retailers ... would ... agree to market and sell Licensed Products" (Exh. 4, ¶9),

- The actual facts alleged by IHT:

    that "a number of the Approved Retailers ... would *not* agree to market and sell Licensed Products" (Id., ¶10).

That "a number" of the Approved Retailers would agree to sell (the alleged representation), in no way conflicts with IHT's allegation that "a number" of said Approved Retailers would not sell.  Both statements can be true at the same time.

Because IHT has failed to allege an actual state of facts that is contradictory to the alleged representation, no misrepresentation has been alleged, and IHT's counterclaim must be dismissed.

## POINT III

### IHT'S COUNTERCLAIM MUST BE DISMISSED FOR ITS FAILURE TO FURNISH THE PARTICULARITY REQUIRED BY FEDERAL RULE OF CIVIL PROCEDURE 9(b)

Federal Rule of Civil Procedure Rule 9(b) ("Rule 9(b)") specifically requires a claim for fraud to be plead with particularity:

> (b)    **Fraud, Mistake, Condition of the Mind.**  In all averments of fraud or mistake, the circumstance constituting fraud or mistake shall be stated with particularity...

The particularity requirement includes, among other things, the content of what was represented that is claimed to be false, when that representation was made, and the form or

8

manner in which the representation was made. Manhattan Motorcars, Inc. v. Automobili Lamborghini, 244 F.R.D. 204, 213 (S.D.N.Y. 2007)(for claims of fraudulent misrepresentation, the Second Circuit requires allegations that "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent"); Moran v. Kidder Peabody & Co., 609 F.Supp. 661, 665 (D.C.N.Y. 1985) (pleading fraud requires specificity as to "(1) precisely what statements were made in what documents or oral misrepresentations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) the same, (3) the context of such statements and the manner in which they misled the plaintiffs, and (4) what the defendants obtained as a consequence of the fraud"); Todd v. Oppenheimer, 78 F.R.D. 415, 420 (S.D.N.Y. 1978) ("[a well-pleaded claim of fraud] normally includes the time, place, and content of the false misrepresentations, the facts misrepresented, and the nature of the detrimental reliance ...").

IHT's allegations are insufficient to satisfy the requisite pleading requirement with regard to each of the above-referenced elements. To begin with, IHT never identifies any specific Approved Retailers (i) which PVH allegedly represented would agree to sell the Licensed Products and/or (ii) which subsequently would not agree to sell the Licensed Products. Additionally, IHT fails to indicate whether the alleged representation constitutes PVH's actual words or the substance of its words. Manhattan Motorcars, 244 F.R.D. at 213; Moran, 609 F.Supp. at 665; Todd, 78 F.R.D. at 420. The lack of clarity of IHT's allegations as to what the representation was is underscored by the fact that the purported representation is set forth in more than one paragraph, each of which contains a somewhat different version of the alleged representation (e.g. Exh. 4, ¶¶9, 14).

Furthermore, the insufficiency and lack of clarity of the allegations is underscored by the fact that IHT is lumping together the alleged representations made by two separate PVH representatives into one allegation (Exh. 4, ¶14). It is not clear whether the claim IHT is making is that both of the PVH representatives made identical representations, and if they did so, whether the statements were made at the same time. If, in fact, the two PVH representatives made different statements and/or made the statements at different times, IHT should have set forth the statements made by each representative, together with the date such alleged representations were made (Id). IHT's counterclaim of misrepresentation is clearly deficient for failing to clearly and consistently allege the purported misrepresentation, in violation of the particularity pleading requirement explicitly set forth in Rule 9(b).

Additionally, IHT's counterclaim fails to comply with Rule 9(b)'s standard of particularity by failing to specify when the alleged misrepresentation was made. Manhattan Motorcars., 244 F.R.D. at 213; Moran, 609 F.Supp. at 665; Todd, 78 F.R.D. at 420. Although IHT states that the purported misrepresentation was made "when the parties were negotiating" the License Agreement, under Rule 9(b) IHT is required to provide more specificity as to when the alleged misrepresentations were made, particularly where negotiations between the parties covered a period of time (Id.). Additionally, as noted, IHT claims that two separate representatives of PVH made such alleged statements, but fails to state whether such representations were made at different times, and if so, when. IHT therefore fails to adequately plead the "when" requirement of Rule 9(b).

In further violation of Rule 9(b), IHT fails to specify the form or manner of the alleged misrepresentation (e.g. written or oral; and if oral, whether the oral statement was made in person, by phone or otherwise; and, if written, whether the written statement was set forth in a

hard copy document, an E-mail, a fax or by some other form of communication). Moran, 609 F.Supp. at 665.

For the reasons set forth herein, it is evident that IHT has failed to plead its misrepresentation counterclaim with particularity, and has thus failed to comply with the requirements of the Rule 9(b). Accordingly, IHT's counterclaim must be dismissed in its entirety.

### POINT IV

### ANY CLAIM FOR NEGLIGENT MISREPRESENTATION MUST BE DISMISSED BECAUSE OF THE ABSENCE OF ANY DEMONSTRATION OF THE 'SPECIAL RELATIONSHIP' REQUIRED FOR SUCH CLAIM

Case law makes it clear that a claim for negligent misrepresentation requires a special relationship between the parties. Stan Winston Creatures, Inc. v. Toys "R" Us, Inc., 2004 WL 1949071, *5 (Sup. Ct. N.Y. Co., 2004); Bower v. Atlis Sys., Inc., 182 A.D.2d 951, 953 (3d Dep't. 1992); Brown v. Lockwood, 76 A.D.2d 721, 733 (2d Dep't. 1980). Examples of special relationships that will support a negligent misrepresentation claim include, by way of example, persons who possess a unique or specialized expertise, or who are in a special position of confidence and trust with the injured party, including a parent and child, a husband and wife, a guardian and ward, a principal and agent, and an attorney and client. Dallas Aerospace, Inc. v. CIS Air Corp., 352 F.3d 775, 788 (2d Cir. 2003); Brown, 76 A.D.2d at 733.

In New York, not all representations "will give rise to a duty to speak with care." Dallas Aerospace, 352 F.3d at 788, citing Kimmel v. Schafer, 89 N.Y.2d 257 (1996); Stan Winston Creatures, 2004 WL 1949071 at *5 (no special relationship between the parties to support a cause of action for negligent misrepresentation when the plaintiff fails to show anything more than arms' length dealing between separate business entities). Rather, "the law of negligent

11

...

misrepresentation requires a closer degree of trust between the parties than that of the ordinary buyer and seller in order to find reliance on such statements justified." Dallas Aerospace, 352 F.3d at 788.

In the instant action, the parties' relationship does not arise to the level of 'special relationship' necessary to establish negligent misrepresentation, and accordingly, IHT's counterclaim must be dismissed in its entirety.

## CONCLUSION

**WHEREFORE**, plaintiff respectfully request that the Court issue an order dismissing defendants' counterclaim in its entirety and awarding any other relief this Court deems just and proper.

Dated: New York, New York
January 9, 2008

                              **WEISS & HILLER, PC**
                              Attorneys for Plaintiff
                              600 Madison Avenue
                              New York, New York 10022
                              (212) 319-4000

By: _____
      Arnold M. Weiss (AW0942)