# EXHIBIT 6

Weiss & Hiller, P.C.
Attorneys for the Plaintiff
600 Madison Avenue
New York, New York 10022
Telephone:    (212) 319-4000
Facsimile:    (212) 753-4530
Email: aweiss@weisshiller.com

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x
PHILLIPS-VAN HEUSEN CORPORATION,   :
                                                              Case No. 07 Civ. 8169 (AKH)
           Plaintiff,   :

   -against-   :   **AFFIDAVIT OF**
                                                              **KENNETH L. WYSE**

                                                            :
INTERNATIONAL HOME TEXTILES, INC.
and SALO GROSFELD,   :

           Defendants.   :
-------------------------------------------------------x

1.    I am, and since 2003 I have been, President, Licensing & Public Relations ("L&PR") for plaintiff, Phillips-Van Heusen Corporation ("PVH").  From 2000 through 2003 I was PVH's Senior Vice President, L&PR.  My responsibilities in these positions have included the overall supervision of PVH's multiple license agreements.  PVH is the owner or licensee of many well-known and prestigious trademarks including Calvin Klein, IZOD, Van Heusen, ARROW, DKNY, Geoffrey Beene, Michael Kors, Sean John, Chaps, Kenneth Cole, and Donald J. Trump.  My duties since 2000 have included negotiation, renewal, and/or termination of license agreements.  During the above time peirod, I also deal with a range of issues that arise during the course of license agreements, e.g., assurance of the licensees' performance of their obligations under the license agreements, including the payment of royalties, obtaining the proper approvals and use of appropriate advertising materials, and the resolution of problems or issues that arise under the agreements.

2.   In or about December 2001, PVH entered into a license agreement with defendant International Home Textiles, Inc. ("IHT"), granting IHT the exclusive right to use the IZOD trademark ("Mark"), for the sale, distribution and promotion of sheets, pillow cases, towels and related items ("Products") within the United States and its possessions and territories (the "Territory"), through December 31, 2005. On or about February 3, 2006, PVH entered into a second license with IHT, dated as of January 1, 2006, for use of the Mark in connection with the sale, distribution and promotion of the Products in the Territory for an additional three year period terminating on December 31, 2008 (the "License Agreement"). Annexed hereto as Exh. 1 is a copy of the License Agreement.

3.   As set forth below, the License Agreement was executed and negotiated on behalf of IHT by its President, defendant Salo Grosfeld ("Grosfeld"). Grosfeld was the sole IHT representative who negotiated the License Agreement on behalf of IHT. His words and conduct during those negotiations made it clear that he was well versed in the terms and provisions of the License Agreement. The guarantee, set forth in Article 11.19 of the License Agreement that is <u>on the same page as Grosfeld's signature</u>, provides:

> 11.19 <u>Guaranties</u>. The obligations of the Licensee hereunder, including, without limitation, the obligation to pay Percentage Royalties and Guaranteed Minimum Royalties shall be guaranteed jointly and severally by the shareholders of the Licensee pursuant to a personal guaranty in form and substance acceptable to PVH (Exh. 1, ¶11.19).

4.   Negotiations leading to the execution of the License Agreement commenced in or about the second half of 2005. They involved a series of meetings, telephone conversations and correspondence essentially between myself and Mark Weber on behalf on PVH, and Grosfeld on behalf of IHT. During the course of such negotiations, Grosfeld, by his repeated reference to, and

2

discussion of, various provisions of the License Agreement, made it clear that he had reviewed, and was familiar with, the terms of said agreement.

5.      Indeed, Grosfeld had the draft of the proposed license agreement ("Draft License Agreement," a copy of which is annexed hereto as Exh. 2) in his possession for review <u>for two months</u> (from in or about October 27, 2005 to December 23, 2005) before he responded to me with his final comments.[1] Significantly, the Draft License Agreement contained the clause requiring Grosfeld's guarantee of, and joint liability with, IHT that was identical to Article 11.19 of the executed License Agreement. That guarantee/joint liability clause was also located on the last page -- the signature page -- of the Draft License Agreement.

6.      Not only did Grosfeld orally discuss various provisions of the proposed License Agreement with me and Mr. Weber, he also negotiated a number of its legal terms in writing. Annexed hereto as Exh. 5 is a copy of an email I received from Grosfeld on December 23, 2005 ("Grosfeld Email") which reveals Grosfeld's familiarity with and his personal participation in drafting the specific provisions contained in the License Agreement. The Grosfeld Email also underscores that Grosfeld had the benefit of review by, and consultation with, an attorney in negotiating the specific provisions of the License Agreement. Further, the Grosfeld Email demonstrates that Grosfeld essentially took charge of the negotiations and selected precisely which clauses of the License Agreement he deemed necessary to modify -- to wit, Grosfeld himself, selected out 8, and dispensed with 22, of the 30 clauses in the proposed License Agreement that his attorney had singled out for

---

[1] A copy of my October 26, 2005 letter to Grosfeld FedExing the Draft License Agreement to him is annexed hereto as Exh. 3; a copy of my October 27, 2005 email to Grosfeld confirming my said transmission of said Draft License Agreement to him is annexed hereto as Exh. 4; and Grosfeld's December 23, 2005 email ("Grosfeld Email") containing his final comments to the License Agreement is annexed hereto as Exh. 5.

3

consideration. The Grosfeld Email begins as follows:

> He [My Attorney] made about 30 comments I erased most of them to try to make this simple and easy. There are now only 8 comments (Exh. 2).

The Grosfeld Email then sets forth the 8 specific changes to the License Agreement that he, Grosfeld, personally desired.[2]

7. Most significantly, although Grosfeld requested 8 specific modifications to the License Agreement, at no time during the negotiation of the License Agreement did he make any request to eliminate or change the guarantee and joint liability clause that was contained in both the proposed draft version of the License Agreement (Exh. 2 ) and in the final version of the License Agreement (Exh. 1). Moreover, the guarantee clause in both the Draft License Agreement, and the final License Agreement, appears just above and on the very same page as Grosfeld's signature (Exh. 1, p. 33) (Exh. 2, p. 33). Additionally, at no time during the negotiation of the License Agreement did Grosfeld even suggest that any further documentation would be necessary to effectuate his guarantee contained in Article 11.19 of the License Agreement. I understood that Article 11.19 provided PVH with the option, but not the obligation, to secure further documents from Grosfeld to reflect the guarantee provided for under the License Agreement.

8. Additionally, during my interaction with Grosfeld he expressly acknowledged to me his awareness that PVH desired his guarantee in connection with its license of IZOD to IHT.

9. As President of Licensing, I am the primary person on behalf of PVH who is engaged in the interaction with the licensees with regard to issues of importance. In the case of the IHT license, my interaction with IHT was exponentially greater than with many other licensees. Virtually

---

[2]PVH agreed to most of the changes that Grosfeld requested. See my January 4, 2006 letter to Grosfeld, a copy of which is annexed hereto as Exh. 6.

4

all such interaction with IHT was with Grosfeld himself. Indeed, throughout, Grosfeld appeared to me to be, and held himself out as, a "one man dance" on behalf of IHT. He also advised me that he was the President of IHT which was owned by him and his family. My extensive interaction with Grosfeld brought me to the conclusion that he was essentially the company: IHT. Indeed, for example, one of the clauses in both the License Agreement and the Draft License Agreement, Article 8.3(l), grants PVH a right to terminate the license agreement if: "Salo Grosfeld shall at any time for any reason cease to be active in the management of the licensee" (Exh. 1, pp. 21-23) (Exh. 2, pp. 21-23).

_____
Kenneth L. Wyse

Sworn to before me this
24 day of January 2008

_____
Notary Public

Drivers License
NYS.
304-822367

SANDRA HENCHY
MY COMMISSION # DD439746
EXPIRES: Sept. 12, 2009
Florida Notary Service.com
(407) 398-0153

5

# Exhibit 5 to
# Wyse Affidavit

"Salo Grosfeld" <Salo@jrunited.com>

12/23/2005 04:32 PM

To: <KennethWyse@pvh.com>
cc:
Subject: FW: Izod

Ken,

My attorney reviewed the Agreement and has the following comments:
He made about 30 comments I erased most of them to try to make this simple and easy. There are now only 8 comments.
Thank you again for your support and the opportunity to be associated with this Great Brand and with an amazing company like PVH,
Sincerely,
Salo


1. The License does not authorize International Home to assign its rights to affiliates. In reviewing my old file on this, I noted that you
were going to get a letter from someone at IZOD permitting sales by affiliates. Did we ever get such a letter or otherwise address this issue?

2. 1.4.3. We should add the word "reasonable" before "opinion" at line 2 and 7. This relates to PVH's determination that a Product Category
should be eliminated.

3. Paragraph 7.3.3., line 1. Must add "at PVH's expense" after "At PVH's request"

4. Paragraph 7.5.1, line 14. Must delete "and Licensee agrees that, at PVH's request, Licensee will pay the costs incurred therefore, including
judicial expenses and legal fees."

5. Paragraph 7.5.2, line 9. Must insert a period after PVH and delete the balance of the sentence.

6. Paragraph 7.5.3, line 6, should be modified to provide that PVH will incur costs in pursuing Counterfeiters, not Licensee.

7. Paragraph 8.3, Defaults. We had tried to get notice with an Opportunity to cure for the violations set forth in (b) and (d)

8. Paragraph 8.10. If Licensee breaches and is terminated, damages are the Minimum royalties for the balance of period. We need to limit to
balance of royalties due for goods sold, or for the balance of that year.