UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

PHILLIPS-VAN HEUSEN CORPORATION,  :

                       Plaintiff,        :     Index No.: 07-CIV-8169 (AKH)

      -against-            :

INTERNATIONAL HOME TEXTILES, INC. :
AND SALO GROSFELD,

                          :

            Defendants.

                          :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**PLAINTIFF PHILLIPS-VAN HEUSEN CORPORATION'S
MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO
DISMISS DEFENDANT IHT'S COUNTERCLAIM**

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ........................................................................ 1

POINT I    IHT HAS TOTALLY FAILED TO REBUT THE TWO
SEPARATE GROUNDS DEMONSTRATING THAT
IT HAS NOT ALLEGED ANY ACTUAL MISREPRE-
SENTATION.  ADDITIONALLY, ITS ATTEMPT
TO CREATE ADDITIONAL REPRESENTATIONS
IS FUTILE ................................................................................. 2

    A.    IHT's Failure to Allege That PVH's Purported
Representation Was Untrue .................................................. 3

    B.    PVH's Alleged Prediction of "Future Expectations"
Does Not Support a Fraud Claim ......................................... 4

    C.    IHT's New Alleged Representations Do Not
Support Any Viable Claims .................................................. 6

POINT II    IHT'S COUNTERCLAIM STILL FAILS TO MEET THE
REQUIREMENTS OF RULE 9(b) ................................................. 9

POINT III    IHT CANNOT AVOID THE FATAL IMPACT OF
THE INTEGRATION CLAUSE THAT SPECIFICALLY
NEGATES REPRESENTATIONS NOT CONTAINED
IN THE LICENSE AGREEMENT .............................................. 12

POINT IV    IHT'S REQUEST TO REPLEAD SHOULD BE DENIED
WITH PREJUDICE ...................................................................... 16

    A.    IHT's Inclusion of a Request to Replead in Opposition
to PVH's Motion to Dismiss Is Improper ............................ 16

    B.    Leave to Replead Should Be Denied Due to IHT's
Failure to Submit a Proposed Counterclaim ........................ 17

    C.    IHT's Request to Replead Should Be Rejected as Futile ..... 18

D.      IHT's Request to Replead Should Be Denied to Avoid
        Prejudice to PVH ............................................................    20

CONCLUSION...................................................................................    21

# TABLE OF AUTHORITIES

Page

American Tissue, Inc. v. Donaldson, Lufkin & Jenrette Sec. Corp.,
    233 F.R.D. 327 (S.D.N.Y. 2005) ........................................................... 18

Bankruptcy Trust of Gerard Sillam v. Refco Group, LLC et al.,
    2006 WL 2129786 (S.D.N.Y. 2006) ................................................... 16,17,18

Barash v. Pennsylvania Terminal Real Estate Corp.,
308 N.Y.S.2d 649, 256 N.E.2d 707(1970).......................................... 13

Bavaria Int'l Aircraft Leasing GmbH v. Clayton, Dublier & Rice, Inc.,
    No. 3 Civ. 0377, 2003 U.S. Dist. LEXIS 13197 (S.D.N.Y.) .............. 12

Block v. First Blood Associates,
    988 F.2d 344 (2d Cir. 1993) .............................................................. 20

Centronics Fin. Corp. v. El Conquistador Hotel,
    573 F.2d 779 (2d Cir. 1978) ............................................................... 13

Citibank v. Plapinger,
    66 N.Y.2d 90, 495 N.Y.S.2d 309 (1985) ........................................... 12

Confederate Mem'l Ass'n, Inc. v. Hines,
    995 F.2d 295 (D.C. Cir. 1993) ............................................................ 16-17

Dooner v. Keefe, Bruyette & Woods, Inc.,
    157 F. Supp. 2d 265 (S.D.N.Y. 2001).................................................. 12

DH Cattle Holdings Co. v. Smith,
    195 A.D.2d 202 (1st Dept. 1994) ....................................................... 12

Emergent Capital Inv. Mgmt., LLC v. Stonepath Group, Inc.,
    165 F. Supp. 2d 615 (S.D.N.Y. 2001) ................................................ 12

Gurary v. Winehouse,
    235 F.3d 792 (2d Cir. 2000) ............................................................... 16

Hampshire Equity Partners L.P. v. Teradyne, Inc.,
    2005 WL 736217 (S.D.N.Y.), aff'd, 159 Fed. Appx. 317 (2d Cir. 2005) .... 4,11,19

Harsco Corp. v. Segui,
     91 F.3d 337 (2d Cir. 1996) ........................................................ 12,13

In re Bristol-Myers Squibb Sec. Litig.,
     312 F. Supp. 2d 549 (S.D.N.Y. 2004) ...................................... 11

In re Tamoxifen Citrate Antitrust Litig.,
     466 F.3d 187 (2d Cir. 2006) ..................................................... 16

Kalnit v. Eichler,
     264 F.3d 131 (2d Cir. 2001) ..................................................... 11

M-101, LLC v. iN Demand L.L.C.,
     2007 WL 4258191 (S.D.N.Y.) ................................................ 5

Morgan Guaranty Trust Co. of N.Y. v. Republic of Palau,
     657 F. Supp. 1475 (S.D.N.Y. 1987) ........................................ 6

Ruffolo v. Oppenheimer & Co.,
     987 F.2d 129 (2d Cir. 1993) ..................................................... 19

Sabo v. Delman,
     3 N.Y.2d 155, 143 N.E.2d 906 (1957) .................................... 13

State Trading Corp. of India, Ltd. v. Assuranceforeningen Skuld,
     921 F.2d 409 (2d Cir. 1990) ..................................................... 17

Twohy v. First Nat. Bank of Chicago,
     758 F.2d 1185 (7th Cir.1985) ................................................... 17

United Artists Threatre Circuit, Inc. v. Sun Plaza Enter. Corp.,
     352 F. Supp. 2d 342 (E.D.N.Y. 2005) ..................................... 12

Wall v. CSX Transp.,
     471 F.3d 410 (2d Cir. 2006) ..................................................... 12,13

Wells Fargo Bank Northwest, N.A. v. Taca Int'l Airlines, S.A.,
     247 F. Supp. 2d 352 (S.D.N.Y. 2002) ..................................... 13

Wilson v. Toussie,
     2003 WL 22466219 (S.D.N.Y.) .............................................. 19

**STATUTES:**

Federal Rules of Civil Procedure 7(b) .................................................    17

Federal Rules of Civil Procedure 9(b) .................................................    *passim*

Federal Rules of Civil Procedure 12(b)(6) .......................................    19

## PRELIMINARY STATEMENT

PVH's[1] moving papers demonstrated that IHT's counterclaim alleging misrepresentation should be dismissed on four separate grounds:

- PVH's alleged representations, even if they had been made, are nothing more than an expression of future expectations, or puffery;

- PVH's alleged representations are not, in fact, misrepresentations;

- IHT's counterclaim failed in multiple respects to comply with the disclosure requirements of Federal Rule 9(b) ("Rule 9(b)"); and

- the License Agreement's integration clause negates the alleged representation, particularly where as here, the License Agreement: (I) contains a provision specifically rejecting representations not contained in the agreement; (ii) was executed after substantial negotiation; (iii) is the product of IHT's substantial sophistication in the subject matter of said agreement, and in the habits and preferences of Approved Retailers; and (iv) contains extensive provisions that deal specifically with the subject matter, and are inconsistent with, the alleged oral representations that IHT seeks to introduce.

IHT, in its answering papers, failed to refute any of these separate grounds that call for the dismissal of its counterclaim.

Recognizing the complete insufficiency of its counterclaim, IHT in opposition to the within motion ("Opposition Papers"), now desperately, but unsuccessfully, seeks to create new "representations" ("New Alleged Representations"). None of the New Alleged Representations are even vaguely encompassed within IHT's counterclaims. Nor does IHT advise the Court why, if the New Alleged Representations had been made, they were not contained in its counterclaim. Moreover, as this memorandum demonstrates, the New

---

[1] Abbreviations set forth in PVH's moving papers on this motion are used herein.

Alleged Representations are not supported by the affidavit of defendant Salo Grosfeld ("Grosfeld Aff.") submitted herein by IHT. In any case, none of the New Alleged Representations support viable claims.

Finally, IHT's request to replead should be denied <u>with prejudice</u> because:

- such request is inappropriately asserted in opposition to a motion to dismiss;

- IHT failed to provide PVH or this Court with a proposed amended pleading (despite obvious discrepancies between the facts asserted in its counterclaim and the muddled facts newly asserted in opposition to this motion);

- in any event, IHT's amended pleading would likely be futile; and

- granting IHT leave to amend could severely prejudice PVH.

## POINT I

**IHT HAS TOTALLY FAILED TO REBUT THE TWO SEPARATE GROUNDS DEMONSTRATING THAT IT HAS NOT ALLEGED ANY ACTUAL MISREPRESENTATION. ADDITIONALLY, ITS ATTEMPT TO CREATE ADDITIONAL REPRESENTATIONS IS FUTILE.**

Point II of PVH's moving Memorandum of Law ("PVH's MOL") demonstrates that:

(I)    IHT made no allegation demonstrating that the purported representations were untrue; and

(ii)    at best, the purported representations relied on by IHT are statements of future expectation, which by their nature do not amount to facts upon which a misrepresentation claim can be based.

IHT's papers in opposition to PVH's within motion ("Opposition Papers") fail completely to cure these fatal flaws.

In addition, the New Alleged Representations that IHT seeks, without explanation, to

2

insert into its counterclaim do not support any viable misrepresentation claim.

## A.    IHT's Failure to Allege That PVH's Purported Representation Was Untrue

PVH's moving papers point out that IHT's fraud counterclaim is based upon two

allegations which, if taken together, do not actually allege any untruth:

> (I)    IHT's allegation that PVH's executives Kenneth Wyse ("Wyse")
> and Mark Weber ("Weber") represented to Grosfeld that "a number" of the
> Approved Retailers "would agree" to market the Licensed Products (Answer,
> Exh. 4 at p. 9, ¶9); and

> (ii)    IHT's allegation that "a number" of such Approved Retailers did
> not market such Licensed Products (Id. at p. 9, ¶10).

PVH demonstrated that said allegations are in no way inconsistent with each another and,

therefore, cannot constitute an actionable misrepresentation (PVH's MOL, pp. 6-8).

Seeking to avoid this fatal flaw, IHT, in its opposing Memorandum of Law ("IHT's

MOL") asserts that rather than representing that "a number" of Approved Retailers would

market the Licensed Product, PVH represented that "certain" Approved Retailers would

market the Licensed Products (IHT's MOL at p. 14). Attempting to support that claim,

IHT's attorneys assert that Grosfeld, in ¶27 of the Grosfeld Aff., alleged that Weber and

Wyse represented that the 21 Retailers would market and sell the Licensed Products (Id. at

pp. 14, 18 n.6). This assertion is completely unfounded. Nowhere in the Grosfeld Aff. does

Grosfeld allege that Wyse or Weber ever represented that any one or more of the 21 Retailers

would market and/or sell any of IHT's Licensed Products.[2]

---

[2] Paragraph 27 of the Grosfeld Aff. simply lists the 21 Retailers. Furthermore, whereas Grosfeld
states in ¶26 of his said affidavit that these 21 Retailers "purportedly were ready, willing, and able to buy

Hence, IHT's alleged representation regarding a "number" of Approved Retailers that would market the Licensed Products is not a <u>mis</u>representation; and its New Alleged Representations regarding "certain" Approved Retailers that would market the Licensed Products is wholly unsupported.

**B.    PVH's Alleged Prediction of "Future Expectations" Does Not Support a Fraud Claim**

Indeed, the "representations" that the Grosfeld Aff. attributes to Weber and Wyse regarding the sales potential of the Licensed Products constitute mere, non-actionable future predictions and/or general puffery regarding the IZOD mark; as such, they are clearly insufficient to support a misrepresentation claim. <u>See</u> cases cited on p. 6 of PVH's MOL. <u>See also</u> <u>Hampshire Equity Partners L.P. v. Teradyne, Inc.</u>, 2005 WL 736217*2 (S.D.N.Y.), <u>aff'd.</u> 159 Fed. Appx. 317, 318 (2d Cir. 2005)(emphasizing that statements of future predictions and/or general puffery will not support a fraud claim).

For example, Grosfeld attributes the following generalized statements to Weber: that the IZOD mark was "very 'hot'" (Grosfeld Aff., ¶8); that there was "no hotter clothing line in the country" (<u>Id.</u>); that apparel products with the Licensed Mark "were selling incredibly well;" and that "given the popularity of the IZOD mark, IHT would have no problem selling"

---

the Licensed Products" he provides no basis whatsoever for said conclusion. Specifically, he states nowhere in this paragraph (or anywhere else in the Grosfeld Aff.) that any PVH personnel represented to IHT that any single one of these 21 Retailers would purchase any Licensed Products, or that any one of them was "ready, willing, and able" to buy Licensed Products.

Similarly, Grosfeld's attorneys' assertion that PVH represented to Grosfeld that Macy's or PVH's stores would purchase Licensed Products from IHT (IHT's MOL, p. 12) has no support in the Grosfeld Aff.

4

the Licensed Products to the Approved Retailers (Id.).  To Wyse, Grosfeld attributes the

following: "IZOD salespeople had told him how popular the IZOD mark had become" (Id.

at ¶9).

Although IHT's counterclaim specifies only Wyse and Weber as having made any

representations to IHT, the Grosfeld Aff. now, and without explanation, moves in a

completely different direction.  It attributes statements to another PVH representative,

Malcolm Robinson ("Robinson") who was not mentioned in its counterclaim.  For example,

the Grosfeld Aff. attributes to Robinson similar future predictions including that "it would

be a 'slam dunk'" for IHT to sell Licensed Product to the Approved Retailers (Grosfeld Aff.

at ¶11).[3]

Moreover, the  cases defendants cite to support their contention that PVH's alleged

statements were of present fact, and not of future predictions, are inapposite.  In each cited

case, unlike the situation in this case, the representations at issue went far beyond a mere

future prediction or general puffery; rather, they were expressions of existing facts.  For

example, in M-101, LLC v. iN Demand L.L.C., 2007 WL 4258191, *1 at 1-3 (S.D.N.Y.), as

IHT even notes (IHT's MOL at p. 19), the representations at issue were "commitments" (i.e.,

"the MSO's are squarely on board" and "iND understood the importance of the MSO's

_____

[3]Whereas Grosfeld asserts that Robinson said he "could get retailers Belk and Bon Ton to buy
Licensed Products"(Grosfeld Aff. at ¶11), it is significant that (I) Grosfeld never alleges that either of such
two retailers failed to purchase Licensed Products from IHT; and (ii) both Belk and Bon Ton had been
Approved Retailers under the 2001 License Agreement, and IHT was obviously fully familiar with their
buying propensities (Exh. A to the Grosfeld Aff.).

marketing commitment to M-101's decision to enter into the Agreement with iND")
(emphasis added).  And in <u>Morgan Guaranty Trust Co. of N.Y. v. Republic of Palau</u>, 657
F.Supp. 1475, 1481 (S.D.N.Y. 1987), the representation that the project at issue was self
supporting was similarly indicative of present intent (emphasis added).

### C.    IHT's New Alleged Representations Do Not Support Any Viable Claims

Recognizing the complete insufficiency of its counterclaim, IHT now desperately, but
unsuccessfully, seeks to create the New Alleged Representations to support its counterclaim.
None of the New Alleged Representations are even vaguely encompassed or alluded to
within IHT's counterclaim.  Nor does IHT advise the Court why, if the New Alleged
Representations had been made, they were not contained in its counterclaim.  Moreover, even
if the Court considers the New Alleged Representations on this motion, which it should not,
none of them support viable claims.

The first set of New Alleged Representations that IHT improperly seeks to insert into
the litigation are PVH's alleged representations that it would assist IHT in getting the
Approved Retailers to purchase from IHT.  For example, Grosfeld states that Robinson
allegedly said that PVH would assist IHT "in placing Licenced Products with Macy's" and
with retailers Belk and Bon Ton (Grosfeld Aff., at ¶¶11-12).  However, nowhere does
Grosfeld or IHT allege that PVH did <u>not</u> make efforts to assist IHT in securing purchasers
from these or other Approved Retailers.  Nor is there any claim, or any basis shown for any
claim, that Robinson did not intend to make such efforts.  In fact, Grosfeld asserts that

6

Robinson was working with IHT to secure sales from Macy's (Grosfeld Aff., ¶12). Hence, the Opposition Papers fail to supply any basis for a claim regarding this first set of new assertions. Additionally, as more fully discussed below, the New Alleged Representations directly contravene the integration clause contained in Article 11.10 of the License Agreement, and accordingly, should not be considered by this Court (Exh. 1 to PVH's moving papers).

IHT's next set of New Alleged Representations -- also having nothing to do with anything alleged in its counterclaim -- is that PVH made oral promises to furnish IHT with an expanded list of Approved Retailers (Grosfeld Aff., at ¶19).

To begin with, this purported oral promise runs directly afoul of the License Agreement's integration clause whereby, inter alia, the parties expressly agreed that (I) any "prior ... representations [or] promises," would be "supercede[d]" by those contained in the License Agreement; and (ii) that any modification or amendment was required to be "in writing signed by both parties" (Exh. 1 to PVH's moving papers). Furthermore, PVH's purported oral promise to supply a new and different list of Approved Retailers is directly contrary to provisions Article 6.14 and Schedule 6.14 of the License Agreement (Id.). Contravening any oral promise to furnish new Approved Retailers, these provisions specify both: (I) the precise list of Approved Retailers that the parties agreed to; and (ii) the method of adding any new entities to that list. Specifically, Article 6.14 provides that "the customers listed on Schedule 6.14" are the Approved Retailers to whom IHT can sell their Licensed

7

Products. That Article also sets forth the detailed process whereby additional parties could have been added to the list of Approved Retailers. The process includes the submission "to PVH for its approval, [of] a written list of proposed customers, together with such other information as PVH may reasonably request, such as photographs, address and information regarding the Products and other merchandise sold by such proposed customer" (Exh. 1 to PVH's moving papers). That process never occurred, and Grosfeld does not even contend that it did. At any rate, as discussed in Point III below, IHT's assertion of alleged representations that conflict directly with provisions in the Licence Agreement cannot be introduced or considered in this action.

Further, undermining any basis for IHT's claim that PVH purportedly promised to add more Approved Retailers in May 2006, is the fact that PVH did in fact furnish a list containing 34 additional Approved Retailers (Grosfeld Aff., at ¶25 and Exh. C thereto). That addition more than doubled the list attached to the Licence Agreement. That IHT was unsatisfied with some or all of the new additions to the list is hardly a basis for a misrepresentation claim.[4]

---

[4]As pointed out in n. 2 of page 4 hereof, IHT's MOL assertion to the contrary (IHT's MOL at p. 10), nowhere in the Grosfeld Aff. does he claim that PVH, at any time, represented that any one or more of the 34 additional Approved Retailers added to the list would be "ready, willing, and able" to purchase IHT's Licensed Products. Firstly, the "ready, willing, and able" comment was addressed to the 21 Retailers. Secondly, as noted, there is no claim in the Grosfeld Aff. that anyone from PVH represented that any of such Approved retailers were "ready, willing, and able," etc. Similarly, without support in the Grosfeld Aff. is his attorneys' assertion (Id. at p. 15) that PVH ever represented that any new Approved Retailers on the expanded list would be "viable."

8

In sum, PVH has shown, and IHT has failed to refute, two separate grounds demonstrating that IHT has not alleged any actionable misrepresentation. Similarly, IHT's newly concocted assertions (i.e., the New Alleged Representations) neither support its counterclaim, nor provide the basis for any new valid counterclaim.

**POINT II**

**IHT'S COUNTERCLAIM STILL FAILS TO MEET THE REQUIRE-MENTS OF RULE 9(b).**

To begin with, it is disingenuous for IHT to seek to shift its Rule 9(b) burden to PVH by asserting repeatedly that PVH knows the alleged representations and their details. First, PVH obviously denies any such representations. More important, PVH is entitled, under Federal Rule 9(b) ("Rule 9(b)"), to know precisely which details IHT claims with regard to each alleged representation (i.e., who, when, where, what, etc.).

Not only has IHT failed to supply any detail with regard to its original allegations, its Opposition Papers still fail to supply the detail required by Rule 9(b) with regard to its New Alleged Representations. Specifically:

(i)    Point I of IHT's MOL asserts that Wyse and Weber "affirmatively represented to [Grosfeld] that certain Approved Retailers" would agree to sell and market Licensed Products (IHT's MOL, at p.14, emphasis supplied). However, nowhere in the counterclaim or Grosfeld Aff. does IHT assert that Wyse or Weber made any such representations. Hence, of course, IHT does not allege any of the details required by Rule 9(b) with regard to any purported statements by Wyse or Weber that "certain" (unnamed) Approved Retailers (or

9

indeed any particular Approved Retailer), would agree to sell or market such Licensed Products;

(ii)    IHT's MOL states flat-out that "Grosfeld asserts" that Wyse and Weber represented to Grosfeld that 21 Retailers would agree to sell or purchase the Licensed Products (p. 14, and p. 18 n.6). Here, too, as noted, Grosfeld's attorneys' statements notwithstanding, the Grosfeld Aff. is devoid of any such representations. Indeed, with regard to these 21 Retailers, Grosfeld merely states that they were added to the list of Approved Retailers on May 26, 2006, <u>five months after</u> the License Agreement was negotiated and executed (Grosfeld Aff. at ¶25). Moreover, again, the Grosfeld Aff. does not proffer any of the details required by Rule 9(b) with regard to any such purported representations;

(iii)    IHT's MOL emphasizes that "[t]he number of Approved Retailers who would market and sell Licensed Products was a material fact" (IHT's MOL, p. 15). However, this contention is wholly unsupported. In fact, there is no allegation in the Grosfeld Aff. that anyone from PVH ever represented to him any such "number" of Approved Retailers. And, of course, IHT does not furnish any of the details of such purported representation, as required by Rule 9(b);

(iv)    Grosfeld asserts that the Approved Retailers on the additional schedule provided by PVH were "purportedly ready, willing and able" to buy Licensed Products from IHT (Grosfeld Aff., ¶26). Here, too, IHT never alleges that anyone from PVH represented that the entities listed on any Approved Retailers list were, in fact, "ready, willing, and able"

10

to purchase Licensed Products from IHT. Further, IHT fails to disclose any details of such purported representations as required by Rule 9(b); and

(v)     The counterclaim alleges, and Grosfeld asserts that he "believe[s]", that various of PVH's alleged "promises and representations were false when made" (Grosfeld Aff., ¶35). However, IHT does not identify any specific alleged promises, representations, nor any particular person to support this wholly conclusory allegation, in derogation of Rule 9(b).

Rule 9(b) provides that "malice, intent, knowledge, and other condition of mind may be averred generally." Fed. R. Civ. P. 9(b). However, parties are still required, under 9(b), to allege facts giving rise to a "strong inference of fraudulent intent." Hampshire Equity, 2005 WL 736217, *2 (S.D.N.Y.) (citing Kalnit v. Eichler, 264 F.3d 131, 138-39 (2d Cir. 2001)). As the court in Hampshire Equity explained, this "strong inference" can be shown either by demonstrating "that defendants had both motive and opportunity to commit fraud, or by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." Id. In the case at bar, IHT's assertion of non-actionable statements regarding future intent does not raise a substantial, no less a strong, inference that plaintiff maintained the requisite state of mind to commit fraud. See Hampshire Equity, 2005 WL 736217, at *2.[5]

---

[5]The court in Hampshire Equity concluded that, like the case at bar, "not only does the Complaint fail to describe any documents, reports, or conversations that would give rise to an inference of scienter, the Complaint alleges almost no supporting facts at all." Id. In this regard, the court in Hampshire Equity noted that the alleged fraudulent statements were comparable to plain opinions, corporate optimism, predictions, promises of future, and/or mere opinion and puffery "which courts have routinely held cannot support a fraud claim." Id. n.4 (citing In re Bristol-Myers Squibb Securities Litigation, 312 F.Supp.2d 549,

Accordingly, IHT has still failed to satisfy Rule 9(b)'s requirements mandating that the host of purported representations alleged by IHT be set forth with sufficient particularity.

## POINT III

### IHT CANNOT AVOID THE FATAL IMPACT OF THE INTEGRATION CLAUSE THAT SPECIFICALLY NEGATES REPRESENTATIONS NOT CONTAINED IN THE LICENSE AGREEMENT

In Point I of PVH's MOL, PVH cited a series of cases demonstrating that an integration clause can prohibit any fraud claim based upon representations not included in the agreement (PVH's MOL, pp. 3-5).[6] These cases point out that such representations are particularly unacceptable where, as here, the pertinent agreement is the product of extensive negotiations between sophisticated business people. Indeed, one of IHT's own cases, Wall v. CSX Transp. 471 F.3d 410, 416 n.5 (2d Cir. 2006), recognizes that a negotiated integration clause negates oral representations in a fraud claim.

> New York law is not so liberal, however, as to permit parol evidence of fraudulent inducement to enter a contract in every situation. The New York Court of Appeals has foreclosed parol evidence where a contract includes a negotiated merger clause, *see Citibank v. Plapinger*, 66 N.Y.2d 90, 95, 485 N.E.2d 974, 976-77, 495 N.Y.S.2d 309, 311-12 (1985) -- (distinguishing between a negotiated merger clause-which would preclude parol evidence-and a standard form clause-which would not) (emphasis supplied).

---

558 (S.D.N.Y. 2004), Bavaria Int'l Aircraft Leasing GmbH v. Clayton, Dublier & Rice, Inc., No. 03 Civ. 0377, 2003 U.S. Dist. LEXIS 13197, at *17 (S.D.N.Y.), Dooner v. Keefe, Bruyette & Woods, Inc., 157 F. Supp. 2d 265, 280 (S.D.N.Y. 2001), and DH Cattle Holdings Co. v. Smith, 195 A.D.2d 202, 208 (1st Dept. 1994)) (emphasis added).

[6]United Artists Theatre Circuit, Inc. v. Sun Plaza Enterprise Corp., 352 F.Supp. 2d 342, 351 (E.D.N.Y. 2005); Emergent Capital Inv. Management, LLC v. Stonepath Group, Inc., 165 F.Supp. 2d 615, 621 (S.D.N.Y. 2001); Harsco Corp. v. Segui, 91 F.3d 337, 344-45 (2d Cir. 1996).

12

Wall v. CSX Transp. 471 F.3d 410, 416 n.5 (2d Cir. 2006).

In response, IHT relies heavily on Centronics Fin. Corp. v. El Conquistador Hotel, 573 F.2d 779, 782 (2d Cir. 1978), and a number of cases cited by Centronics, to support its contention that a general integration clause does not negate representations not contained in the License Agreement.[7] The limit of Centronics' scope, however, is set forth in Wells Fargo Bank Northwest, N.A. v. Taca Intern. Airlines, S.A., 247 F.Supp.2d 352, 368, Fn. 18 (S.D.N.Y. 2002).  In Wells Fargo, the court stated:

> Defendants' reliance on Centronics Fin. v. El Conquistador Hotel, 573 F.2d 779, 782 (2d Cir. 1978), is misplaced. Centronics holds that under New York law, a general merger clause alone will not preclude proof by extrinsic evidence of fraud in the inducement.  In that case, however, there was no disclaimer of warranties such as the one in this case.  Centronics itself takes note of the Danann rule, which the Second Circuit has since applied in Harsco, 91 F.3d at 345-46, holding that where a seller disclaimed representations other than those embodied in the agreement, the disclaimer put the buyer on sufficient notice that oral representations not in the agreement could not be reasonably relied upon.

On the basis of the above referenced case law, the alleged representations asserted by IHT are excludible (I) because of the extensive negotiations between sophisticated business people that resulted in the License Agreement, and (ii) because of the License Agreement's specific disclaimer of representations, coupled with the fact that the representations are expressly contradicted by provisions in the License Agreement.

---

[7] E.g., Barash v. Pennsylvania Terminal Real Estate Corp., 308 N.Y.S.2d 649, 656, 256 N.E.2d 707, 711 (1970); Sabo v. Delman, 3 N.Y.2d 155, 161, 143 N.E.2d 906, 908 (1957).

13

In this case the License Agreement, in fact, involved lengthy negotiations between sophisticated business people. The Grosfeld Aff. itself described the multi-month extensive negotiations that led to the License Agreement's execution (Grosfeld Aff., at ¶¶4-24). The length, breadth, and detail of such negotiations are confirmed in Wyse's January 24, 2008 Affidavit ("Wyse Aff.," Exh. 6 hereto) submitted by PVH in opposition to Grosfeld's pending motion to dismiss (Wyse Aff. at ¶¶2-9). The Grosfeld Email (Exh. 5 to Wyse Aff.) underscores the fact that Grosfeld negotiated multiple detailed points relating to various provisions of the License Agreement.

Furthermore, IHT's sophistication, particularly with regard to the subject matter of the License Agreement and the habits and propensities of the Approved Retailers, is clear and extensive. In 2001, more than 3-1/2 years before negotiation of the License Agreement commenced, IHT and PVH entered into an extremely similar license agreement ("2001 License Agreement," Exh. 5 hereto), granting IHT the right to manufacture and sell the same Licensed Products, under the same Licensed Mark, in the same territory, to substantially the same list of Approved Retailers (Exh. 1 to PVH moving papers and Exh. 5 hereto). IHT's 3-1/2 years of active exploitation of, and operation under, the 2001 License Agreement underscores its sophistication with regard to the same Licensed Mark, the same Licensed Products, and the same Approved Retailers and their propensities, before it executed the within License Agreement.[8]   Significantly, even after PVH's moving papers herein

---

[8] Exhibits A and B to the Grosfeld Aff. shows that the Approved Retailers for both license agreements were substantially the same.

14

highlighted the importance of the parties' sophistication in opposition, neither Grosfeld nor IHT deny such extensive and highly pertinent sophistication.

Additionally, the License Agreement's integration clause expressly disclaims "all prior agreements, contracts, promises, representations and statements between [the parties], if any, whether written or oral" (Exh. 1 to PVH moving papers, Article 11.10). Moreover, Articles 6.14 and 6.15 of the License Agreement comprehensively define the subject of Approved Retailers, and contain no suggestion whatsoever that purchases of the Licensed Products will be made by any particularly identified Approved Retailer (Id.). Additionally, as noted in Point I hereof, said Article and Schedule expressly list all Approved Retailers, and also set forth the method of adding new additional Approved Retailers. Hence the New Alleged Representations directly conflict with the express provisions of the License Agreement.

Finally, IHT's gratuitous description of two clauses in the License Agreement as "ambiguous," is wholly irrelevant to the within motion (IHT's MOL, p. 4). Neither the License Agreement's provision dealing with "commercially reasonable efforts" required by IHT, nor its provision dealing with the suspension of IHT's obligations in the event of a force majeure, bear any relation to the questions at issue herein: whether PVH made any actionable misrepresentation regarding Approved Retailers.

For the above reasons, the integration clause prohibits the introduction and consideration of the New Alleged Representations.

## POINT IV

## IHT'S REQUEST TO REPLEAD SHOULD BE DENIED WITH PREJUDICE.

Assuming that the Court finds that IHT failed to adequately plead its fraud claim, IHT's informal request to replead this claim should be rejected without leave for IHT to replead. As demonstrated more fully below, IHT's request should be denied because: (I) such request is inappropriately asserted in opposition to a motion to dismiss; (ii) IHT failed to provide PVH or this Court with a proposed pleading (despite patent and ubiquitous discrepancies between the facts asserted in their Answer and the muddled facts newly asserted in their opposition to this motion); (iii) in any event, IHT's amended pleading would likely be futile; and (iv) granting IHT leave to amend could prejudice PVH.

### A.    IHT's Inclusion of a Request to Replead in Opposition to PVH's Motion to Dismiss Is Improper

It is well settled that "a request to amend [which] was made informally in response to [a] motion to dismiss is itself ground for denying the request." Bankruptcy Trust of Gerard Sillam v. Refco Group, LLC et al., 2006 WL 2129786, *4 (S.D.N.Y. 2006) (citation omitted). See also, In re Tamoxifen Citrate Antitrust Litig., 466 F.3d 187, 220 (2d Cir. 2006) ("[i]t is within the court's discretion to deny leave to amend implicitly by not addressing the request when leave is requested informally in a brief filed in opposition to a motion to dismiss") (citing Gurary v. Winehouse, 235 F.3d 792, (2d Cir. 2000); Confederate Mem'l

16

Ass'n, Inc., 995 F.2d 295, 299 (D.C. Cir.1993) (no abuse of discretion in denying leave to amend where plaintiffs made only a "bare request").

In this case, without question, IHT has not submitted a motion to replead, but has casually, almost in passing, and merely in conclusion to its opposition brief, made such a request. Indeed, the request supplies no reason for IHT's delay in making it; furnishes no explanation as to why the New Alleged Representations, if true, were not contained in IHT's counterclaim; and does not even specify the nature of the claim IHT seeks to assert in connection with such New Alleged Representations. Accordingly, its request should be denied.

## B.   Leave to Replead Should Be Denied Due to IHT's Failure to Submit a Proposed Counterclaim

It is common practice, when requesting leave to replead, to submit a proposed pleading so that the Court and the opposing parties can properly evaluate the merits of a proposed claim. See Gerard Sillam, 2006 WL 2129786, at *5 ("in the context of a motion to amend," Rule 7(b) of the Federal Rules of Civil Procedure "generally requires a movant to supply a copy of the proposed amendment ... so that both the Court and the opposing parties can understand the exact changes sought"); State Trading Corp. of India, Ltd. v. Assuranceforeningen Skuld, 921 F.2d 409, 418 (2d Cir. 1990) (imputing "bad faith" upon plaintiff who sought leave to amend without submitting a proposed complaint); Twohy v. First Nat. Bank of Chicago, 758 F.2d 1185, 1197 (7th Cir.1985) (although not required, failure to submit proposed pleading "certainly indicates lack of diligence and good faith").

17

In this case, IHT's Opposition Papers are replete with new allegations that are confusing, unsupported, and which catch PVH entirely by surprise. As the court stated in Gerard Sillam, "without an opportunity to review plaintiffs' proposed amended complaint, this Court is forced to rule on 'a hypothetical amended complaint that neither the Court nor defendants [have] seen.'" at *5 (quoting American Tissue, Inc. v. Donaldson, Lufkin & Jenrette Securities Corp., 233 F.R.D. 327 (S.D.N.Y. 2005)), reconsideration denied, 2006 WL 1084392 (S.D.N.Y.).

IHT's request to replead without submitting a proposed new pleading should be rejected as contrary to controlling precedent, custom, and practice, and further indicative of bad faith. The absence of a proposed counterclaim is particularly significant here, where IHT has not disclosed the manner in which any amendment might cure their counterclaim's fatal flaws, including those described in part C of Point IV, infra. Certainly, the jumble of new assertions proffered in IHT's Opposition Papers do not provide a roadmap for PVH or this Court to comprehend or assess the allegations or claims asserted against PVH.

Essentially, PVH would be forced to defend against the precise hypothetical claim deemed impermissible in Gerard Sillam, where the court -- on this basis alone -- rejected the plaintiffs' request to replead. Accordingly, IHT's request should be denied.

## C.    IHT's Request to Replead Should Be Rejected as Futile

In any event, even assuming arguendo that IHT's informal, bare request for leave to amend were sufficient, and it is clearly not, IHT's request should be rejected nonetheless, as

18

futile. Without question, it is well-settled that "where it appears that granting leave to amend is unlikely to be productive, . . . it is not an abuse of discretion to deny leave to amend." Ruffolo v. Oppenheimer & Co., 987 F.2d 129, 131 (2d Cir. 1993). See also, Hampshire Equity, 2005 WL 736217, at *6 (denying leave where suggested amendment was futile).

A proposed pleading alleging misrepresentation is futile if it fails to satisfy the pleading requirements of Rule 9(b) and/or if it does not withstand a motion to dismiss pursuant to Rule 12(b)(6). Hampshire Equity, 2005 WL 736217, at *2 (S.D.N.Y.); Wilson v. Toussie, 2003 WL 22466219, *1 (E.D.N.Y.).

In this case, IHT's request to replead is futile under both grounds. As reflected in Point II hereof, IHT failed, under Rule 9(b), to particularize or specify any detail in support of its misrepresentation claim. One such failure results from its reliance on alleged future predictions, which negates its ability to show facts giving rise to a "strong inference of fraudulent intent." In this regard, this case is squarely on point with Hampshire Equity, 2005 WL 736217, at *2. In Hampshire Equity, the court denied leave to amend, because "no amount of pleading" could overcome, inter alia, "the forward-looking nature of the alleged fraudulent statements," and/or transform such statements into intentional misrepresentations of fact. Id.

Even if this Court should find that IHT's request to replead satisfies Rule 9(b) (which it clearly does not), IHT's newly asserted claim would, nonetheless, fail upon a motion to dismiss. As confirmed in Point I(B) and (C) above, IHT does not plead sufficient facts to

allege a cause of action for intentional misrepresentation. For example:

- PVH's alleged representation, even if it had been made, is nothing more than an expression of future expectations, or puffery;

- PVH's alleged representation is not, in fact, a <u>mis</u>representation;

- nothing in the new alleged representations supports a viable claim; and

- the License Agreement's integration clause negates the alleged representation, particularly where as here, the License Agreement: (I) contains provisions specifically rejecting representations not contained in the agreement; (ii) was executed after substantial negotiation; (iii) is the product of IHT's substantial sophistication in the subject matter of said agreement, and in the habits and preferences of Approved Retailers; and (iv) contains extensive provisions that deal specifically with the subject matter and are inconsistent with, the oral representations that IHT seeks to introduce.

**D.    IHT's Request to Replead Should Be Denied to Avoid Prejudice to PVH**

It is well-settled that leave to amend will be denied if, <u>inter alia,</u> such leave would cause prejudice to the other party. <u>See e.g.,</u> <u>Block v. First Blood Associates,</u> 988 F.2d 344, 350 (2d Cir. 1993). In determining whether prejudice exists, this Court should consider not only the nature of a party's unexplained delay, but whether, in the event leave were to be granted, the other party would be required to expend significant additional resources in order to conduct discovery and prepare for trial. <u>Id.</u>

In this case, IHT has proffered no reason why it was unable to plead facts in support of their counterclaim when originally asserted.

Moreover, the parties' schedule for discovery would be significantly disrupted, and would result in PVH's incurring additional, unnecessary expense. Not only did the Court

direct that motions to amend be filed by January 13, 2008, but several prominent discovery deadlines have already lapsed. In addition, the time for the parties to make their document requests expired on January 11, 2008 and the time for the service of interrogatories and admissions will expire on February 29, 2008, while this motion is sub judice. Further, the dates for depositions and the cut-off of fact discovery are fast approaching (April 14, 2008). Accordingly, at a minimum, should this Court deny IHT leave to amend without prejudice -- and it should not -- it, nonetheless, should require IHT to submit a formal motion requesting leave to amend and should establish a new discovery schedule in order to accommodate any prejudice to PVH.

## CONCLUSION

It is respectfully requested that the Court grant plaintiff Phillips-Van Heusen Corporation's within motion in all respects, and dismiss defendant International Home Textiles, Inc.'s counterclaim, with prejudice.

Dated: New York, New York
      February 26, 2008

                            **WEISS & HILLER, PC**
                            Attorneys for Plaintiff
                            600 Madison Avenue
                            New York, New York 10022
                            (212) 319-4000

By: _____
                    Arnold M. Weiss (AW0942)

21