UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
PHILLIPS-VAN HEUSEN CORPORATION,

                Plaintiff,

      - against -

INTERNATIONAL HOME TEXTILES, INC.,
and SALO GROSFELD,

                Defendants.
------------------------------------------------------------------x

07 Civ. 8169 (AKH)

# REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT SALO GROSFELD'S MOTION TO DISMISS THE COMPLAINT

GREENBERG TRAURIG, LLP
MetLife Building
200 Park Avenue, 15th Floor
New York, New York 10166
(212) 801-9200

One International Place, 20th Floor
Boston, MA  02110
(617) 310-6000

*Attorneys for Defendants
International Home Textiles, Inc.
and Salo Grosfeld*

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ..................................................................................................1

ARGUMENT ...................................................................................................................................3

POINT I

    THERE ARE NO GROUNDS FOR CONVERTING
    MR. GROSFELD'S RULE 12(b)(6) MOTION INTO
    ONE FOR SUMMARY JUDGMENT ..................................................................................3

POINT II

    PLAINTIFF'S CLAIMS AGAINST MR. GROSFELD
    VIOLATE THE NEW YORK STATUTE OF FRAUDS ......................................................5

POINT III

    AS A MATTER OF LAW, MR. GROSFELD IS
    NOT PERSONALLY BOUND BY SECTION 11.19
    OF THE LICENSE AGREEMENT ....................................................................................10

CONCLUSION ..............................................................................................................................13

# TABLE OF AUTHORITIES

Page(s)

**Federal Cases**

*CAE Indus. Ltd. v. Aerospace Hldgs. Co.*,
  741 F. Supp. 388 (S.D.N.Y. 1989) ......................................................................................9

*Cavendish Traders, Ltd. v. Nice Skate Shoes, Ltd.*,
  117 F. Supp. 2d 394 (S.D.N.Y. 2000) .................................................................................7

*Cement and Concrete Workers Dist. Council Welfare Fund v. Lollo*,
  35 F.3d 29 (2d Cir. 1994) .............................................................................................11, 12

*Friedl v. City of N.Y.*,
  210 F.3d 79 (2d Cir. 2000) ..................................................................................................5

*Lehman Bros., Inc. v. Tutelar Cia Financiera, S.A.*,
  No. 95 CIV. 3772, 1997 WL 403463 (S.D.N.Y. July 17, 1997) .......................................12

*Lerner v. Amalgamated Clothing and Textile Workers Union*,
  938 F.2d 2 (2d Cir. 1991) ..................................................................................................10

*Mason Tenders District Council Welfare Fund v. Thomasen Constr. Co.*,
  164 F. Supp. 2d 379 (S.D.N.Y. 2001) ..........................................................................10, 11

*Mingoia v. Sante Fe Drywall Corp.*,
  No. 04 Civ. 1712, 2005 WL 1384013 (S.D.N.Y. June 9, 2005) .......................................10

*Porter v. Prop. Damage Control Grp.*,
  No. 03 CV 5972, 2007 WL 2907403 (E.D.N.Y. Sept. 28, 2007) ................................12, 13

*Turtle & Hughes, Inc. v. Browne*,
  No. 95 Civ. 9573, 1996 WL 384895, *3 (S.D.N.Y. July 9, 1996) ................................7, 10

**State Cases**

*Aksman v. Xiongwei Ju*,
  212 A.D.3d 260, 799 N.Y.S.2d 493 (1st Dep't 2005) ........................................................9

*Carmon v. Soleh Boneh Ltd.*,
  206 A.D.2d 450, 614 N.Y.S.2d 555 (2d Dep't 1994) .........................................................9

*Conopco, Inc. v. Wathne Ltd.*,
  190 A.D.2d 587 (1st Dep't 1993) .......................................................................................9

*Paribas Properties, Inc. v. Benson*,
  146 A.D.2d 522, 536 N.Y.S.2d 1007 (1st Dep't 1989)..................................................5, 9

*Penn Palace Operating, Inc. v. Two Penn Plaza Assocs.*,
  239 A.D.2d 155 (1st Dep't 1997)..................................................................................9

*Prospect Street Ventures I, LLC v. Eclipsys Solutions Corp.*,
  23 A.D.3d 213, 804 N.Y.S.2d 301 (1st Dep't 2005)....................................................8

*Salzman Sign v. Beck*,
  10 N.Y.2d 63, 176 N.E.2d 74 (1961) .......................................................................9, 10

*Savoy Record Co. v. Cardinal*,
  15 N.Y.2d 1, 203 N.E.2d 206 (1964) ........................................................................3-4, 9

*Star Video Entertainment, L.P. v. J&I Video Distrib., Inc.*,
  268 A.D.2d 423 (2d Dep't 2000...................................................................................12

## Statutes

N.Y. Gen. Oblig. Law § 5-701 ..........................................................................................5, 6-7

Rule 12(b)(6) .......................................................................................................................1, 2

## Other Authorities

28 N.Y. Prac. Contract Law §25: 9 ...................................................................................7-8

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------- x
PHILLIPS-VAN HEUSEN CORPORATION,      :
                                      :
                Plaintiff,            :    07 Civ. 8169 (AKH)
                                      :
        - against -                   :
                                      :
INTERNATIONAL HOME TEXTILES, INC.,    :
and SALO GROSFELD,                    :
                                      :
                Defendants.           :
------------------------------------------------------------------- x

### REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT SALO GROSFELD'S MOTION TO DISMISS THE COMPLAINT

Defendant Salo Grosfeld ("Mr. Grosfeld"), by his attorneys, Greenberg Traurig, LLP, respectfully submits this reply memorandum of law in support of his motion, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss with prejudice Claims Three and Four of the Complaint of Plaintiff Phillips-Van Heusen Corporation ("PVH"), for failure to state a claim upon which relief can be granted.

### Preliminary Statement

For all its obfuscation in opposing this motion -- its relegation of the threshold Statute of Frauds issue to the tail end of its brief, its submission of irrelevant and self-serving extrinsic evidence to generate a fact issue where none exists, its reliance on the License Agreement's integration clause and disregard of the same provision when convenient[1] -- PVH does not, and cannot, dispute the dispositive fact that the prospective "personal guaranty" referred to in Section

---

[1] PVH tries to have it both ways with the License Agreement's integration provision. First, it injects into this motion the very type of extrinsic evidence that the integration provision precludes. (PVH Br. at 4-7, 11-12.) *See* Exh. B to the Affidavit of Timothy E. Di Domenico, sworn to on November 26, 2007 (the "Di Domenico Aff."), submitted with Mr. Grosfeld's moving brief, at 30-31. Then, in litigating the alleged guarantee, it relies on the integration provision to argue that Mr. Grosfeld was precluded by the provision from "modifying" his alleged obligations under the alleged guaranty provision, Section 11.19. (PVH Br. at 17-18.)

11.19 of the License Agreement was never executed. Neither IHT's shareholders, nor Mr. Grosfeld, ever executed a personal guaranty of IHT's obligations under the License Agreement. None of them ever sought PVH's approval of the "form" and "substance" of such a guaranty. This alone requires dismissal of PVH's duplicative claims against Mr. Grosfeld.

Unable to support its claims with an actual, executed guaranty agreement, PVH turns Section 11.19 on its head and claims that this one-sentence provision in the 33-page License Agreement constitutes an enforceable personal guaranty by Mr. Grosfeld.[2] In doing so, PVH ignores the provision's plain language, which expressly refers to a future personal guaranty from IHT's shareholders whose "form" and "substance" PVH had to approve. As shown below, there is no factual or legal basis for PVH's tortured reading of Section 11.19. Even if PVH's claims of an enforceable guaranty could survive the application of the Statute of Frauds, they would still require dismissal under New York law.

PVH's injection of extrinsic evidence into this motion is ironic, given its expressed position on this motion and in other contexts that the License Agreement's integration clause precludes such evidence. In any event, this purported "evidence" is a red herring, designed to distract the Court from the legal defects in its claims and the fact that no personal guaranty by Mr. Grosfeld was ever executed. None of the submitted evidence directly addresses Section 11.19 or Mr. Grosfeld's intent regarding the alleged personal guaranty. The evidence is self-serving, conclusory, and speculative, at best. The Court should therefore refuse to consider it and decide this matter on the pleadings.

For the reasons set forth below and in Mr. Grosfeld's moving brief ("Mov. Br."), PVH's claims against Mr. Grosfeld fail as a matter of law and should be dismissed in their entirety.

---

[2] At the outset of its opposition brief ("PVH Br."), PVH calls Section 11.19 a "Guarantee/Joint Obligation Provision." (PVH Br. at 4.) At the end of its brief, it recasts the provision as a "Guarantee." (PVH Br. at 15.)

2

## **ARGUMENT**

As shown below, PVH's claims against Mr. Grosfeld based on an alleged guarantee and "joint and several liability" should be dismissed pursuant to Rule 12(b)(6) because PVH has asserted no facts upon which relief can be granted against him.

### **POINT I**

### **THERE ARE NO GROUNDS FOR CONVERTING MR. GROSFELD'S RULE 12(b)(6) MOTION INTO ONE FOR SUMMARY JUDGMENT**

In an effort to salvage its meritless claims against Mr. Grosfeld, PVH asserts that two fact issues require conversion of Mr. Grosfeld's Rule 12(b)(6) motion into one for summary judgment: (i) Mr. Grosfeld's alleged intent to be personally bound by Section 11.19 of the License Agreement; and (ii) the parties' understanding regarding the necessity of "additional documentation" to bind Mr. Grosfeld personally to the terms of the License Agreement. (PVH Br. at 7.) PVH supports its conversion request with a plethora of extrinsic evidence, including an Affidavit from Kenneth Wyse, its President of Licensing and Public Relations (the "Wyse Aff."), a prior draft of the License Agreement, various emails and letters between Wyse and Grosfeld that predate the License Agreement, and a termination letter from PVH's counsel, dated April 27, 2007. According to PVH, this evidence conclusively shows that Mr. Grosfeld intended to personally guarantee IHT's obligations under the License Agreement without the need for any additional documentation. (PVH Br. at 4-6.)

Contrary to PVH's contention, the alleged "fact issue" regarding Mr. Grosfeld's intent can, and should, be determined as a matter of law, based on the pleadings filed in this action and the textual evidence contained in the License Agreement itself. *See, e.g., Savoy Record Co. v. Cardinal*, 15 N.Y.2d 1, 4, 203 N.E.2d 206, 207 (1964) ("If such an intention can be ascribed to Cardinal at all, it must, by virtue of the requirements of the Statute of Frauds, be gathered from

3

the language . . . of Savoy's letters.") (emphasis added). Section 11.19 of the License Agreement – the alleged source of the personal guaranty – expressly refers to a *prospective* "personal guaranty" that was to be executed sometime in the future by IHT's shareholders. (Exh. B to Di Domenico Aff. at 33.) The provision also states that the "form and substance" of this future guaranty had to be "acceptable" to PVH. (*Id.*) <u>PVH does not dispute that the "personal guaranty" referenced in Section 11.19 was *never* executed by Mr. Grosfeld, or any of IHT's shareholders</u>. It simply did not happen. Because there is no personal guaranty to enforce, PVH's extrinsic evidence is entirely moot.

Moreover, the proffered evidence is irrelevant because none of it specifically addresses Section 11.19, or Mr. Grosfeld's understanding or intent regarding that provision. (*See* Exhs. 3-7 to Wyse Aff.) Nor does the draft License Agreement submitted by PVH, which retains the same version of Section 11.19 that appeared in the final agreement.[3] (*See* Exh. 2 to Wyse Aff.)

The most that Mr. Wyse asserts in this regard is a self-serving interpretation of Section 11.19 (Wyse Aff. ¶ 7) and a claim that Mr. Grosfeld told him that he was aware that "PVH desired his guarantee in connection with its license of IZOD to IHT." (Wyse Aff. ¶ 8.) Neither is availing to PVH. Mr. Wyse's personal belief that Section 11.19 gave PVH an open-ended "option" to seek further documentation pertaining to an alleged guaranty is utterly irrelevant, and only serves as further proof that Section 11.19 is conditional and not an enforceable contract. In any event, because no personal guaranty was ever executed by Mr. Grosfeld, Mr. Wyse's testimony regarding Mr. Grosfeld's alleged awareness of PVH's desire for such a guaranty is moot. Even assuming the truth of Mr. Wyse's claim regarding Mr. Grosfeld's "awareness,"

---

[3] That Mr. Grosfeld allegedly did not request "modification" of Section 11.19 (PVH Br. at 5, 7) is of no moment. Section 11.19 refers to a *future* personal guaranty from IHT's shareholders that was never executed. Accordingly, there was no reason for Mr. Grosfeld to seek a modification of the provision.

4

knowledge of a party's desire for a personal guaranty does not an enforceable contract make. To be legally enforceable, an alleged personal guaranty must contain all the necessary requirements of a valid contract under New York law. It must also satisfy the New York Statute of Frauds. As shown below, Section 11.19 does neither. *See infra* at 5-10.

As PVH concedes, when matters outside the pleadings are presented in response to a 12(b)(6) motion, the Court has the power to "exclude the additional material and decide the motion on the complaint alone." *Friedl v. City of N.Y.*, 210 F.3d 79, 83 (2d Cir. 2000). It should do so here, and reject PVH's attempt to create a fact issue where none exists.[4]

## POINT II

### PLAINTIFF'S CLAIMS AGAINST MR. GROSFELD VIOLATE THE NEW YORK STATUTE OF FRAUDS

As demonstrated in Mr. Grosfeld's moving brief, PVH's claims against Mr. Grosfeld should be dismissed because they violate the New York Statute of Frauds, which requires that any promise to answer for the debt of another be evidenced in writing and subscribed by the party to be charged. *See* N.Y. Gen. Oblig. Law § 5-701; Mov. Br. at 7-10. In this case, it is undeniable that no such writing exists; Mr. Grosfeld never executed an agreement in which he personally guaranteed IHT's obligations under the License Agreement.[5]

---

[4] The fact that Mr. Grosfeld submits no extrinsic evidence of his own on this Rule 12(b)(6) motion is not a concession to Mr. Wyse's allegations, or the self-serving statements in PVH's opposition papers regarding Mr. Grosfeld's alleged knowledge and intent contained in PVH's opposition papers. Mr. Grosfeld expressly reserves his rights in this regard.

[5] PVH contends that its "joint and several liability" claim against Mr. Grosfeld asserts a "primary" claim, and therefore, the Statute of Frauds does not apply to that claim. (PVH Br. at 21-22.) This is simply more obfuscation. Unlike the defendants in *Paribas Properties, Inc. v. Benson*, 146 A.D.2d 522, 536 N.Y.S.2d 1007 (1st Dep't 1989), who were akin to parties on the contract at issue because they assumed primary liability, Mr. Grosfeld is <u>not</u> a party to the License Agreement, and never assumed primary liability on the License Agreement. Other than the guaranty contract allegedly contained in Section 11.19 of the License Agreement -- which is secondary in nature and implicates the Statute of Frauds -- PVH alleges no other possible source of "joint and several" liability by Mr. Grosfeld in the Complaint.

5

Unable to support its claims against Mr. Grosfeld with a written, executed guaranty agreement, PVH relegates the threshold Statute of Frauds issue to the end of its brief and falls back on Section 11.19 of the License Agreement, which it claims is an enforceable personal guaranty by Mr. Grosfeld of IHT's obligations under the License Agreement. Section 11.19 provides:

> 11.19 <u>Guaranties</u>. The obligations of Licensee [IHT] hereunder, including, without limitation, the obligation to pay Percentage Royalties and Guaranteed Minimum Royalties <u>shall be</u> guaranteed jointly and severally <u>by the shareholders of Licensee</u> pursuant to <u>a personal guaranty in form and substance acceptable to PVH</u>.

(Exh. B to Di Domenico Aff. at 33) (emphasis added). According to PVH, this provision contains "all the necessary elements" of a guarantee and leaves no material terms open. (*Id.* at 15, 18.) PVH further claims that Mr. Grosfeld's signature on the License Agreement provides the necessary subscription "by the party to be charged" for Statute of Frauds purposes. (PVH Br. at 16, 20.) *See* N.Y. General Obligations Law § 5-701. On this tenuous basis, PVH urges the Court to hold Mr. Grosfeld personally liable for over $1,839,333 in damages as a result of IHT's purported breach of the License Agreement.

PVH's tortured reading of Section 11.19 defies logic and should be rejected. Indeed, as stated above, PVH's interpretation is belied by the language of the provision itself. On its face, Section 11.19 refers to a *separate and independent* "personal guaranty" that was to be executed sometime in the future (or not, as it turns out) by IHT's shareholders. It also clearly states that the "form and substance" of this future guaranty had to be "acceptable" to PVH. (Exh. B to Di Domenico Aff. at 33) (emphasis added). Again, PVH does not dispute that the "personal guaranty" referenced in Section 11.19 was *never* executed.

PVH also cannot rely upon Mr. Grosfeld's signature on the License Agreement as a "writing . . . subscribed by the party to be charged" for Statute of Frauds purposes. *See* N.Y.

6

Gen. Oblig. Law § 5-701. The License Agreement is a wholly separate contract from the "personal guaranty" referenced in Section 11.19. It is beyond dispute that Mr. Grosfeld, whose name appears nowhere in Section 11.19,[6] is not a party to the License Agreement and only signed it in his capacity as IHT's President. (Exh. B to Di Domenico Aff. at 33; Mov. Br. at 5.) PVH's improper attempt to circumvent the Statute of Frauds by cutting Mr. Grosfeld's corporate signature from the License Agreement and pasting it onto a non-existent personal guaranty agreement turns the law of contracts on its head.

Section 11.19 also lacks the necessary elements of a guarantee, PVH's astonishing assertions to the contrary notwithstanding. Indeed, Section 11.19 is not a personal guaranty at all; it is a contractual provision in a 33-page License Agreement that *refers* to a "personal guaranty" to be executed sometime in the future, a guaranty that PVH had to approve in "form" and "substance." Among its other legal defects, the provision lacks a period term, which is material in any contract involving the potential imposition of personal liability, and particularly in this case, where the License Agreement provided IHT with the option to request a renewal of the License for a duration and on terms "mutually acceptable" to PVH and IHT. (Exh. B to Di Domenico Aff. at 4.) Thus, the alleged personal guaranty by Mr. Grosfeld -- one which seeks to impose a nearly $2 million personal liability upon him -- was for an indefinite term.

Section 11.19 also lacks a recital of consideration, which is required by New York law. *See Cavendish Traders, Ltd. v. Nice Skate Shoes, Ltd.*, 117 F. Supp. 2d 394, 400 (S.D.N.Y. 2000) ("Consideration for the guaranty must be expressly or impliedly stated in the instrument. . . .") (citing *Lakhaney v. Anzelone*, 788 F. Supp. 160, 163 (S.D.N.Y. 1992)); 28 N.Y. Prac., Contract

---

[6] As PVH acknowledges, Mr. Grosfeld's name does not appear in Section 11.19. (PVH Br. at 13.) While PVH claims this is unimportant, given his status as an IHT shareholder, at least one decision of this Court holds to the contrary. *See Turtle & Hughes, Inc. v. Browne*, No. 95 Civ. 9573, 1996 WL 384895, *3 (S.D.N.Y. July 9, 1996) ("[T]he crucial inquiry is not whether [the alleged guarantor's] name appears in the contract, but whether it appears in the provision purporting to bind her personally.") (emphasis added).

7

Law § 25:9 ("The consideration must be expressly or impliedly stated in guaranty. The instrument setting forth the consideration must be delivered to and accepted by the guarantor.") (footnotes omitted). The provision also does not include material terms pertaining to, among other things: potential conditions of revocation, assignment rights, powers of termination, collection rights, payment rights, remedy rights, amendment or modification, choice of law, choice of forum (Mr. Grosfeld and IHT reside in Florida), or myriad other possible terms that might have comprised the "form" and "substance" of a personal guaranty.

Finally, if Section 11.19 were in fact an enforceable guaranty, as PVH claims, it would have to be enforceable against <u>all</u> of IHT's shareholders, not just a single one of them. PVH fails to explain how Mr. Grosfeld's signature as an officer and stockholder of IHT could bind IHT's other shareholders, such that they would also be personally liable for IHT's obligations under License Agreement. PVH ignores this issue, which Mr. Grosfeld raised in his moving brief. (Mov. Br. at 8 n.7.)

In sum, PVH's claim that Section 11.19 contains all the necessary requirements of an enforceable guarantee is illogical, legally baseless, and belied by the language of the provision itself. Even a cursory reading of Section 11.19 demonstrates that the prospective guaranty referred to therein could have taken any number of forms and contained any number of material terms, as long as the form and substance of the final agreement was approved by PVH.[7] Thus, at

---

[7] PVH asserts that negotiation of the material terms of a personal guaranty was precluded because it had "an effective veto" these terms and because the License Agreement had an "Integration/No Modification Clause." (PVH Br. at 18, 20.) Not so. First, by its terms, Section 11.19 did not preclude further negotiations over the material terms of a personal guaranty by IHT's shareholders; it simply granted PVH the right of final approval over the "form and substance" of the prospective guaranty. Therefore, IHT's shareholders could have negotiated the material terms of a prospective personal guaranty, as long as PVH approved the agreement's final form and substance. Second, because IHT's shareholders were not parties to the License Agreement, they were not bound by the agreement's Integration/No Modification Clause. Third, the Integration/No Modification Clause did not preclude further negotiations of material terms of a prospective personal guaranty, which is mentioned nowhere in the clause. Neither did it preclude negotiation of material changes to the License Agreement. As PVH concedes (PVH Br. at 18), it simply required that any amendments to the License Agreement be subscribed by both parties.

most, Section 11.19 was an unenforceable "agreement to agree." *See* Mov. Br. at 9-10; *Prospect Street Ventures I, LLC v. Eclipsys Solutions Corp.*, 23 A.D.3d 213, 213, 804 N.Y.S.2d 301, 302 (1st Dep't 2005); *Aksman v. Xiongwei Ju*, 212 A.D.3d 260, 262-63, 799 N.Y.S.2d 493, 495 (1st Dep't 2005); *Carmon v. Soleh Boneh Ltd.*, 206 A.D.2d 450 , 450, 614 N.Y.S.2d 555, 555 (2d Dep't 1994).[8]

PVH's attempt to distinguish *Savoy Record Co. v. Cardinal*, 15 N.Y.2d 1, 203 N.E.2d 206 (1964) is unavailing. In *Savoy Record*, the New York Court of Appeals found, based on the textual evidence surrounding the letter agreements at issue, that there was no direct and explicit evidence of the agent's intent to be personally bound under the agreements. 15 N.Y.2d at 6, 203 N.E.2d at 209; *see also Salzman Sign v. Beck*, 10 N.Y.2d 63, 67, 176 N.E.2d 74, 76 (1961) (finding no direct or explicit evidence of intent of President to bind himself personally where President signed agreement solely in his corporate capacity). Given the similar textual evidence present in this case, and the fact that no personal guaranty from Mr. Grosfeld was ever executed, the same rationale applies here.[9]

---

[8] PVH fails to distinguish these cases (PVH Br. at 19 n.7), and the rebuttal cases upon which it relies are inapposite. The brief decisions *Conopco, Inc. v. Wathne Ltd.*, 190 A.D.2d 587 (1st Dep't 1993) and *Penn Palace Operating, Inc. v. Two Penn Plaza Assocs.*, 239 A.D.2d 155, 155-56 (1st Dep't 1997), do not specify the nature of the terms the courts deemed material in the contracts at issue. These decisions are therefore useless as precedent on the issues at bar.

*CAE Indus. Ltd. v. Aerospace Hldgs. Co.*, 741 F. Supp. 388, 394-95 (S.D.N.Y. 1989) is distinguishable because unlike this case, it involved an executed guarantee agreement. The court found the open terms in the agreement to be non-material because the guarantee was sufficiently definite and stated precisely how the amount of the letter of credit was to be determined. *Id.* By contrast, in this case, there is no executed guaranty agreement, and Section 11.19 plainly lacks the definiteness and certainty of the guarantee involved in *CAE Industries*.

[9] PVH misconstrues *Paribas Properties, Inc. v. Benson*, 146 A.D.2d 522, 536 N.Y.S.2d 1007 (1st Dep't 1989), which is distinguishable from this case because it did not involve a guarantee, but rather an agreement by the defendants to be primarily liable on the contract at issue. Accordingly, *Paribas* did not implicate the Statute of Frauds. 146 A.D.2d at 525, 536 N.Y.S.2d at 1009. Here, PVH's claims against Mr. Grosfeld arise from the guaranty provision in the License Agreement (Section 11.19), pursuant to which Mr. Grosfeld is alleged to be *secondarily* liable for IHT's obligations under the License Agreement. (Exh. B to Di Domenico Aff. at 33.) PVH can assert no primarily liability against Mr. Grosfeld, because he is not a party to the License Agreement.

Unable to address the case head-on, PVH resorts to the above-referenced extrinsic evidence, which purportedly shows that Mr. Grosfeld intended to guarantee IHT's obligations under the License Agreement. (PVH Br. at 21.) For the reasons stated above, however, this purported "evidence" should be given short shrift. *See supra* at 3-5.

For these reasons, PVH's claims against Mr. Grosfeld violate the Statute of Frauds and should be dismissed.

## POINT III

### AS A MATTER OF LAW, MR. GROSFELD IS NOT PERSONALLY BOUND BY SECTION 11.19 OF THE LICENSE AGREEMENT

Even if PVH's claims against Mr. Grosfeld could be deemed to satisfy the Statute of Frauds (they do not), they still fail as a matter of law. As stated in Mr. Grosfeld's moving brief, New York has a "strong presumption" against holding an agent personally liable where he signs an agreement on behalf of a disclosed principal,[10] and an agent who does so will not be individually bound to the terms of the agreement unless there is "clear and explicit evidence" of the agent's intention to "substitute or superadd his personal liability for, or to, that of his principal." *Lerner v. Amalgamated Clothing and Textile Workers Union*, 938 F.2d 2, 5 (2d Cir. 1991) (citing *Mencher v. Weiss*, 306 N.Y. 1, 4 (1953)); *Mason Tenders District Council Welfare Fund v. Thomasen Constr. Co.*, 164 F. Supp. 2d 379, 381 (S.D.N.Y. 2001); *Salzman Sign Co. v. Beck*, 176 N.E.2d 74, 75 (1961). The mere presence of a personal liability clause in a signed agreement, without more, does not meet the "high degree of intention" required to hold a signatory personally liable. *Mingoia v. Sante Fe Drywall Corp.*, No. 04 Civ. 1712, 2005 WL 1384013, at *4-*5 (S.D.N.Y. June 9, 2005) (citing *Mason Tenders Dist. Council Welfare Fund v. Thomsen Constr. Co.*, 301 F.3d 50, 54 (2d Cir. 2002)).

---

[10] *See Turtle v. Hughes, Inc. v. Browne*, No. 95 Civ. 9573, 1996 WL 384895, *5 (S.D.N.Y. July 9, 1996).

While accepting the above as a "general proposition" (PVH Br. at 9), PVH claims that the five factors contained in *Cement and Concrete Workers Dist. Council Welfare Fund v. Lollo*, 35 F.3d 29 (2d Cir. 1994),[11] "overwhelmingly" weigh against Mr. Grosfeld. (PVH Br. at 11.) In support of this remarkable assertion, PVH engages in an analysis that is, at best, misleading. First, relying heavily on extrinsic evidence, PVH puts disproportionate weight on Mr. Grosfeld's role in negotiating the License Agreement and his status as the President of IHT, which relate to two of the five factors in the *Lollo* analysis. (PVH Br. at 4-7, 11-13) It claims that Mr. Grosfeld intended to personally guaranty IHT's obligations under the License Agreement because he "took personal control" over the negotiations of the License Agreement on IHT's behalf, and was, in Mr. Wyse's conclusory words, a "one-man dance" at IHT.[12] (PVH Br. at 4-7.)

As shown above, however, the extrinsic evidence submitted by PVH has little or nothing to do with the alleged guaranty provision at issue: Section 11.19. (*See supra* at 3-5; Exhs. 3-7 to Wyse Aff.) Indeed, while PVH makes much of Mr. Grosfeld's personal involvement in the parties' negotiation of the License Agreement, none of the proffered documentary evidence addresses Section 11.19, or the parties' negotiations of that provision. And Mr. Wyse's conclusory assertions regarding Mr. Grosfeld's purported intent in negotiating the License Agreement, and the significance of Mr. Grosfeld's failure to seek a modification of Section 11.19, are simply self-serving speculation. As stated above, there was no reason for Mr. Grosfeld to request modification of a provision that called for *prospective* personal guaranty. And PVH's extrinsic evidence and disproportionate emphasis on Mr. Grosfeld's alleged

---

[11]  The factors to be examined in assessing the signatory's intention include the length of the contract, the location of the liability provisions in relation to the signature line, the presence of the signatory's name in the agreement itself, the nature of the negotiations leading to the contract, and the signatory's role in the corporation. *Lollo*, 35 F.3d at 35 (*citing Mencher v. Weiss*, 306 N.Y. 1, 4 (1953)).

[12]  That Mr. Grosfeld, IHT's President, was personally involved the negotiation of the License Agreement is not remotely surprising. According to Mr. Wyse, PVH's former Chief Executive Officer, Mark Weber, also participated in the negotiation of the License Agreement. (Wyse Aff. ¶ 4.)

participation in negotiating the License Agreement does not alter the prospective and conditional language of Section 11.19, or the fact that the "personal guaranty" referred to therein was never executed.

In hyperbolic fashion, PVH excoriates Mr. Grosfeld for allegedly ignoring two *Lollo* factors, one pertaining to his role at IHT, and one concerning the nature of the negotiations leading to the alleged guarantee. (PVH Br. at 11-12.) This claim is baseless. Mr. Grosfeld's moving brief fully disclosed his role and status at IHT (several times). (Mov. Br. at 1, 3, 5, 8 n.7, 12, 13.) And the Complaint, which is obviously a part of the record, alleges that Mr. Grosfeld is the President and a "principal stockholder" of IHT (Complaint, ¶¶ 10, 11) and was the individual "who, on behalf of IHT, was primarily involved in the negotiations that led to the execution of the License Agreement." (Complaint, ¶ 12.) Mr. Grosfeld expressly accepted these allegations as true for the purpose of this motion in his *Lollo* analysis.[13] PVH, therefore, protests too much. Indeed, given its superficial treatment of the first three *Lollo* factors (which it chose to address last) and heavy emphasis on the two factors it believes favor its position, PVH can hardly complain that Mr. Grosfeld engaged in an insufficiently detailed *Lollo* review.[14]

---

[13] *See* Mov. Br. at 13 ("Taken together, the above factors weigh overwhelmingly against imposing personal liability on Mr. Grosfeld, <u>even if one accepts as true PVH's claim that Mr. Grosfeld was 'primarily involved' in the negotiations that led to the execution of the License Agreement</u>.") (emphasis added).

[14] PVH's reliance upon *Lollo*, *Lehman Bros., Inc. v. Tutelar Cia Financiera, S.A.*, No. 95 CIV. 3772, 1997 WL 403463 (S.D.N.Y. July 17, 1997); *Porter v. Property Damage Control Grop.*, No. 03 CV 5972, 2007 WL 2907403 (E.D.N.Y. Sept. 28, 2007); and *Star Video Entertainment, L.P. v. J&I Video Distrib., Inc.*, 268 A.D.2d 423 (2d Dep't 2000) is misplaced. *Lollo*, *Lehman Bros.*, and *Star Video* involved <u>executed guarantee contracts</u> pursuant to which parties *contemporaneously* guaranteed a debt. Here, by contrast, the alleged guaranty -- Section 11.19 -- was conditional and *prospective*, and expressly referred to the future execution of a personal guaranty by IHT's shareholders, which had to be approved in form and substance by PVH.

*Lollo* and *Lehman Bros.* are distinguishable from this case on other bases as well. *See Lollo*, 35 F.3d at 35 (article of collective bargaining agreement stated that President was signing "in a dual capacity both on behalf of himself and on behalf of the Employer" and that he agreed "to be personally bound by and to assume all obligations of the Employer provided for in this Agreement"); *Lehman Bros.*, 1997 WL 403463, at *2-*3 (involved one-page, standalone guarantee contract drafted by guarantors' company; contract used "we" and "principals" in guarantee provision; individual defendants collectively owned 82% of corporate shares). *Porter* has no application here because it did not involve a guaranty provision at all, and because the corporate officer (and sole shareholder of the corporate signatory) was a party to the construction contract at issue. *Porter*, 2007 WL 2907403, at *6-*7.

For the reasons stated above, and in Mr. Grosfeld's moving brief, even if Section 11.19 is deemed to satisfy the Statute of Frauds (it does not), the textual evidence contained in the License Agreement and the five factors set forth in *Lollo*, taken together, demonstrate that Mr. Grosfeld did not personally guaranty IHT's obligations under the License Agreement.

## CONCLUSION

For the foregoing reasons, defendant Salo Grosfeld respectfully requests that the Court dismiss Claims Three and Four of the Complaint, and grant such other and further relief as it deems proper.

Dated: New York, New York
      February 26, 2008

Respectfully submitted,

GREENBERG TRAURIG, LLP

By: _____
    Timothy E. Di Domenico (TD 4900)

MetLife Building
200 Park Avenue, 15th Floor
New York, New York 10166
(212) 801-9200

-and-

Of Counsel:

John F. Farraher, Jr.
Greenberg Traurig, LLP
One International Place, 20th Floor
Boston, MA 02110
(617) 310-6000

*Attorneys for Defendants*
*International Home Textiles, Inc.*
*and Salo Grosfeld*