UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------- x
PHILLIPS-VAN HEUSEN CORPORATION,

                     Plaintiff,

-against-

INTERNATIONAL HOME TEXTILES, INC. and
SALO GROSFELD,

                     Defendants.

**ORDER GRANTING MOTION TO DISMISS COUNTS III AND IV OF THE COMPLAINT AND GRANTING MOTION TO DISMISS COUNTERCLAIM**

07 Civ. 8169 (AKH)

------------------------------------------------------------- x

ALVIN K. HELLERSTEIN, U.S.D.J.:

       Defendant Salo Grosfeld ("Grosfeld") brings a motion to dismiss Counts III and IV of the Complaint, alleging that plaintiff's claims for joint and several liability and guarantee against him are without merit and should be dismissed. See Fed. R. Civ. P. 12(b)(6). Plaintiff Phillips-Van Heusen Corp. ("PVH") brings a motion to dismiss defendant International Home Textiles, Inc. ("IHT")'s counterclaim alleging misrepresentation by PVH.[1] For the reasons stated below, defendant's motion to dismiss Counts III and IV are granted, and plaintiff's motion to dismiss defendant's counterclaim also is granted.

      **I.    Facts**

       Plaintiff PVH is the owner of the IZOD trademark in the United States and its territories, and sells, manufactures, distributes, and licenses products bearing the IZOD trademark. Defendant IHT manufactures, sells, and distributes home goods such as sheets and towels. Defendant Grosfeld is the president of IHT.

---

[1] Plaintiffs were scheduled to take defendant Grosfeld's deposition in April 2008, but the deposition was adjourned while the parties were negotiating a settlement agreement. I subsequently placed the case on the suspense calendar based on the parties' statements that settlement was likely. On August 18, 2008, the parties informed the Court that settlement talks had failed, and I restored the case to the active calendar.

In January 2006, plaintiff entered into a license agreement with defendant IHT. The agreement granted IHT the exclusive right to use the IZOD trademark in connection with the "sale, distribution and promotion of the sheets, pillowcases and towels," on a wholesale basis, to a limited number of approved customers. (Compl. at ¶ 15). The agreement provided that in consideration of the licensing rights granted by plaintiff, IHT would make certain periodic payments to defendant PVH, including royalty payments and advertising expense payments. (Id. at ¶ 17). The agreement was to run from January 1, 2006 to December 31, 2008, with plaintiff granted the right to terminate the contract if certain minimum sales requirements were not met. (Id. at ¶ 19). Defendant Grosfeld executed the contract on behalf of defendant IHT. The text of the agreement includes the following paragraph, found on the last page of the agreement:

> 11.19 Guaranties. The obligations of Licensee [IHT] hereunder, including, without limitation, the obligation to pay Royalties and Guaranteed Minimum Royalties, shall be guaranteed jointly and severally by the shareholders of Licensee pursuant to a personal guaranty in form and substance acceptable to [plaintiff] PVH.

(Def't's Br., Ex. B at 33).

There is no mention, anywhere in the 33-page agreement, of a personal guaranty by defendant Grosfeld. Plaintiff terminated the agreement on April 27, 2007, and then brought this action against defendants IHT and Grosfeld. The Complaint, filed on September 18, 2007, alleges breach of contract and seeks an audit and accounting against defendant IHT (Claims 1-2), and joint and several liability of both defendants (Claim 3). The Complaint also alleges that defendant Grosfeld is liable on his guarantee (Claim 4). On November 26, 2007, defendant Grosfeld moved to dismiss the claims alleging his personal liability for the obligations of IHT and on a theory of guarantee (Claims 3-4), and defendant IHT, in its Answer to the Complaint, also counterclaimed against plaintiff for misrepresentation regarding the number of approved

retailers who would be willing to market and sell the licensed products. Both motions are discussed in further detail below.

## II. Standard of Review of Motion to Dismiss

A Rule 12(b)(6) motion requires the court to determine whether a plaintiff has stated a legally sufficient claim for relief. Fed. R. Civ. P. 12(b)(6). To state a legally sufficient claim, a plaintiff must state "the grounds of his entitlement to relief." Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1964 (2007) (citations and internal quotations omitted). The plaintiff does not need to support his claim with "detailed factual allegations," but must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. at 1965. In sum, the plaintiff must "amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim plausible." Iqbal v. Hasty, 490 F.3d 143, 157–58 (2d Cir. 2007) (summarizing the pleading standard established by Twombly, supra, as one of "plausibility").

## III. Defendant Grosfeld's Motion to Dismiss

Grosfeld's motion to dismiss requires the Court to determine whether PVH's pleadings are legally sufficient to support a claim against Grosfeld in his personal capacity. Under New York law, an agent who signs an agreement on behalf of a disclosed principal will not be personally bound to the agreement, unless there is "clear and explicit evidence of the agent's intention to substitute or superadd his personal liability for, or to, that of his principal." Lerner v. Amalgamated Clothing and Textile Workers Union, 938 F.2d 2, 5 (2d Cir. 1991) (internal citations omitted). Defendant Grosfeld argues also that the language in the licensing agreement does not comply with New York's Statute of Frauds, which requires that all promises to answer for the debt of another must be in writing and subscribed by the party to be charged.

See, e.g., Abdi Hosh Ashkir v. Wilson, No. 98 Civ. 2632, 19999 U.S. Dist. LEXIS 14275, at *31 (S.D.N.Y. Sept. 13, 1999).  Grosfeld contends that the language in Section 11.19 of the agreement is nothing more than an "agreement to agree," and that such an agreement is unenforceable.

To determine whether an agent's signature complies with the Statute of Frauds, the Second Circuit has applied a five-factor test, focusing on the agent's intent to be bound. Cement and Concrete Workers Dist. Council Welfare Fund v. Lollo, 35 F.3d 29 (2d Cir. 1994). The five factors are: 1) the length of the contract; 2) the location of the liability provision(s) in relation to the signature line; 3) the presence of the signatory's name in the agreement itself; 4) the nature of the negotiations leading to the contract, and 5) the signatory's role in the corporation.  Id. at 35.  The New York Court of Appeals adds that "where individual responsibility is demanded the nearly universal practice is that the officer signs twice – once as an officer and again as an individual." Salzman Sign Co. v. Beck, 10 N.Y.2d 63, 67 (1961).

Clearly, under this analysis, Grosfeld did not intend personally to be bound.

The first factor, the length of the agreement, weighs strongly in favor of Grosfeld. The agreement is 33 pages long.  As the courts have noted, the lengthier the contract, the greater the danger of "allowing a single sentence . . . to bind individually a person who sign[ed] only as a corporate officer."  Id.  A contract of 33 pages is long enough to suggest that the parties would have had a specific binder for Grosfeld to sign if it was truly intended to bind him personally.

The second factor, the location of the guarantee clause directly above the signature blocks, is outweighed by the signature block, which shows that Grosfeld's signature was on behalf of IHT.  See, e.g., Lerner, 938 F.2d at 6 (finding that the word "by" before the

4

signature of a corporate representative tends to indicate an act of agency and thus militates against a finding of personal liability).

The third factor, the presence of the signatory's name in the text of the agreement, normally would favor plaintiff. However, as the courts have noted, the signatory's name in the agreement itself is less important than whether the name appears in the personal guarantee clause itself. Turtle & Hughes, Inc. v. Browne, No. 95 Civ. 9573, 1996 WL 384895, at *3 (S.D.N.Y. July 9, 1996). Furthermore, the clause only refers to a personal guarantee, and as Grosfeld notes, he never executed such a personal guarantee. The sum of these considerations favors Grosfeld's point of view, that there was not a personal guaranty.

As for the fourth factor, the nature of the negotiations, the pleadings allege that Grosfeld was intimately familiar with the provisions of the agreement and that he participated actively in drafting revisions to the document. This factor would favor plaintiff, but the factor is outweighed by the text of the agreement itself, which omits any personal guaranty and omits a personal signature block.

Regarding the final factor, the signatory's role in the corporation, IHT is a closely-held corporation, and Grosfeld was the president and signed as such. Again, however, the lawyers who negotiated for each side easily could have added a personal guaranty or an individual signature block, but did not. The omission strongly favors Grosfeld.

The five-factor test is not intended to be a check-list, but provide an indication of intent. If there was an intent to hold Grosfeld to individual liability, he should have been required to execute a personal liability clause, and not simply sign for his corporation. The Statute of Frauds demands clarity, and plaintiff, which, as a sophisticated company, guided by a knowledgeable lawyer, should have known better, allowed ambiguity in the agreement. As the

5

New York Court of Appeals held – and it states the controlling law – individual responsibility requires "the nearly universal practice . . . that the officer signs twice – once as an officer and again as an individual." Salzman Sign Co., 10 N.Y.2d at 67. This decision of the highest state court is controlling. See, e.g., Levin v. Tiber Holding Corp., 277 F.3d 243, 253 (2d Cir. 2002) (holding that federal courts must follow the holdings of the highest state court when deciding questions of state law).

Accordingly, I hold that Counts III and IV of the Complaint are dismissed. The action may proceed against IHT only.

### B. IHT's Counterclaim for Misrepresentation

In its Answer, IHT counterclaimed against PVH for misrepresentation as to which approved retailers would be willing to sell the licensed products at issue in the contract between the two parties. Under New York law, a claim for fraudulent misrepresentation contains four elements: 1) a material false representation; 2) intent to defraud; 3) reasonable reliance upon the misrepresentation; and 4) resulting damages. See Bridgestone/Firestone, Inc. v. Recovery Credit Services, Inc., 98 F.3d 13, 19 (2d Cir. 1996). New York law further requires that a fraud claim, when raised in the context of a breach of contract case, must be "sufficiently distinct from the breach of contract claim." Id. at 20 (internal citations omitted).

Plaintiffs argue that the counterclaim must be dismissed principally because of the integration clause in Section 11.10 of the License Agreement, which reads as follows:

> This agreement, including the exhibits and schedules hereto, constitutes the entire agreement of the parties hereto with respect to the subject matter hereof, and supersedes all prior agreements, contracts, promises, representations and statements between them, if any, whether written or oral, with respect thereto including, without limitation, the License Agreement between PVH and Licensee dated December 2001, as the same may have been heretofore amended. This Agreement may not be amended or

6

modified, except in a writing signed by both parties hereto.
(Pls. Br., Ex. 4)

Plaintiffs claim that since this clause explicitly states that the License Agreement "constitutes the entire agreement of the parties, IHT is not permitted to introduce any representations made prior to the execution of the agreement. Furthermore, they argue that the parol evidence rule prohibits IHT's counterclaim, since it is predicated on prior oral representations made by senior PVH executives. Defendants counter that the integration clause should not bar extrinsic evidence.

Plaintiffs are correct. The integration clause in the agreement precludes defendants from presenting a valid counterclaim for fraudulent misrepresentation in this case. As I held in Great Earth Int'l Franchising Corp. v. Milks Dev't., 311 F.Supp.2d 419, 425 (S.D.N.Y. 2004), New York law does not permit breach of contract claims couched as fraud claims. The Second Circuit noted in Telecom Int'l America, Ltd. v. AT&T Corp. that "simply dressing up a breach of contract claim by further alleging that the promisor had no intention, at the time of the contract's making, to perform its obligations thereunder, is insufficient to state an independent tort claim." Telecom Int'l, 280 F.3d 175, 196 (2d Cir. 2001) (internal quotations omitted). Just as in Telecom, defendant here has nothing more than a "breach of contract claim in the tort clothing of (factually unsupported) allegations of an intent to breach." Id.

Defendant IHT next argues that its claim of fraudulent misrepresentation is viable because it is based on oral misrepresentations that induced defendant to enter into the contract, and were statements of present fact. As plaintiffs note, however, it is a well-established principle of New York law that statements of future expectation or harmless self-promotion are insufficient to support a misrepresentation claim. See, e.g., Transit Mgmt., LLC v. Watson Indus., Inc., 23 N.Y.S.2d 860, 863 (4th Dept. 2005) (finding that "[i]t is well settled that

7

representations that are not statements of existing fact but are merely expressions of future expectations" or statements that "relate to future actions or conduct" are insufficient to support a counterclaim for fraud). The affidavit submitted by defendant Grosfeld shows that any statements made by plaintiff were merely hopeful in nature. Executives at PVH made comments about one of their brand lines, IZOD, being "hot" and "popular," that defendant "<u>would</u> have no problem selling Licensed Products" to certain retailers, and that IZOD "<u>would</u> help IHT place Licensed Products with approved retailers" through their business connections. <u>See</u> Grosfeld Aff. ¶¶ 7-12 (emphasis added). The fact that the executives were making statements about potential business arrangements to take place only <u>after</u> the agreement was signed renders those statements wholly promissory in nature and unable to support a valid misrepresentation claim. Furthermore, defendants were sophisticated parties that had previously negotiated and executed an agreement with plaintiff in 2001. Defendants could not reasonably have assumed that plaintiff's hopeful words about securing certain retailers constituted representations of present fact.

Defendants argue that even if this Court finds that they have not adequately pled their misrepresentation counterclaim, they should be granted leave to amend the counterclaim. The general rule in this circuit is to grant leave to replead freely if the interests of justice so require, as Fed. R. Civ. P. 15(a) requires. However, a judge may deny leave to replead when it is apparent, as the case is here, that repleading would be futile. <u>See Lucente v. IBM Corp.</u>, 310 F.3d 243, 258 (2d Cir. 2002) (holding that "[o]ne appropriate basis for denying leave to amend is that the proposed amendment is futile."). The facts, as alleged in the Grosfeld affidavit, still fail to meet the Rule 9(b) pleading requirements. Furthermore, I note that discovery for this case was closed on April 14, and reopening discovery after defendants filed an amended counterclaim

would cause undue delay in the case proceedings. Accordingly, plaintiff's motion to dismiss the counterclaim is granted.

The parties are to appear before me for a previously scheduled status conference on September 12, 2008 at 10:30 a.m. to discuss remaining issues in the case.

SO ORDERED.

Dated:   August 21, 2008
         New York, New York

ALVIN K. HELLERSTEIN
United States District Judge